WHATLEY KALLAS LLP
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Julia A. Luster (SBN 295031)
jluster@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Co-Lead Interim Class Counsel*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NVIDIA GTX 970 GRAPHICS CARD LITIGATION | CASE NO.: 15-cv-00760-CRB |
| | **CLASS ACTION** |
| THIS DOCUMENT RELATES TO: | **FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| ALL ACTIONS | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiffs Andrew Ostrowski, Mark Roushion, Kiloe Young, Jason Doerrer, Pedro Santiago, Kyle Ellis, Andy Torrales, Dylan Jordan, Joseph Vorraso, David Dropski, Austin Verlinden, Stephen Denz, Joel Bernabel, Jan Paolo Jimenez, Timothy Farley, Alexander Montgomery, and Ryan Brenek (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, hereby file this First Amended Consolidated Class Action Complaint against Defendants NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation d/b/a Giga-Byte Technology Co. Ltd., G.B.T. Inc. (together with Gigabyte Global Business Corporation, "Gigabyte"), ASUS Computer International ("ASUS"), and EVGA Corporation ("EVGA") (collectively, the

1

"Defendants"), and allege as follows on information and belief, except for information identified as being based on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with California or have otherwise purposely availed themselves of the markets in California through the promotion, marketing, and sale of their products and services in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendants are subject to personal jurisdiction in this District, (2) Defendants do substantial business in this District, and (3) a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendants engaged in the extensive promotion, marketing, distribution, and sales of the products at issue in this District, and at least two Defendants have their corporate headquarters in this District.

## NATURE OF THE ACTION

4.      This is a nationwide class action brought on behalf of all consumers who purchased graphics cards[1] incorporating the NVIDIA GeForce GTX 970 graphics processing units ("GPU") (hereinafter "GTX 970" or "GTX 970 devices"), which were sold based on the misleading representations that the GTX 970:  (1) operates with a full 4 gigabytes ("GB") of video random access memory ("VRAM") at GDDR5 specifications,[2] as opposed to only 3.5 GB with a less performant and

---

[1] Graphics cards are also known as graphics accelerators, video cards, display cards, or display adapters.

[2] Double data rate type five synchronous graphics random access memory, or more simply "GDDR5," is a modern type of RAM with a high bandwidth interface designed for use in graphics cards.

decoupled 0.5 GB spillover that operates at one-seventh the speed of the 3.5 GB pool, (2) has 64 render output processors ("ROPs"), as opposed to 56 ROPs, and (3) has an L2 cache capacity of 2,048 kilobytes ("KB"),[3] as opposed to 1,792 KB, or omitted material facts to the contrary.

5.     The Defendants engaged in a scheme to mislead consumers nationwide about the characteristics, qualities, uses, and benefits of the GTX 970 by uniformly stating that the GTX 970 provides a true 4 GB of GDDR5 VRAM, 64 ROPs, and 2,048 KB of L2 cache capacity, when in fact it does not.  Defendants' marketing of the GTX 970 was intended to and did create the perception among purchasers that the product was, in fact, able to conform with the specifications as advertised.  This deception has already resulted in a petition of over 11,000 purchasers who have requested that the FTC take action against NVIDIA and asking for full refunds.[4]

6.     Each Defendant was involved in the creation and dissemination of the misleading marketing regarding the GTX 970 and/or each Defendant was involved in or profited from the sales of same.  Further, each Defendant concealed material facts concerning the truth about the GTX 970's specifications, since NVIDIA's own Senior VP of GPU Engineering, Jonah Alben, has admitted the GTX 970 does not possess the specifications as advertised or performs as uniformly represented.[5]  Thus, all consumers were exposed to Defendants' marketing scheme and paid a price premium for GTX 970 devices.   Plaintiffs and the Class they seek to represent suffered injury in fact and a loss of money or property as a result.

**PARTIES**

7.     On personal knowledge Plaintiff Andrew Ostrowski is a citizen and resident of Cass County, Michigan.  Mr. Ostrowski purchased two Gigabyte NVIDIA GeForce GTX 970 4 GB graphics cards for personal purposes and not for resale in or about late December 2014 and early January 2015,

---

[3] Under the most common usage, 1 gigabyte is 1,024 megabytes, and 1 megabyte is 1,024 kilobytes. Thus, Plaintiffs' allegations that the GTX 970 was mislabeled as having 2,048 KB of L2 cache, when it rather has 1,792 KB, is equivalent to alleging that the GTX 970 was mislabeled as having 2 MB of L2 cache, when it rather has 1.75 MB.

[4] https://www.change.org/p/nvidia-refund-for-gtx-970.

[5] http://www.pcper.com/reviews/Graphics-Cards/NVIDIA-Discloses-Full-Memory-Structure-and-Limitations-GTX-970.

3

and paid approximately $370.00 per device.  Prior to making these purchases, Mr. Ostrowski was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Ostrowski reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has  a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Ostrowski understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Ostrowski based his purchase decisions in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing these purchase decisions in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as **Exhibit A** is the product packaging for the Gigabyte GTX 970 devices that represents that the product is a "4GB GDDR5" device, which is incorporated herein by reference.

8.     On personal knowledge Plaintiff Mark Roushion is a citizen and resident of California.  Mr. Roushion purchased two EVGA NVIDIA GeForce GTX 970 4 GB graphics cards for $329.99 each for personal purposes and not for resale in or about September 2014.  Mr. Roushion decided to purchase the GTX 970 because he had a prior version of a NVIDIA graphics card and wanted to purchase a version which he believed had more VRAM and thus more value for his money.  Prior to making this purchase, Mr. Roushion was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Roushion reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Roushion understood such statements to represent and

warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Roushion based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as **Exhibit B** is the product packaging for the EVGA GTX 970 devices, which is incorporated herein by reference.

9.      On personal knowledge Plaintiff Kiloe Young is a citizen and resident of California.  Mr. Young purchased an ASUS NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale in or about October 2014, and paid $349.99.  Prior to making this purchase, Mr. Young was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Young reviewed the product packaging or Defendants' advertising prior to purchase as replicated below, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Young understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Young based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.

The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as **Exhibit C** is the product packaging for the ASUS GTX 970 devices that represents that the product has "4GB" of "GDDR5 memory," which is incorporated herein by reference.

10. On personal knowledge, Plaintiff Jason Doerrer is a citizen and resident of Missouri. Mr. Doerrer purchased a Gigabyte NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale on February 16, 2015, and paid $349.99.  Prior to making this purchase, Mr. Doerrer was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Doerrer reviewed NVIDIA's GTX 970 webpages on www.nvidia.com prior to purchase, which contained the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below, as well as reviewed the product packaging that confirmed the same material representations.  Mr. Doerrer understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Doerrer based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as **Exhibit A** is the product packaging for the Gigabyte GTX 970 devices that represents that the product is a "4GB GDDR5" device, which is incorporated herein by reference.

11. On personal knowledge Plaintiff Pedro Santiago is a citizen and resident of Ponce, Puerto Rico.  Mr. Santiago purchased an ASUS NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale in or about December 2014 and paid $349.99.  Prior to making this

purchase, Mr. Santiago was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Santiago reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Santiago understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Santiago based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications.  Attached hereto as **Exhibit C** is the product packaging for the ASUS GTX 970 devices that represents that the product has "4GB" of "GDDR5 memory," which is incorporated herein by reference.

12.     On personal knowledge Plaintiff Kyle Ellis is a citizen and resident of Jenks, Oklahoma.  Mr. Ellis purchased a PNY NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale in or about October 2014, and paid $329.99.  Prior to making this purchase, Mr. Ellis was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Ellis reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Ellis understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such

1   statements would attach importance to the accuracy of such statements in deciding to purchase the GTX

2   970.  Mr. Ellis based this purchase decision in substantial part on the accuracy of such representations,

3   and such representations were a substantial factor in influencing this purchase decision in that he would

4   not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications

5   for the GTX 970 were false and misleading.  However, the GTX 970 was worth less than represented

6   based on the material fact it did not possess nor operate consistent with NVIDIA's technical

7   specifications.

8        13.     On personal knowledge Plaintiff Andy Torrales is a citizen and resident of Riverview,

9   Florida.  Mr. Torrales purchased an ASUS NVIDIA GeForce GTX 970 4 GB graphics card for personal

10  purposes and not for resale on or about October 30, 2014, and paid $314.99.  Additionally, Mr. Torrales

11  purchased another ASUS NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and

12  not for resale on or about November 9, 2014, and paid $338.48.  Prior to making these purchases, Mr.

13  Torrales was exposed to and saw NVIDIA's claims regarding the technical specifications and

14  performance characteristics of the GTX 970, as set forth below.  Mr. Torrales reviewed the product

15  packaging or Defendants' advertising prior to purchase, which confirmed the material representation

16  that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications

17  set forth below.  Mr. Torrales understood such statements to represent and warrant that the GTX 970

18  did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the

19  GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his

20  bargain in that he attributed value to these statements, and a reasonable person targeted by such

21  statements would attach importance to the accuracy of such statements in deciding to purchase the GTX

22  970.  Mr. Torrales based these purchase decisions in substantial part on the accuracy of such

23  representations, and such representations were a substantial factor in influencing these purchase

24  decisions in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the

25  advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was

26  worth less than represented based on the material fact it did not possess nor operate consistent with

27  NVIDIA's technical specifications.  Attached hereto as **Exhibit C** is the product packaging for the

28

1   ASUS GTX 970 devices that represents that the product has "4GB" of "GDDR5 memory," which is

2   incorporated herein by reference.

3          14.    On personal knowledge Plaintiff Dylan Jordan is a citizen and resident of Portsmouth,

4   Virginia.  Mr. Jordan purchased a Gigabyte NVIDIA GeForce GTX 970 4 GB graphics card for

5   personal purposes and not for resale in or about October 2014, and paid $375.91.  Prior to making this

6   purchase, Mr. Jordan was exposed to and saw NVIDIA's claims regarding the technical specifications

7   and performance characteristics of the GTX 970, as set forth below.  Mr. Jordan reviewed the product

8   packaging or Defendants' advertising prior to purchase, which confirmed the material representation

9   that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications

10  set forth below.  Mr. Jordan understood such statements to represent and warrant that the GTX 970 did

11  in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX

12  970.  Accordingly, these representations and warranties were material and part of the basis of his

13  bargain in that he attributed value to these statements, and a reasonable person targeted by such

14  statements would attach importance to the accuracy of such statements in deciding to purchase the GTX

15  970.  Mr. Jordan based this purchase decision in substantial part on the accuracy of such

16  representations, and such representations were a substantial factor in influencing this purchase decision

17  in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the

18  advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was

19  worth less than represented based on the material fact it did not possess nor operate consistent with

20  NVIDIA's technical specifications.  Attached hereto as **Exhibit A** is the product packaging for the

21  Gigabyte GTX 970 devices that represents that the product is a "4GB GDDR5" device, which is

22  incorporated herein by reference.

23         15.    On personal knowledge Plaintiff Joseph Vorraso is a citizen and resident of Romeoville,

24  Illinois.  Mr. Vorraso purchased an ASUS NVIDIA GeForce GTX 970 4 GB graphics card for personal

25  purposes and not for resale in or about November 2014, and paid $378.86.  Prior to making this

26  purchase, Mr. Vorraso was exposed to and saw NVIDIA's claims regarding the technical specifications

27  and performance characteristics of the GTX 970, as set forth below.  Mr. Vorraso reviewed the product

28  packaging or Defendants' advertising prior to purchase, which confirmed the material representation

1   that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications

2   set forth below.  Mr. Vorraso understood such statements to represent and warrant that the GTX 970

3   did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the

4   GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his

5   bargain in that he attributed value to these statements, and a reasonable person targeted by such

6   statements would attach importance to the accuracy of such statements in deciding to purchase the GTX

7   970.  Mr. Vorraso based this purchase decision in substantial part on the accuracy of such

8   representations, and such representations were a substantial factor in influencing this purchase decision

9   in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the

10  advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was

11  worth less than represented based on the material fact it did not possess nor operate consistent with

12  NVIDIA's technical specifications.  Attached hereto as **Exhibit C** is the product packaging for the

13  ASUS GTX 970 devices that represents that the product has "4GB" of "GDDR5 memory," which is

14  incorporated herein by reference.

15          16.     On personal knowledge Plaintiff David Dropski is a citizen and resident of Cresthill,

16  Illinois.  Mr. Dropski purchased one ASUS NVIDIA GeForce GTX 970 4 GB graphics card for

17  personal purposes and not for resale on November 11, 2014, and paid $378.86.  Additionally, Mr.

18  Dropski purchased another two ASUS NVIDIA GeForce GTX 970 4 GB graphics cards for personal

19  purposes and not for resale on November 11, 2014, and paid $707.83.  Prior to making these purchases,

20  Mr. Dropski was exposed to and saw NVIDIA's claims regarding the technical specifications and

21  performance characteristics of the GTX 970, as set forth below.  Mr. Dropski reviewed the product

22  packaging or Defendants' advertising prior to purchase, which confirmed the material representation

23  that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications

24  set forth below.  Mr. Dropski understood such statements to represent and warrant that the GTX 970

25  did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the

26  GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his

27  bargain in that he attributed value to these statements, and a reasonable person targeted by such

28  statements would attach importance to the accuracy of such statements in deciding to purchase the GTX

970.  Mr. Dropski based these purchase decisions in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing these purchase decisions in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications.  Attached hereto as **Exhibit C** is the product packaging for the ASUS GTX 970 devices that represents that the product has "4GB" of "GDDR5 memory," which is incorporated herein by reference.

17.     On personal knowledge Plaintiff Austin Verlinden is a citizen and resident of Illinois.  Mr. Verlinden purchased an MSI NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale in or about February of 2015, and paid $369.99.  Prior to making this purchase, Mr. Verlinden was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Verlinden reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Verlinden understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Verlinden based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as **Exhibit D** is the product packaging for the MSI GTX 970 devices that represents that the product has a "4GB" of GDDR5 memory, which is incorporated herein by reference.

18.     On personal knowledge Plaintiff Stephen Denz is a citizen and resident of Rockdale, Milam County, Texas.  Mr. Denz purchased a MSI NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale on or about February 6, 2015, and paid approximately $399.99.  Prior to making this purchase, Mr. Denz was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Denz reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Denz understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Denz based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as **Exhibit D** is the product packaging for the MSI GTX 970 devices that represents that the product has a "4GB" of GDDR5 memory, which is incorporated herein by reference.

19.     On personal knowledge Plaintiff Joel Bernabel is a citizen and resident of New York. Mr. Bernabel purchased a PNY NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale in or about October of 2014, and paid $378.89.  Prior to making this purchase, Mr. Bernabel was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Bernabel reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Bernabel understood such statements to represent and warrant that the GTX 970

did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.   Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Bernabel based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.

20.      On personal knowledge Plaintiff Jan Paolo Jimenez is a citizen and resident of California.  Mr. Jimenez purchased an EVGA NVIDIA GeForce GTX 970 4 GB graphics card for personal purposes and not for resale in or about January of 2015, and paid $349.99.  Prior to making this purchase, Mr. Jimenez was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Jimenez reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Jimenez understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Jimenez based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false or misleading.  The GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications for the GTX 970.  Attached hereto as

1    **Exhibit B** is the product packaging for the EVGA GTX 970 devices, which is incorporated herein by

2    reference.

3           21.    On personal knowledge Plaintiff Timothy Farley is a citizen and resident of California.

4    Mr. Farley purchased two Gigabyte NVIDIA GeForce GTX 970 4 GB graphics cards for personal

5    purposes and not for resale on or about September 19, 2014, and paid $739.98 ($369.99 each).  Prior to

6    making these purchases, Mr. Farley was exposed to and saw NVIDIA's claims regarding the technical

7    specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Farley reviewed

8    the product packaging or Defendants' advertising prior to purchase, which confirmed the material

9    representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical

10   specifications set forth below.  Mr. Farley understood such statements to represent and warrant that the

11   GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical

12   specifications for the GTX 970.  Accordingly, these representations and warranties were material and

13   part of the basis of his bargain in that he attributed value to these statements, and a reasonable person

14   targeted by such statements would attach importance to the accuracy of such statements in deciding to

15   purchase the GTX 970.  Mr. Farley based this purchase decision in substantial part on the accuracy of

16   such representations, and such representations were a substantial factor in influencing this purchase

17   decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the

18   advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was

19   worth less than represented based on the material fact it did not possess nor operate consistent with

20   NVIDIA's technical specifications.  Attached hereto as **Exhibit A** is the product packaging for the

21   Gigabyte GTX 970 devices that represents that the product is a "4GB GDDR5" device, which is

22   incorporated herein by reference.

23          22.    On personal knowledge Plaintiff Alexander Montgomery is a citizen and resident of

24   California.  Mr. Montgomery purchased an MSI NVIDIA GeForce GTX 970 4 GB graphics cards for

25   personal purposes and not for resale on or about November 2014, and paid $349.99.  Prior to making

26   this purchase, Mr. Montgomery was exposed to and saw NVIDIA's claims regarding the technical

27   specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Montgomery

28   reviewed the product packaging or Defendants' advertising prior to purchase, which confirmed the

material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Montgomery understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Montgomery based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was worth less than represented based on the material fact it did not possess nor operate consistent with NVIDIA's technical specifications.  Attached hereto as **Exhibit D** is the product packaging for the MSI GTX 970 devices that represents that the product has a "4GB" of GDDR5 memory, which is incorporated herein by reference.

23.     On personal knowledge Plaintiff Ryan Brenek is a citizen and resident of East Lyme, Connecticut.  Mr. Brenek purchased an ASUS NVIDIA GTX 970 4 GB for personal purposes and not for resale in or about January 2015, paying approximately $334.49.  Prior to making this purchase, Mr. Brenek was exposed to and saw NVIDIA's claims regarding the technical specifications and performance characteristics of the GTX 970, as set forth below.  Mr. Brenek reviewed the product packaging and Defendants' advertising prior to purchase, which confirmed the material representation that the GTX 970 has a full 4 GB of available GDDR5 memory and the other technical specifications set forth below.  Mr. Brenek understood such statements to represent and warrant that the GTX 970 did in fact meet and operate consistent with NVIDIA's publicly stated technical specifications for the GTX 970.  Accordingly, these representations and warranties were material and part of the basis of his bargain in that he attributed value to these statements, and a reasonable person targeted by such statements would attach importance to the accuracy of such statements in deciding to purchase the GTX 970.  Mr. Brenek based this purchase decision in substantial part on the accuracy of such representations, and such representations were a substantial factor in influencing this purchase decision

1   in that he would not have paid for the GTX 970 at the price he did, if at all, had he known the

2   advertised specifications for the GTX 970 were false and misleading.  However, the GTX 970 was

3   worth less than represented based on the material fact it did not possess nor operate consistent with

4   NVIDIA's technical specifications.  Attached hereto as **Exhibit C** is the product packaging for the

5   ASUS GTX 970 devices that represents that the product has "4GB" of "GDDR5 memory," which is

6   incorporated herein by reference.

7       24.     Defendant NVIDIA Corporation is a corporation organized and existing under the laws

8   of the State of Delaware and whose principal place of business and headquarters at 2701 San Tomas

9   Expressway, Santa Clara, California 95050.  Defendant NVIDIA researched, designed, developed, and

10  marketed the GTX 970.  NVIDIA is a publicly-traded company with a market capitalization of $12.13

11  billion, annual revenue of $4.13 billion, and an annual EBITDA of $735 million.  Moreover, the market

12  for discrete graphics cards is a duopoly, which NVIDIA dominates.  As of Q3 2013, NVIDIA captured

13  64.5% of the market, while its competitor Advanced Micro Devices, Inc. ("AMD") captured only

14  35.5%.  Defendant NVIDIA ships its products, including the GTX 970, to manufacturers, purchasers,

15  resellers, and distributors in and from California, maintains a direct sales force in California, sells its

16  products in retail outlets in California, and creates the specifications and advertisements for its

17  products, including its website where it specifically discusses the specifications of the GTX 970, in and

18  disseminates them from California.

19      25.     Within the industry, it is customary for graphics card designers like NVIDIA to license

20  their designs to major electronics manufacturers like Gigabyte, ASUS, EVGA, PNY, and MSI, who in

21  turn press, package, and sell products such as Defendant NVIDIA's graphics cards.  The rationale for

22  this arrangement is that it is more cost-effective for Defendant NVIDIA to license its designs to major

23  electronics manufacturers rather than to operate solely through its own production facilities (although

24  NVIDIA does sell its own version of the GTX 970 as well).  Nonetheless, each graphics card licensed

25  to outside manufacturers must meet NVIDIA's specifications for the GTX 970.  Accordingly, as is

26  customary in the industry, there are Gigabyte-made GTX 970 cards, ASUS-made GTX 970 cards,

27  EVGA-made GTX 970 cards, PNY-made GTX 970 cards, and MSI-made GTX 970 cards in addition to

28  NVIDIA-made GTX 970 cards, each with virtually identical specifications and performance.

26.     Defendant Gigabyte Global Business Corporation d/b/a Giga-Byte Technology Co. Ltd. is a corporation organized and existing under the laws of the State of California and whose principal place of business is located at 17358 Railroad Street, City of Industry, California 91748.  Gigabyte is engaged in the business of designing, manufacturing, selling, and distributing computer equipment, including graphics cards that incorporate and promote the inclusion of the GTX 970.  Defendant Gigabyte ships products, including graphics cards that incorporate and promote the GTX 970, to direct purchasers and distributors in and from California, maintains a direct sales force in California, sells its products in retail outlets in California, and advertises its products in and from California.

27.     Defendant G.B.T. Inc. is a corporation incorporated in and existing under the laws of the State of California with its principal place of business located at 17358 Railroad Street, City of Industry, California 91748.  G.B.T. Inc. does business throughout the United States and the State of California, including in this District, and is the parent company of Gigabyte Global Business Corporation.

28.     Defendant ASUS Computer International is a California corporation with its principal place of business in Fremont, California.  ASUS is a leading computer and electronics manufacturer. ASUS is engaged in the business of designing, manufacturing, selling, and distributing computer equipment, including graphics cards that incorporate and promote the inclusion of the GTX 970. Defendant ASUS ships products, including graphics cards that incorporate and promote the GTX 970, to direct purchasers and distributors in and from California, maintains a direct sales force in California, sells its products in retail outlets in California, and advertises its products in and from California.

29.     Defendant EVGA Corporation is a California corporation with its principal place of business at 2900 Saturn Street, Brea, California 92821.  EVGA is a leading computer and electronics manufacturer.  EVGA is engaged in the business of designing, manufacturing, selling, and distributing computer equipment, including graphics cards that incorporate and promote the inclusion of the GTX 970.  Defendant EVGA ships products, including graphics cards that incorporate and promote the GTX 970, to direct purchasers and distributors in and from California, maintains a direct sales force in California, sells its products in retail outlets in California, and advertises its products in and from California.

30.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of Defendants, that allegation shall mean that Defendants did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

31.     Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

**FACTS**

**The Role Of Graphics Cards In Modern Computers**

32.     Preliminarily, modern computers are best understood as a collection of specialized components, each of which has a defined task.  A computer has the following components:  a CPU that processes instructions, memory for storage (*e.g.*, RAM or a hard drive), input from the user (*e.g.*, a mouse or keyboard), output for the user (*e.g.*, a monitor or speakers), and a control unit that coordinates the various components.

33.     Building off this framework, when images are rendered for output on a display device like a computer monitor, they are arranged in a series of tiny dots called pixels.  For example, the popular resolution 1920x1080 is arranged as a grid of pixels that number 1,920 in width and 1,080 in height, for a total of slightly over 2 million pixels.[6]

34.     Each time the display changes – through moving a mouse, opening a program, watching a movie, playing a computer game, etc. – some or all of the pixels must be updated.  In the case of computer games and animation, the "gold standard" for fluid animation is a refresh rate of at least 60 frames per second.[7]  In the case of 1920x1080 resolution, this means that up to 2 million pixels may need to be updated 60 times per second, for approximately 124 million pixels updated every second.

---

[6] While 1920x1080 has been a popular resolution for many years, the "Ultra HD" and "4K" standards have recently gained popularity.  Ultra HD has a resolution of 3840x2160, or about 8.3 million pixels, and 4K has a resolution of 4096x2160, or about 8.8 million pixels.

[7] Even though 60 frames per second has been a popular target frame rate for many years, monitors and display adapters that support 120 frames per second and higher are now gaining prominence.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

35.     Rendering graphics is often computationally expensive.  Historically, graphics were rendered with a computer's main CPU and RAM, which would update each pixel when necessary.  However, the disadvantage to this methodology is that rendering graphics occupies these components, which are simultaneously executing the operating system, kernel, and numerous programs in user space.  Accordingly, commingling these tasks on the computer's main CPU and RAM may reduce the computer's performance system-wide, and the quality of graphics that can be displayed at an acceptable frame rate is fairly limited.

36.     In or about 1995, several companies (including NVIDIA) began marketing discrete graphics cards, which offload graphics rendering to a separate processor that is specifically engineered for this task.  NVIDIA's "NV1," released in May 1995, was the first commercial graphics card capable of 3D rendering and video acceleration.  Over time, graphics cards have evolved into miniature computers – they have their own processor (a graphics processing unit, or "GPU"), their own RAM, their own cooling system, and sometimes separate power regulators:



37.     On modern computers, this same architecture is now used in the GTX 970:

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

38.     Graphics cards are plugged directly into the motherboard, typically using the PCI Express bus.  Many graphics cards, including the GTX 970, allow users to use multiple cards at once for increased graphical performance with a method called Scalable Link Interface ("SLI"):



39.     The advantage of using discrete graphics cards is that the computer's main CPU and RAM are not occupied with rendering graphics, which improves performance system-wide. Additionally, discrete graphics cards like the GTX 970 can render graphical output substantially faster than a computer's main CPU and RAM alone, given that they are specifically engineered for the task. Furthermore, modern graphics cards like the GTX 970 support a host of advanced graphical features for 3D applications that would not otherwise be feasible at acceptable frame rates using the CPU and RAM alone:  anti-aliasing, anisotropic texture filtering, ambient occlusion, motion blur, tessellation, high-dynamic-range, high-resolution textures, detailed shadows, and post processing, among others. Simply put, this means that games run at faster frame rates with more features.  Animation and 3D

applications will also run faster, and overall system performance is increased.  Discrete graphics cards like the GTX 970 have a wide variety of uses in addition to gaming, including assisting with 3D animation and 3D applications, BitCoin mining, and high-speed parallel processing using the OpenCL and CUDA frameworks.

40.     The persons targeted by GPU manufacturers such as Defendants to purchase such devices are thus not ordinary consumers with a passing understanding of how a computer operates, nor are the types of GPUs at issue here (*i.e.*, the GTX 970) commonly pre-installed in desktop computers. Rather, these devices are marketed to consumers who would be able to, and do, install graphics cards directly onto the motherboard by themselves.  As a result, these consumers would have specific questions, understandings, and concerns about the technical specifications of the GPU devices, which is why such technical specifications are material to the consumers that are targeted by this industry to purchase such devices.

41.     Graphics cards are a booming industry, which is totally dominated as a duopoly by NVIDIA and AMD.  Because of this duopoly, the speed of the processor and access to RAM is a key feature companies focus on in differentiating their products and charging a price premium for them. For example, GDDR5 RAM, or "double data rate type five synchronous graphics random access memory," is a common form of RAM used in graphics cards.  The larger the RAM the faster the GPU in theory will be able to operate, and thus justifies a higher price point.

**Defendants Misrepresented The Specifications And Performance Of The GTX 970**

42.     Since at least August 2014, Defendants in the materials identified below uniformly misrepresented or omitted material facts regarding the technical specifications and performance of the GTX 970 in their sales and marketing materials, including the GTX Reviewer's Guide referenced herein, NVIDIA's website, manufacturer and retailer websites, and on the product packaging, examples of which are attached hereto and incorporated herein by reference.  Specifically, Defendants falsely and misleadingly represented that the GTX 970 has **2 MB** of L2 cache**, 64** ROPs, and **4 GB** of GDDR5 RAM, with all of this 4 GB of RAM having the same access to the GTX 970's memory system and being accessed at the same speed.  In actuality, the GTX 970 has 1.75 MB of L2 cache, 56 ROPs, and 3.5 GB of GDDR5 RAM, with a separate pool of 0.5 GB RAM that can only be accessed at

**one-seventh** the speed of the rest of the 3.5 GB of RAM in the main pool, which causes a bottleneck that inhibits the performance of the GTX 970.  As the GTX 970 operates differently using memory above 3.5 GB VRAM load, data from the 0.5 GB pool are processed through a portion of the same access path as data from the 3.5 GB pool, drastically slowing down not only the data coming from the 0.5 GB pool but also from the 3.5 GB pool, thereby impacting overall performance of the GTX 970 for its intended applications.

43.    L2 cache is a form of extremely high-speed memory, which is typically located on a processor itself (as opposed to a block of RAM).  Since it is much faster than RAM, processors will attempt to pull data from the L2 cache first, and will only access the RAM if the required data is unavailable in the L2 cache (a "cache miss").  Thus, the size of L2 cache is directly correlated with performance.  If the L2 cache is larger, a processor can access data much faster on average, because it will need to access the RAM less frequently.

44.    Additionally, ROPs are parallel processing cores that assist in rendering pixels.  The "fillrate," or the maximum number of pixels that can be filled per second by the graphics card, is calculated by multiplying the number of ROPs by the clock frequency of the GPU.  Thus, a smaller number of ROPs on a graphics card means that the card can generate fewer pixels per second.

45.    Prior to the sale of the GTX 970, beginning at least in the summer of 2014 if not earlier, Defendants distributed advance copies of the GTX 970 card to reviewers and trade publications, as is customary in the industry.  Accompanying the sample graphics card was a "GTX 970 Reviewer's Guide," which contained specifications that were included by NVIDIA with the intention of such information being repeated and disseminated to the public.  This Guide incorrectly represented that the GTX 970 has a 2 MB L2 cache (*i.e.*, 2,048 kilobytes of L2 cache) and 64 ROPs and 4 GB GDDR5 video memory:

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT    CASE NO.: 15-cv-00760-CRB

**GEFORCE GTX 970 SPECIFICATIONS** *(based on base clock)*

| | |
|---|---|
| Graphics Processing Clusters | 4 |
| Streaming Multiprocessors | 13 |
| CUDA Cores | 1664 |
| Texture Units | 104 |
| ROP Units | 64 |
| Base Clock | 1050 MHz |
| Boost Clock | 1178 MHz |
| Memory Clock (Data rate) | 7000 MHz |
| L2 Cache Size | 2048K |
| Total Video Memory | 4096MB GDDR5 |
| Memory Interface | 256-bit |
| Total Memory Bandwidth | 224 GB/s |

In turn, these precise specifications were widely repeated in the press, as NVIDIA intended. These specifications were provided to third-party product reviewers from NVIDIA's corporate offices in Santa Clara, California, whose reviews were also included on NVIDIA's website.

46. Furthermore, NVIDIA on its interactive website that provides direct links for Class members to purchase the GTX 970 from various retailers has, since at least September 2014 and continuing to date, represented that the GTX 970 has "4 GB" of GDDR5 RAM, which has a Memory Bandwidth of "224 (GB/sec):"[8]

| GTX 970 Memory Specs: | |
|---|---|
| Memory Clock | 7.0 Gbps |
| Standard Memory Config | 4 GB |
| Memory Interface | GDDR5 |
| Memory Interface Width | 256-bit |
| Memory Bandwidth (GB/sec) | 224 |

47. NVIDIA's website also contains the following material statements, which for the reasons stated herein are untrue and misleading:

The GeForce® GTX™ 970 is a high-performance graphics card designed for serious gaming.

---

[8] *See* http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/specifications.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

To enhance games further we've developed Dynamic Super Resolution (DSR), which gives gamers 4k-quality graphics on a 1080p or higher monitor.

Compared to traditional downsampling, which requires compatible monitors, luck, and a high degree of technical knowledge, DSR produces a higher-quality image that can be instantly enabled with a single click in GeForce Experience, or by changing the resolution in-game.

For gamers, 4K combined with NVIDIA's G-SYNC technology is the Holy Grail, delivering Ultra HD tear-free, super-smooth gameplay. The computing demands of 4K are high, however, requiring top-tier multi-GPU systems, until now that is. With Maxwell and the GeForce GTX 980, 4K G-SYNC is a reality thanks to Maxwell's technological innovations, its speed, and its 4GB of VRAM....

The new GeForce GTX 970 is no slouch, either, powering the latest and greatest games at ultra detail levels and with maximum levels of anti-aliasing enabled:



If you want the best experience, the fastest speeds, DirectX 12 support, and image quality-enhancing features that just work, the new GeForce GTX 980 and GeForce GTX 970 are your best options.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

**Product Info**
GeForce GTX 970

Supported Technologies

- G-SYNC
- 4K
- DSR
- Virtual Reality

In addition, for each description of the GTX 970 at the link for consumers to buy such devices (http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/buy-gpu), the descriptive title of the GTX 970 device either uses the specification "4 GB" or "4GB GDDR5."

48.     Similarly, the GTX 970 is prominently advertised on retailer sites such as Amazon and Newegg based on materials provided by Defendants, and has been since at least September 2014, as having 4 GB of GDDR5 RAM, such as  "Gigantic 4GB 7010 MHz GDDR5 memory,"[9] or listing the GTX 970 as having a "Memory Size" of "4GB."[10]  Additionally, retailers incorporate the purported 4 GB of RAM into the very name of the product, such as this title used by Newegg linked from NVIDIA's own website:  "ASUS STRIX-GTX970-DC2OC-4GD5 GeForce GTX 970 **4GB** 256-Bit GDDR5 PCI Express 3.0 SLI Support G-SYNC Support Video Card" (emphasis added).

49.     The label and packaging of the GTX 970 also, since September 2014, prominently states that the product has "4 GB" of memory in the form of high-speed GDDR5 RAM.  For example, the ASUS packaging for the GTX 970 specifically focuses on this characteristic, as do other companies (see Ex. C, which is incorporated herein by reference):

---

[9] *See* http://www.amazon.com/ASUS-STRIX-GTX970-DC20C-4GD5-Graphics-Cards/dp/B00NJ9BJ8G.

[10] *See* http://www.newegg.com/Product/Product.aspx?Item=N82E16814121899.



50.     In contrast to Defendants' uniform representations, the GTX 970 does not provide these advertised specifications in actual use.  In fact, the GTX 970 has only **1.75 MB** of L2 cache, and **56** ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of **3.5 GB**, and a smaller pool of **0.5 GB** that runs at approximately ***one-seventh*** the speed of the 3.5 GB pool.

51.     These facts first began to come to light on or about January 25, 2015, when NVIDIA's Senior VP of GPU Engineering, Jonah Alben, admitted that, while the GTX 970 might (according to NVIDIA) technically feature 4 GB of VRAM, the final 512 MB runs at a far slower rate than the first 3.5 GB.  This is not a technical glitch, as from a practical standpoint this means that when a purchaser uses the GTX 970, when a true 4 GB of VRAM is needed, once 3.5 GB is reached, the programs will slow down or sputter as the graphics card is not capable of operating as a true 4 GB card as a result of the bottleneck phenomenon described above.   As Mr. Alben conceded, the device does not function as if it has 4 GB of GDDR5 VRAM, which was and is a key selling point for the device:[11]

> [V]arious GTX 970 owners had observed that the GTX 970 was prone to topping out its reported VRAM allocation at 3.5GB rather than 4GB, and that meanwhile the [more expensive] GTX 980 was reaching 4GB allocated in similar circumstances.  This unusual outcome was at odds with what we know about the cards and the underlying GM204 GPU, as NVIDIA's specifications state that the GTX 980 and GTX 970 have identical memory configurations: 4GB of 7GHz GDDR5 on

---

[11] http://www.anandtech.com/show/8931/nvidia-publishes-statement-on-geforce-gtx-970-memory-allocation

a 256-bit bus, split amongst 4 ROP/memory controller partitions.  In other words, there was no known reason that the GTX 970 and GTX 980 should be behaving differently when it comes to memory allocation.

Since then there has been some further investigation into the matter using various tools written in CUDA in order to try to systematically confirm this phenomena and to pinpoint what is going on.  Those tests seemingly confirm the issue – the GTX 970 has something unusual going on after 3.5GB VRAM allocation….

Despite the outward appearance of identical memory subsystems, there is an important difference here that makes a 512MB partition of VRAM less performant or otherwise decoupled from the other 3.5GB.

52.     In fact, side-by-side benchmarks confirm that the 3.5 GB pool of RAM operates at 192 GB per second, while the 0.5 GB pool only operates at 28 GB per second.  Stated otherwise, the 0.5 GB pool is *6.86 times slower* than the 3.5 GB pool.

53.     Alben also admitted that the GTX 970 does not have 64 ROPs as advertised, but rather 56 ROPs.  And further, the L2 cache was not the 2,048 KB as advertised, but rather 1,792 KB.

54.     On February 24, 2015, Mr. Jen-Hsun Huang, the CEO of NVIDIA, admitted the serious flaws in the marketing and promotion of the GTX 970.  In his release Mr. Huang admitted:

> Some of you are disappointed that we didn't clearly describe the segmented memory of GeForce GTX 970 when we launched it.  **I can see why**, so let me address it … GTX 970 is a 4GB card.  However, the upper 512 MB of the additional 1GB is segmented and has reduced bandwidth.  This is a good design because we were able to add an additional 1GB for GTX 970 and our software engineers can keep less frequently used data in the 512MB segment.  **Unfortunately, we failed to communicate this internally to our marketing team, and externally to reviewers at launch** ….  Instead of being excited that we invented a way to increase memory of the GTX 970 from 3GB to 4GB, **some were disappointed that we didn't better describe the segmented nature of the architecture for that last 1GB of memory. This is understandable.**  But let me be clear:  Our only intention was to create the best GPU for you.  We wanted GTX 970 to have 4GB of memory, as games are using more memory than ever.  **This new feature of Maxwell should have been clearly detailed from the beginning.  We won't let this happen again.  We'll do a better job next time.**  (Emphasis added.)

55.     Since this concession of both the materiality of Defendants' representations and that such uniform representations were untrue, NVIDIA has announced it has abandoned this Maxwell technology.  And while Mr. Huang said NVIDIA will "do a better job next time," the issue is what Defendants are going to do about this issue now.  Consumers spent several hundred dollars on GTX 970 devices hoping they would not be obsolete in the near term since, as Mr. Huang agrees, "games are using more memory than ever."  Yet they are not receiving what Defendants represented they would receive.

56.     Despite these admissions, Defendants continue to advertise and market the GTX 970 in this manner on their websites and through third party retailers and repeat the misrepresentations at issue above.  The GTX 970 is also still being promoted on product packaging as providing "4GB GDDR5" memory without disclosing the admitted inherent limitations in that representation.  Nowhere in these sales and marketing materials (or on the product's packaging) do Defendants disclose that the GTX 970 actually has a separate pool of RAM that runs at one-seventh the speed of the main pool.  Instead, consumers are led to believe the GTX 970 devices has a <u>single</u> pool of 4 GB RAM with a memory bandwidth of 224 GB / sec – which is only possible to achieve when the <u>slower</u> pool of 0.5 GB is in use.  Consumers are also led to believe the GTX 970 has 2 MB of L2 cache and 64 ROPs.

57.     Defendants failed to disclose the true specifications of the GTX 970, despite having evidence to the contrary in their exclusive possession and control prior to sale.  Coupled with their affirmative statements to the contrary, Defendants' material omission that the GTX 970 actually does not perform as represented, would be likely to, and did, mislead the reasonable consumers targeted by Defendants who would purchase these products.  Defendants also were obligated to disclose such omitted material facts because  the material omissions about the actual technical specifications and characteristics of the GTX 970 cards as set forth above were contrary to representations actually made by Defendants.  These omissions were also of material facts Defendants were bound to disclose because they had exclusive knowledge of such facts not known to the public about the actual internal workings and design of the GTX 970, which they actively concealed, and because they made partial representations about these technical specifications but also suppressed material facts about the limitations in how the GTX 970 cards actually operated, as admitted by NVIDIA's own CEO.

58.     Defendants' uniform conduct emanates from California as the primary design, development and marketing decisions related to the GTX 970 cards were all made in this State or emanated from this State.  The design of the GTX 970 was developed and the description and performance product specifications for the GTX 970 were formulated and defined in NVIDIA's corporate headquarters and facilities in Santa Clara, California. NVIDIA's website, which contains representations about the material specifications at issue and allows consumers to link to retailer sites to purchase the GTX 970 cards, is maintained out of NVIDIA's Santa Clara offices.  Decisions concerning how to market the GTX 970 card and about what to include on the product packaging were also made in California, as was and is the uniform handling of questions and corporate statements and clarifications regarding the specifications and performance of the GTX 970.  California law thus can properly be applied to the claims of all Class members.

59.     Because the above claims were uniformly included in advertisements, marketing, and sales presentations either created or disseminated by Defendants, a reasonable consumer targeted by Defendants who would purchase these products would likely be exposed to and misled into believing the GTX 970 functioned using a full 4 GB of GDDR5 VRAM, 64 ROPs, and 2,048 KB of L2 cache, when that is not in fact the case.  Defendants' misrepresentations and omissions alleged herein are the type that would be material to typical product purchasers targeted by Defendants, *i.e.*, a reasonable person interested in these types of devices and who has the ability to personally install these GPU devices in their own computers, would attach importance to them and would be induced to act on such information in making purchase decisions.

60.     As a result of Defendants' deceptive marketing scheme, the Class members were exposed to Defendants' misleading representations and purchased GTX 970 devices.  Because Class members purchased these devices in substantial part on the false belief that the GTX 970 would function as advertised, such claims were a substantial factor in the decision of Plaintiffs and others to do so.

61.     As the designers and/or manufacturers of the GTX 970, Defendants are in a unique position to know the exact specifications of their own product and reasonably should have known about the accuracy (or inaccuracy) of such statements.  Industry-leading designers and manufacturers of

graphics cards, like Defendants, do not unwittingly mislabel the specifications of their own products.[12]

62.     Based on the above, Plaintiffs and the Class were sold products that do not perform or possess the capabilities advertised and represented.  As such, they should be provided appropriate relief, as all consumers who purchased a GTX 970 device have been injured by Defendants' wrongful conduct as they did not receive the product they paid for in terms of possessing the characteristics set forth above yet paid a price premium therefor.  For example, an equivalent graphics card with a true 4 GB of GDDR5 from NVIDIA's primary competitor, AMD, sells for under $280.

## CLASS ACTION ALLEGATIONS

63.     Plaintiffs seek to represent a class defined as all persons in the United States (including its states, districts or territories) who purchased a GTX 970 graphics card (the "Class").  Excluded from the Class are the following:

a.    All judicial officers in the United States and their families through the third degree of relationship;

b.    Defendants and any of their officers, directors, and employees, and any person or entity who has already settled or otherwise compromised similar claims against a defendant and provided a full release;

c.    Plaintiffs' counsel, anyone working at the direction of Plaintiffs' counsel, and/or any of their immediate family members; and

d.    Anyone who has pending against a named Defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

64.     This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and (c)(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

---

[12] 2014 was a banner profit year for NVIDIA, as according to published reports "revenue grew 13 percent to $4.68 billion."  In fact, "[r]evenue increased 9 percent year over year to a record $1.25 billion for the quarter."  NVIDIA's Chief Financial Officer noted that "[g]rowth was driven by the full quarter availability of our Maxwell™ GeForce® GPUs for gaming and by strength in accelerated computing GPUs …."  In other words, NVIDIA's record profits in 2014 were driven in part by the sale of the company's flagship GTX 970 GPUs.

65.     The Class is so numerous that individual joinder of all members is impracticable. While the exact number of Class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiffs believe that the Class includes tens of thousands of individuals.

66.     Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

a.     Whether Defendants' representations regarding the GTX 970 as set forth above were false and misleading or reasonably likely to deceive customers targeted by such statements;

b.     Whether Defendants had adequate substantiation for their claims prior to making them;

c.     Whether Defendants' failure to disclose that the GTX 970 did not perform as advertised and represented was material and would be likely to mislead a reasonable consumer;

d.     Whether the GTX 970 performs as advertised and represented;

e.     Whether Defendants charged a price premium for the GTX 970 devices;

f.     Whether Defendants engaged in unfair, unlawful, and/or deceptive business practices regarding the GTX 970 in violation of Cal. Bus. & Prof. Code §§ 17200;

g.     Whether Defendants represented, through their words or conduct, that the GTX 970 provided performance benefits that it did not actually have in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. and § 17500, *et seq*., and Cal. Civ. Code § 1750, *et seq.*;

h.     Whether Defendants' conduct alleged herein violates public policy;

i.     Whether Defendants breached applicable express and implied warranties;

j.     What law or laws should apply to adjudicate such claims; and

k.     Whether Plaintiffs and the Class have been injured by the wrongs complained of herein, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

67.     Plaintiffs' claims are typical of the Class members' claims.  Defendants' common course of conduct caused Plaintiffs and all Class members the same harm.  Likewise, Plaintiffs and other Class members can prove the same facts in order to establish the same claims.

68.     Plaintiffs are adequate Class representatives because they are members of the Class they seek to represent and their interests do not irreconcilably conflict with other Class members' interests. Plaintiffs have retained counsel competent and experienced in consumer protection class actions, and Plaintiffs and their counsel intend to prosecute this action vigorously for the Class's benefit.  Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

69.     The Class may be properly maintained under Rule 23(b)(2).  Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

70.     The Class can be properly maintained under Rule 23(b)(3) and (c)(4).  A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable.  Even if each Class member could afford to bring individual actions, the court system could not.  It would be unduly burdensome for thousands of individual cases to proceed.  Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims.  Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

71.     Plaintiffs reserve the right to modify this Class definition as appropriate and as circumstances warrant, or to request the Class be divided into sub-Classes that are treated as a class of residents from particular states including the residences of the various Plaintiffs, pursuant to Rule 23(c)(5).

<u>COUNT I</u>

**Violation Of The Magnuson-Moss Warranty Act ("MMWA"),**

**15 U.S.C. §§ 2301, *et seq.***

72.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

74.     The GTX 970 is a consumer product as defined in 15 U.S.C. § 2301(1).

75.     Plaintiffs and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

76.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

77.     In connection with the sale of the GTX 970, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM.

78.     The GTX 970 does not conform to the express warranties because each of the express warranties is false and misleading.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs. Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

79.     Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because the graphics card they received was worth substantially less than the card they were promised and expected.

80.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and the Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and the Class members, and entitling them to the relief provided under that statute.

1

2

## COUNT II

### Breach Of Express Warranty

81.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

82.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

83.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted through their advertising and product packaging such as set forth above and incorporated herein that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM.

84.     In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

85.     Defendants sold GTX 970 cards directly to consumers through their websites.  In addition, to the extent any of the GTX 970 cards were purchased from authorized retailers, the sellers of these goods were not intended to be the ultimate consumers of the GTX 970 and were merely a pass-through entity.  Plaintiffs and the Class members were the intended, ultimate consumers of the GTX 970.  As such, the warranty agreements applicable to the GTX 970, whether express or implied, to the extent not directly provided by Defendants to Plaintiffs and Class members were designed for and made expressly for the benefit of the ultimate consumers only (*i.e.*, Plaintiffs and the Class).  Thus, as any warranty agreements accompanying the GTX 970 cards were intended to benefit the ultimate consumers and not the retailers, and Plaintiffs and Class members are the intended beneficiaries of such warranties, they are the intended third-party beneficiaries of any contracts between Defendants and any retailers for the sale of such products.

86.     All conditions precedent to seeking liability under claims for breach of express or implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue, Defendants having been placed on reasonable notice of these breaches of the warranties, and having had an opportunity to cure the issue for Plaintiffs and all Class members and

34

provide notice and compensation to them prior to asserting this claim in this action.  Defendants have failed to repair or replace the GTX 970 devices, voluntarily offer to take any remedial measures, or otherwise provide appropriate relief at no cost to Plaintiff and Class members.

87.    As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and Class members have been injured and harmed because such claims were a substantial and material factor in their purchase decision and/or the graphics card they received was worth substantially less than the card they were promised and expected.

## COUNT III

### Breach Of Implied Warranty Of Merchantability

88.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

89.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

90.    Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM. In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

91.    Defendants breached the implied warranty of merchantability, which by law (including, *inter alia*, the California Song-Beverly Warranty Act) is provided for the exclusive benefit of consumers in all agreements for the sale of the GTX 970, because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label."  As a result, Plaintiffs and Class members did not receive goods as impliedly warranted by Defendants to be merchantable.

92.     Plaintiffs and Class members purchased the GTX 970 based in substantial part upon Defendants' skill and judgment in properly packaging and labeling the GTX 970.

93.     The GTX 970 was not altered by Plaintiffs or Class members.

94.     The GTX 970 did not conform to these implied warranties when it left the exclusive control of Defendants.

95.     Defendants should have been aware that the GTX 970 would be purchased and used without additional testing by Plaintiffs and Class members.

96.     The GTX 970 was unfit for its intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

97.     All conditions precedent to seeking liability have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue, Defendants having been placed on reasonable notice of these breaches of warranties, and having had an opportunity to cure the issue  for Plaintiffs and all Class members and provide notice and compensation to them prior to asserting this claim in this action.  Defendants have failed to repair or replace the GTX 970 devices, voluntarily offer to take any remedial measures, or otherwise provide appropriate relief at no cost to Plaintiff and Class members.

98.     As a direct and proximate cause of Defendants' breaches of implied warranties, Plaintiffs and Class members have been injured and harmed because the graphics card they received was worth substantially less than the card they were promised and expected.

<u>**COUNT IV**</u>

**Common Counts / Assumpsit / Unjust Enrichment**

99.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

100.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants as an alternative to their claims for breach of contract.

101.     As Plaintiffs and the Class members show just grounds for recovering money to pay for benefits Defendant received from them, they have a right to restitution at law through an action derived

from the common-law writ of *assumpsit* by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

102.    Plaintiffs and Class members conferred benefits on Defendants by purchasing the GTX 970.

103.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the GTX 970.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools: a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

104.    An entity that has been unjustly enriched at the expense of another is required to make restitution to the other.  Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as unjust enrichment, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or damages therefor.  Defendants should not be permitted to retain the benefits conferred via payments to be received from and/or paid by Plaintiffs and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

105.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

## COUNT V

### Violation Of California's Consumers Legal Remedies Act ("CLRA"),

### California Civil Code §§ 1750, *et seq.*

106.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

107.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

108.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

109.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

110.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(14), prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

111.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(16), prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

112.   Defendants violated these provisions by misrepresenting that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM, or omitting material facts to the contrary. In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs and omitting material facts to the contrary.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

113.   Plaintiffs and the Class suffered damage caused by Defendants because it can be reasonably presumed based on the admitted materiality of the misrepresentations at issue herein that Plaintiffs and Class members would not have purchased the GTX 970 at the prices that they did if the true facts about the product had been disclosed, and the graphics card they received was worth substantially less than the card they were promised and expected.

114.    More than 30 days prior to filing this First Amended Consolidated Class Action Complaint including this Cause of Action, CLRA notice letters were served on Defendants that complied in all respects with California Civil Code § 1782(a).  Defendants failed to provide the relief required under the CLRA as requested in Plaintiffs' letters.

115.    Wherefore, Plaintiffs seek damages, restitution, injunctive relief, costs and attorneys' fees for this violation of the CLRA.

<u>**COUNT VI**</u>

**Violation Of California's Unfair Competition Law ("UCL"),**

**California Business & Professions Code §§ 17200,** *et seq.*

116.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

117.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

118.    Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* as to all Class members.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

119.    Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the Magnuson-Moss Warranty Act, the FAL, the CLRA, and express and implied warranties, as described herein.

120.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

121.    Defendants violated the "fraudulent" or "deceptive" prong of the UCL by making misrepresentations and omitting material facts about the GTX 970, as described herein, that were likely to deceive consumers targeted by such claims.

122.    Plaintiffs were injured in fact and lost money or property as a result of Defendants' UCL violations because they would not have purchased the GTX 970 at the prices that they did if the material facts at issue herein had been fully disclosed, and the graphics card they received was worth substantially less than the card they were promised and expected.  Plaintiffs and the Class members are thus entitled to equitable monetary and injunctive relief.

## COUNT VII

### Violation Of California's False Advertising Law ("FAL"),

### California Business & Professions Code §§ 17500, *et seq.*

123.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

124.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

125.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it unlawful for any person "to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading".

126.    Defendants committed acts of false or misleading advertising, as defined by §17500, by misrepresenting that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs, or omitting material facts to the contrary.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

127.    Defendants should have known through the exercise of reasonable care that their representations and omissions of material facts about the GTX 970 were untrue or misleading.

40

128.     Defendants' actions in violation of § 17500 were untrue or misleading such that the general public targeted by Defendants to act upon such advertisements were likely to be deceived.

129.     Plaintiffs were injured in fact and lost money or property as a result of Defendants' FAL violations because they would not have purchased the GTX 970 at the prices that they did if the true facts about the GTX 970 cards had been fully disclosed, and the graphics card they received was worth substantially less than the card they were promised and expected.  Plaintiffs and the Class members are thus entitled to equitable monetary and injunctive relief.

**COUNT VIII**

**Negligent Misrepresentation**

130.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

131.     Plaintiffs bring this claim individually and on behalf of the members of the Class against all Defendants.

132.     As discussed above, Defendants misrepresented material facts that the GTX 970 had (i) 2 MB of L2 cache, (ii) 64 ROPs, and (iii) 4 GB of GDDR5 VRAM.  In fact, the GTX 970 has only 1.75 MB of L2 cache, and 56 ROPs.  Additionally, the purported "4 GB" of VRAM is actually divided into two pools:  a main pool of 3.5 GB, and a smaller pool of 0.5 GB that runs at approximately one-seventh the speed of the 3.5 GB pool (192 GB per second, versus 28 GB per second), which causes a bottleneck that reduces the GTX 970's performance.

133.     At the time Defendants made these representations, Defendants reasonably should have known that these representations were false or made them without knowledge of their truth or veracity.

134.     Defendants thus negligently misrepresented material facts about the GTX 970.

135.     The negligent misrepresentations made by Defendants, upon which Plaintiffs and Class members presumably reasonably and justifiably relied based on the materiality of such claims, were intended to induce and actually induced Plaintiffs and Class members to purchase the GTX 970.

136.     Plaintiffs and Class members would not have purchased the GTX 970 at the prices that they did, if at all, if the true facts had been known.

137.    The actions of Defendants proximately caused injury to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## ALTERNATIVE COUNTS

138.    The following Counts are asserted by Plaintiffs on behalf of subclasses of residents of their respective states alternatively or hypothetically pursuant to Rule 8(d)(2), and are not intended to waive allegations as to the application of California law to the claims of all Class members nor be offered as admissions as to the application of other claims within this pleading as to all Class members.

## <u>COUNT IX</u>

### Violation Of The Michigan Consumer Protection Act ("MCPA"),

### Mich. Comp. Laws § 445.901, *et seq.*

139.    Plaintiff Ostrowski hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

140.    Plaintiff Ostrowski brings this claim individually and on behalf of the members of a proposed Michigan Subclass against all Defendants.

141.    Mich. Comp. Laws § 445.903(c) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Defendants violated this provision by misrepresenting the performance characteristics of the GTX 970.

142.    Mich. Comp. Laws § 445.903(e) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendants violated this provision by misrepresenting the performance characteristics of the GTX 970.

143.    Plaintiff Ostrowski and the Michigan Subclass did, in fact, rely on such representations in their decision regarding the purchase of the GTX 970, which were primarily used for "personal, family and household services."

144.    Through those misleading and deceptive statements and false promises, Defendants violated the Michigan Consumer Protection Act.

145.     The Michigan Consumer Protection Act applies to Defendants' transactions with Plaintiff Ostrowski and the Michigan Subclass because Defendants' deceptive scheme was carried out in Michigan and affected Plaintiff Ostrowski.

146.     Plaintiff Ostrowski and the Michigan Subclass relied on Defendants' silence as to issues with the GTX 970 in connection with their decision regarding the purchase and/or use of the GTX 970.

147.     As a direct and proximate result of Defendants' deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiff Ostrowski and the Michigan Subclass have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT X

**Violation Of The Florida Deceptive And Unfair Trade Practices Act ("FDUTPA"),**

**Fla. Stat. §§ 501.201,** *et seq.*

148.     Plaintiff Torrales hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

149.     Plaintiff Torrales brings this claim individually and on behalf of the members of a proposed Florida Subclass against all Defendants.

150.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* (the "Act").  The express purpose of this Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §§ 501.202(2).

151.     Plaintiff Torrales and Florida Subclass members are "consumers" within the meaning of Fla. Stat. §§ 501.203(7).

152.     Defendants are engaged in "trade or commerce" as defined by Fla. Stat. §§ 501.203(8).

153.     The sale of the GTX 970 constitutes a "consumer transaction" within the scope of Fla. Stat. §§ 501.201 to 501.213.

154.     Fla. Stat. §§ 501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

155.     Defendants have violated this Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.  Specifically, Defendants misrepresented the performance characteristics of the GTX 970.

156.     Defendants' unfair and deceptive practices are likely to mislead – and have misled – Plaintiff Torrales and Florida Subclass members acting reasonably under the circumstances, and violates Fla. Stat. §§ 501.204.

157.     Defendants' conduct proximately caused the injuries to Plaintiff Torrales and the Florida Subclass.

158.     Plaintiff Torrales and the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices in that because they would not have purchased the GTX 970 at the prices they did if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

159.     The damages suffered by Plaintiff Torrales and the Florida Subclass were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendants, as more fully described herein.

160.     Pursuant to Fla. Stat. §§ 501.211(1), Plaintiff Torrales and the Florida Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

161.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Torrales and the Florida Subclass make claims for damages and attorneys' fees and costs.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

## COUNT XI

### Violation Of New York Gen. Bus. Law § 349

162.    Plaintiff Bernabel hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

163.    Plaintiff Bernabel brings this claim individually and on behalf of the members of a proposed New York Subclass against all Defendants.

164.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misrepresenting the performance characteristics of the GTX 970.

165.    The foregoing deceptive acts and practices were directed at consumers.

166.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the GTX 970's performance characteristics to induce consumers to purchase same.

167.    Plaintiff Bernabel and members of the New York Subclass were injured because they would not have purchased the GTX 970 at the prices they did if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

168.    On behalf of himself and other members of the New York Subclass, Plaintiff Bernabel seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees to the extent permitted by such law.

## COUNT XII

### Violation Of New York Gen. Bus. Law § 350

169.    Plaintiff Bernabel hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

170.    Plaintiff Bernabel brings this claim individually and on behalf of the members of a proposed New York Subclass against all Defendants.

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT      CASE NO.: 15-cv-00760-CRB

171.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of Section 350 of the New York General Business Law.

172.     Defendants' false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

173.     Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

174.     Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

175.     As a result of Defendants' false, misleading, and deceptive statements and representations of fact, Plaintiff Bernabel and the New York Subclass have suffered and continue to suffer economic injury.

176.     Plaintiff Bernabel and the New York Subclass suffered an ascertainable loss caused by Defendants' misrepresentations because they would not have purchased the GTX 970 at the prices they did if they knew the truth about the product, and the graphics card they received was worth substantially less than the card they were promised and expected.

177.     On behalf of himself and other members of the New York Subclass, Plaintiff Bernabel seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees, to the extent permitted by such law.

### COUNT XIII

### Violation Of The Illinois Consumer Fraud And Deceptive Practices Act,

### 815 Ill. Comp. Stat. 505/1, *et seq.*

178.     Plaintiffs Vorraso, Dropski, and Verlinden hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

179.     Plaintiffs Vorraso, Dropski, and Verlinden bring this claim individually and on behalf of the members of a proposed Illinois Subclass against all Defendants.

180.    Defendants violated 815 ILL. COMP. STAT. 505/2 by misrepresenting the performance characteristics of the GTX 970.

181.    Defendants also violated 815 ILL. COMP. STAT. 505/2 by failing to immediately notify affected customers of the mislabeling of the GTX 970.

182.    These deceptive statements and omissions of Defendants were intended to induce Plaintiffs Vorraso, Dropski, and Verlinden and the Illinois Subclass members' reliance on the misinformation concerning the GTX 970's performance.

183.    Plaintiffs Vorraso, Dropski, and Verlinden and the Illinois Subclass members were deceived by Defendants' misrepresentation of the performance characteristics of the GTX 970.

184.    Plaintiffs Vorraso, Dropski, and Verlinden and Illinois Subclass members have suffered injury in fact and lost money and property as a result of these violations of 815 ILL. COMP. STAT. 505/2.

185.    Plaintiff Vorraso, Dropski, and Verlinden's and the Illinois Subclass' injuries were proximately caused by Defendants' deceptive behavior.

186.    Pursuant to 815 ILL. COMP. STAT. 505/7 and 10a, Plaintiffs Vorraso, Dropski, and Verlinden seek an order requiring Defendants to pay monetary and punitive damages for the conduct described herein, and pay Plaintiffs' reasonable attorneys' fees and costs of suit.

## COUNT XIV

### Violation Of The Missouri Merchandising Practices Act,

### Mo. Rev. Stat. § 407.010, *et seq.*

187.    Plaintiff Doerrer hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

188.    Plaintiff Doerrer brings this claim individually and on behalf of the members of a proposed Missouri Subclass against all Defendants.

189.    The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' mislabeling of the performance characteristics of the GTX 970, which Defendants failed to adequately investigate, disclose, and remedy.

190.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

47

191.    Defendants' actions impact the public interest because Plaintiff Doerrer and members of the Missouri Subclass were injured in exactly the same way as thousands of others purchasing the GTX 970 as a result of Defendants' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

192.    Plaintiff Doerrer and the Missouri Subclass were injured as a result of Defendants' conduct.  Plaintiff Doerrer did not receive the benefit of his bargain in that the GTX 970 does not operate consistent with its labeling.

193.    Defendants' conduct proximately caused the injuries to Plaintiff Doerrer and the Missouri Subclass.

194.    Defendants are liable to Plaintiff Doerrer and the Missouri Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT XV

### Violation Of The Oklahoma Consumer Protection Act,

### Okla. Stat. tit. 15 § 751, *et seq.*

195.    Plaintiff Ellis hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

196.    Plaintiff Ellis brings this claim individually and on behalf of the members of a proposed Oklahoma Subclass against all Defendants.

197.    The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' mislabeling of the performance characteristics of the GTX 970, which Defendants failed to adequately investigate, disclose, and remedy.

198.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

199.    Defendants' actions impact the public interest because Plaintiff Ellis and the Oklahoma Subclass were injured in exactly the same way as thousands of others purchasing the GTX 970 as a result of Defendants' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

200.    Plaintiff Ellis and the Oklahoma Subclass were injured as a result of Defendants' conduct.  Plaintiff Ellis did not receive the benefit of his bargain in that the GTX 970 does not operate consistent with its labeling.

201.    Defendants' conduct proximately caused the injuries to Plaintiff Ellis and the Oklahoma Subclass.

202.    Defendants are liable to Plaintiff Ellis and the Oklahoma Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

<u>**COUNT XVI**</u>

**Violations Of The Connecticut Unfair Trade Practices Act,**

**Conn. Gen. Stat. § 42-110,** *et seq.*

203.    Plaintiff  Brenek hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

204.    Plaintiff Brenek brings this claim individually and on behalf of the members of a proposed Connecticut Subclass against all Defendants.

205.    The Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), provides in pertinent part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

206.    CUTPA defines a person as "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, and any other legal entity."  Defendants are  each a "person" within the meaning of CUTPA.

207.    CUTPA defines "trade" and "commerce" to include "the sale . . ., the offering for sale . . ., or the distribution of any …property, tangible or intangible … and any other article, commodity, or thing of value in this state."  Defendants each engaged in "trade" and "commerce" in the State of Connecticut within the meaning of CUTPA.

208.    Defendants each engaged in a deceptive act or practice by making false or misleading statements about the technical specifications and performance characteristics of the GTX 970, as set forth in detail above.

209.    Defendants each engaged in unfair acts or practices in the conduct of trade or commerce within the meaning of CUTPA.  Defendants' conduct as described above was unfair within the meaning of CUTPA because it (a) offends public policy as has been established by statutes, common law or otherwise; (b) was immoral, unethical, oppressive and unscrupulous; or (c) caused substantial injury to consumers.  All three criteria do not need to be established to support a finding of unfairness.

210.    (a)  Defendants' conduct as described herein offends public policy because it violates federal and state laws and federal regulations against engaging in systematic false or misleading advertising and breaches warranties as to the specifications of the GTX 970.  (b)  In addition, Defendants' activities were immoral, unethical, oppressive and unscrupulous.  (c)  Further, Defendants' conduct caused substantial economic injury to Plaintiffs and Class Members residing in Connecticut, who are each out hundreds of dollars based on the purchase of a GTX 970 device that could not operate as represented, which was not outweighed by any countervailing benefits to consumers and which caused an injury that could not reasonably have been avoided.

211.    As a result of Defendants' violations of CUTPA based on the facts as alleged herein, Plaintiff Brenek and Class Members residing in Connecticut have suffered an ascertainable loss of money, entitling them to all the relief provided  under the CUTPA, including actual damages, equitable relief, costs and attorneys' fees.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class, request that the Court order the following relief and enter judgment against Defendants as follows as applicable for the particular cause of action:

     a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the members;

     b.  For an order declaring the Defendants' conduct violates the statutes and laws referenced herein;

     c.  For an order finding in favor of Plaintiffs and the Class  on all counts asserted herein;

     d.  For compensatory damages in amounts to be determined by the Court and/or jury;

     e.  For pre-judgment and post-judgment interest on all amounts awarded;

f.   For an order of restitution, disgorgement and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses and costs of suit under, *inter alia*, the MMWA, the CLRA, the Song-Beverly Warranty Act, C.C.P. Section 1021.5 and the common fund and substantial benefit doctrines.

## JURY TRIAL DEMAND

Plaintiffs demand a trial of this action by a jury on all claims so triable.

DATED:  June 8, 2015                          WHATLEY KALLAS LLP

By: _____
ALAN M. MANSFIELD (SBN 125998)
amansfield@whatleykallas.com

1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

10200 Willow Creek Rd., Suite 160
San Diego, CA 92131
Tel: (619) 308-5034
Fax: (855) 274-1888

BURSOR & FISHER, P.A.

By:____/s/ L. Timothy Fisher_____
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com

Julia A. Luster (SBN 295031)
jluster@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Co-Lead Interim Class Counsel*

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

WHATLEY KALLAS, LLP
Joe R. Whatley, Jr
jwhatley@whatleykallas.com
(*Admitted Pro Hac Vice*)
1180 Avenue of the Americas, 30th Floor
New York, NY 10036
Tel: (212) 447-7060
Fax: (800) 922-4851

WIGGINS CHILDS PANTAZIS FISHER GOLDFARB, LLC
Dennis G. Pantazis (*Admitted Pro Hac Vice*)
dgp@wigginschilds.com
Robert J. Camp
rcamp@wigginschilds.com
D. G. Pantazis, Jr. (*Admitted Pro Hac Vice*)
dgpjr@wigginschilds.com
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel: (205) 314-0531
Fax: (205) 314-0731

LOWE LAW FIRM, LLC
E. Clayton Lowe, Jr.
clowe@lowelaw.com
The Kress Building
301 Nineteenth Street North, Suite 525
Birmingham, AL 35203
Tel: (205) 314-0607

KAPLAN FOX & KILSHEIMER, LLP
Laurence D. King
lking@kaplanfox.com
Linda Fong
lfong@kaplanfox.com
Mario M. Choi
mchoi@kaplanfox.com

350 Sansome Street, Suite 400
San Francisco, CA  94104
Tel: (415) 772-4700
Fax: (415) 772-4707

Frederic S. Fox
ffox@kaplanfox.com
David A. Straite
dstraite@kaplanfox.com
850 Third Ave., 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

1

2

3

4

WITES & KAPETAN, P.A.
Marc A. Wites
mwites@wklawyers.com
4400 North Federal Highway
Lighthouse Point, FL 33064
Tel: (954) 570-8989
Fax: (954-354-0206

5

6

7

8

9

10

11

DOYLE LOWTHER LLP
William J. Doyle II
bill@doylelowther.com
John Lowther
john@doylelowther.com
James R Hail
jim@doylelowther.com
Christopher W. Cantrell
ccantrell@doylelowther.com
10200 Willow Creek Rd., Suite 150
San Diego, CA 92131
Tel: (858) 935-9960
Fax: (858) 939-1939

12

13

14

15

16

WESTERMAN LAW CORP.
Jeff S. Westerman
jwesterman@jswlegal.com
Anna Faircloth
afaircloth@jswegal.com
1900 Avenue of the Stars, 11th Fl.
Los Angeles, CA  90067
Tel: (310) 698-7880
Fax: (310) 698-7452

17

18

19

20

EDELSON, PC
Samuel M. Lasser
slasser@edelson.com
1934 Divisadero Street
San Francisco, CA 94115
Tel: (415) 994-9930
Fax: (415) 776-8047

21

22

23

24

25

26

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Amir C. Missaghi
amissaghi@edelson.com
350 North LaSalle Street, Suite 1300
Chicago, IL  60654
Tel: (312) 589-6370
Fax: (312) 589-6378

27

28

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT    CASE NO.: 15-cv-00760-CRB

AUDET & PARTNERS, LLP
William M. Audet
waudet@audetlaw.com
Jonas P. Mann
jmann@audetlaw.com
Theodore H. Chase
tchase@audetlaw.com
221 Main Street, Suite 1460
San Francisco CA  94105
Tel: (415) 568-2555
Fax: (415) 568-2556

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik
aplutzik@bramsonplutzik.com
Michael S. Strimling
mstrimling@bramsonplutzik.com
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Tel: (925) 945-0200
Fax: (925) 945-8792

LEVI & KORSINSKY LLP
Shane Rowley
srowley@zlk.com
Courtney E. Maccarone
cmaccarone@zlk.com
30 Broad Street, 24th Floor
New York, NY  10004
Tel: (212) 363-7500
Fax: (212) 363-7171

WHITFIELD BRYSON & MASON LLP
Gary E. Mason
gmason@wbmllp.com
Esfand Y. Nafisi
enafisi@wbmllp.com
Benjamin S. Branda
bbranda@wbmllp.com
1625 Massachusetts Ave, NW
Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 429-2294

*Attorneys for Plaintiffs*

FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT     CASE NO.: 15-cv-00760-CRB

WHATLEY KALLAS LLP
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Julia A. Luster (SBN 295031)
jluster@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Co-Lead Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE NVIDIA GTX 970 GRAPHICS CARD LITIGATION** | **CASE NO.: 15-cv-00760-CRB** |
| | **CLASS ACTION** |
| **THIS DOCUMENT RELATES TO:** | **AFFIDAVIT OF VENUE** |
| **ALL ACTIONS** | |

I, ALAN M. MANSFIELD, declare as follows:

1.      I am one of the counsel for Plaintiffs in this action and make this declaration to the best of my knowledge, information and belief of the facts stated herein.

2.      At all times herein, Defendants NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation d/b/a Giga-Byte Technology Co. Ltd., G.B.T. Inc. (together with Gigabyte Global Business Corporation, "Gigabyte"), ASUS Computer International ("ASUS") and EVGA Corporation ("EVGA") (collectively, the "Defendants") were and are doing business within this District either directly as their corporate headquarters are based here or indirectly through their

1

1  promotion, marketing, distribution, and sales of the GTX 970 GPU products at issue in this litigation,

2  as well as their operation of interactive websites that permit consumers to order goods and services

3  from them and engage in transactions in this District, and thus this District is also where the

4  transactions or substantial portions thereof occurred.

5       3.      Plaintiffs' Complaint filed in this matter contains a cause of action for violation of the

6  Consumers Legal Remedies Act as against Defendants.

7       4.      Plaintiffs Andrew Ostrowski, Mark Roushion, Kiloe Young, Jason Doerrer, Pedro

8  Santiago, Kyle Ellis, Andy Torrales, Dylan Jordan, Joseph Vorraso, David Dropski, Austin Verlinden,

9  Stephen Denz, Joel Bernabel, Jan Paolo Jimenez, Timothy Farley, Alexander Montgomery, and Ryan

10 Brenek are either residents of this District or purchased products from Defendants located in this

11 District or referenced NVIDIA's interactive website that advertises the GTX 970 GPU, which is

12 maintained in this District.  Thus, a substantial portion of the transactions at issue occurred in this

13 District.

14      5.      Defendants NVIDIA and ASUS are Delaware corporations with their principal places of

15 business and headquarters in this District, and Defendants Gigabyte, G.B.T., and EVGA are California

16 corporations doing business in this District.

17      6.      Per the foregoing assertions, this cause of action has been properly commenced in the

18 proper District for trial.

19      I declare under penalty of perjury under the laws of the United States that the foregoing is true

20 and correct and that this declaration was signed on the 8th day of June, 2015, at San Diego, California.

21

22

23 _____

        ALAN M. MANSFIELD

24

25

26

27

28

2

EXHIBIT A



# EXHIBIT B



EXHIBIT C









# /ISUS
## IN SEARCH OF INCREDIBLE
Unleash Your Gaming Instincts

STRIX

PhysX by NVIDIA

GPU Boost 2.0

**Inputs and Outputs**

NVIDIA
# GEFORCE GTX 970
Game Faster, Quieter, Cooler.




## DIRECTCU II + 0dB FAN
### 30% COOLER, SILENT GAMING.

Strix drives DirectCU technology further with 0dB fan technology that lets you enjoy games like League of Legends and StarCraft II in complete silence — because the fan stops completely when the GPU temperature remains below a set level. And during heavy loading, Strix performs 30% cooler and 3X quieter than reference.

## DIGI+ VRM + SUPER ALLOY POWER
### 30% LESS POWER NOISE AND 2.5 TIMES LONGER DURABILITY

Acclaimed DIGI+ VRM has been applied via a massive 6-phase power design that uses digital voltage regulators to minimize power noise by 30% and enhance power efficiency by 15%, widen the voltage modulation range, and improve overall stability and longevity by 2.5 times longer than reference.

DIGI+ VRM + Super Alloy Power

## GPU TWEAK
### GPU TWEAK WITH ONLINE STREAMING

GPU Tweak helps you modify clock speeds, voltages, fan performance and more, all via an intuitive interface. What's more, a simple online-streaming function lets you share gameplay live — so people can watch as you play.



15000-04272000 | E1767U-C STRIX GTX970-DC2OC-4GD5 | Made in China

HDMI FC CE








3 YEARS LIMITED

performs 30% cooler and 3X quieter than reference.

*Performance may vary by system configuration, GPU variations and ambient temperature

## Powerful Features

- Power by NVIDIA® GeForce® GTX™ 970
- 4GB GDDR5 video memory
- Variety Connectivity:
  Dual DVI/ HDMI / DisplayPort 1.2
- Microsoft® DirectX® 12 & OpenGL® 4.4 support
- ASUS exclusive innovations: GPU Tweak

## Fonctionnalités puissantes

- Cadencé par un NVIDIA® GeForce®
- 4GB Mémoire vidéo GDDR5
- Connectique diversifiée:
  Dual DVI/ HDMI / DisplayPort 1.2 &
- Support Microsoft® DirectX® 12 &
- Innovations exclusives ASUS: GPU

## パワフル機能

- NVIDIA® GeForce® GTX™ 970
- ビデオメモリ4GB GDDR5
- 多様な接続性：
  Dual DVI/ HDMI / DisplayPort 1
- Microsoft® DirectX® 12 & Open
- ASUS だけの新機能: GPU Tweak

## ВОЗМОЖНОСТИ

- Графический процессор NVIDIA® GeForce® GTX™ 970
- 4GB GDDR5 видео-памяти
- Разъемы: Dual DVI/ HDMI / DisplayPort 1.2
- Поддержка DirectX® 12 и OpenGL® 4.4
- Эсклюзивные инновации ASUS: GPU Tweak

EXHIBIT D





**GEFORCE® GTX™ 970**

**GAMING Graphics card**
**TWIN FROZR V**

Own the game with the next generation of MSI Graphics Cards. redefining how you experience graphics on your Gaming PC with a cool running and dead-silent fan solution and the MSI GAMING app for easy overclocking and fine-tuning of your screen for the best experience.

## NEXT-GEN GAMING GRAPHICS CARD

| **Torx Fan** Brand-new fan design Keep cool | **SuperSU Pipe** Increased dissipation efficiency | **Zero Frozr** Smart cooling Stay quiet | **GAMING App** Easy for gaming Better for your eyes |
|---|---|---|---|




   

| **FEATURES** | • NVIDIA Super Resolution technology<br>• NVIDIA® GameWorksTM technology<br>• NVIDIA GameStreamTM technology<br>• NVIDIA G-SyncTM – Ready<br>• NVIDIA SHIELDTM – Ready | • Microsoft DirectX 12<br>• NVIDIA GPU Boost 2.0<br>• NVIDIA Adaptive Vertical Sync<br>• NVIDIA SurroundTM technology<br>• Support for four concurrent displays including:<br>-Dual-link DVI-I, Dual-link DVI-D, HDMI, DisplayPort 1.2 | • NVIDIA SLI®-Ready<br>• NVIDIA CUDA® technology<br>• PCI Express 3.0 support<br>• OpenGL 4.4 support<br>• OpenCLTM support |
|---|---|---|---|

**Minimum System Requirements**
• PCI Express-compliant motherboard with one dual-width x16 graphics slot
• One 6-pin and one 8-pin PCI Express supplementary power connectors
• Minimum 500 W or greater system power supply ( with a minimum 12 V current rating of 42 A)

### SPECIFICATIONS

| GPU | GeForce GTX 970 |
|---|---|
| Memory Size | 4GB GDDR5 |
| Memory bus | 256 bits |
| Output | DisplayPort / HDMI / DL-DVI-D/DL-DVI-I |

**Micro-Star INT'L CO., LTD.**
No.69, Lide St., Zhonghe Dist., New Taipei City 235, Taiwan(R.O.C.)
tel +886-2-3234-5599   fax +886-2-3234-5488
www.msi.com
MSI-NL Eindhoven 5706 5692 ER Son

MSI 微星   微星科技   ◆   are registered trademarks of Micro-Star INT'L Co., LTD

• Specifications and accessories vary by model.
• Specifications are subject to change without notice.
• All brand names are registered trademarks of their respective owners.
• Any configuration other than original product specification is not guaranteed.
• MSI and the names of Micro-Star Int'l Co., Ltd products referenced herein are either registered trademarks and / or service marks of Micro-Star Int'l Co., Ltd

MADE IN CHINA

© 2014 NVIDIA Corporation. All Rights Reserved. NVIDIA, the NVIDIA logo, the GeForce GTX logo, GeForce, GTX, Maxwell, ShadowPlay, GameWorks, SLI, Surround, NVIDIA G-SYNC, NVIDIA GameStream, NVIDIA GPU Boost, SHIELD, and CUDA are registered trademarks and/or trademarks of NVIDIA Corporation in the United States and other countries. OpenCL is a trademark of Apple Inc. used under license to the Khronos Group Inc. Other company and product names may be trademarks of the respective companies with which they are associated.