1
2
3
4

WHATLEY KALLAS LLP
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

5
6
7
8
9

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

10

*Co-Lead Interim Class Counsel*

11

## UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17

**IN RE NVIDIA GTX 970 GRAPHICS CHIP LITIGATION**

━━━━━━━━━━━━━━━━━━━━━

**THIS DOCUMENT RELATES TO:**

**ALL ACTIONS**

**CASE NO.: 15-cv-00760-PJH**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATIONS OF L. TIMOTHY FISHER AND ALAN M. MANSFIELD FILED HEREWITH**

Date:  August 24, 2016
Time:  9:00 a.m.
Courtroom 3 – 3rd Floor

Judge:    Honorable Phyllis J. Hamilton

18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 24, 2016 at 9:00 a.m. before the Honorable Phyllis J. Hamilton, United States District Court Judge for the Northern District of California, 1301 Clay St., Oakland, CA  94612, Plaintiffs, by and through their undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for the Court to:  (i) grant preliminary approval of the proposed Stipulation and Agreement of Settlement and Release ("Settlement Agreement"),[1] (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Bursor & Fisher, P.A. and Whatley Kallas LLP as counsel for the Settlement Class, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time, and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations of L. Timothy Fisher and Alan M. Mansfield and exhibits thereto, including the Settlement Agreement, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

**CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should preliminarily approve the proposed class action settlement pursuant to Fed. R. Civ. P. 23(e).

Dated: July 25, 2016                                                 Respectfully submitted,

                                                                     **WHATLEY KALLAS LLP**

                                                                     By:   _____/s/ Alan M. Mansfield_____
                                                                     Alan M. Mansfield (SBN 125998)

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement, filed concurrently herewith.  *See* Fisher Decl. Ex. 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

**BURSOR & FISHER, P.A.**

By: _____

L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700


*Co-Lead Interim Class Counsel*

**TABLE OF CONTENTS**

PAGE(S)

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.      INTRODUCTION ....................................................................................................................1

II.     PROCEDURAL BACKGROUND ..........................................................................................3

III.    THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS
        ACTION SETTLEMENTS .......................................................................................................6

IV.     TERMS OF THE PROPOSED SETTLEMENT ......................................................................8

        A.      Monetary Relief For Class Members ............................................................................9

        B.      Release And Discharge Of Claims .............................................................................11

        C.      Payment Of Attorneys' Fees And Expenses ...............................................................11

        D.      Compensation For The Class Representatives ............................................................12

        E.      Payment Of Notice And Administrative Fees ............................................................12

V.      THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND
        REASONABLE ......................................................................................................................12

        A.      Strength Of Plaintiffs' Case ......................................................................................13

        B.      Risk Of Continuing Litigation ...................................................................................14

        C.      Risk Of Maintaining Class Action Status ..................................................................14

        D.      The Extent Of Discovery And Status Of Proceedings ...............................................15

        E.      Experience And Views Of Counsel ............................................................................16

VI.     THIS COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS, AND
        ENTER THE PRELIMINARY APPROVAL ORDER ...........................................................16

        A.      The Settlement Should Be Preliminarily Approved Because It
                Satisfies Accepted Criteria ........................................................................................16

        B.      The Proposed Settlement Class Should Be Certified .................................................17

                1.      The Settlement Class Satisfies Rule 23(a) .......................................................18

                        a)      Numerosity ............................................................................................18

                        b)      Commonality .........................................................................................18

                        c)      Typicality ..............................................................................................19

                        d)      Adequacy ...............................................................................................20

                2.      The Settlement Class Satisfies Rule 23(b)(3) ..................................................21

                        a)      Common Questions Of Law And Fact Predominate .......................21

                        b)      A Class Action Is The Superior Mechanism For
                                Adjudicating This Dispute ....................................................................22

        C.      The Proposed Notice Program Constitutes Adequate Notice And
                Should Be Approved ..................................................................................................23

VII.    CONCLUSION .....................................................................................................................25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alaniz v. California Processors, Inc.*,
  73 F.R.D. 269 (N.D. Cal. 1976) ............................................................. 6, 17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................. 18, 21, 22

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994) ............................................................. 19

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ............................................................. 8

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................. 13, 16

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................. 16

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................................................. 14

*Fulford v. Logitech, Inc.*,
  2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010) ............................................................. 15

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................. 13

*Gen. Tel. Co. of the Southwest Falcon*,
  457 U.S. 147 (1982) ............................................................. 19

*Glass v. UBS Fin. Serv., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............................................................. 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................. passim

*In re Apple Computer Sec. Litig.*,
  1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ............................................................. 14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................. 10, 15

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................. 14

*In re Omnivision Techns., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 16

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................. 7, 16

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................................ 6, 7, 8

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................................................... 6, 7

*In re Veritas Software Corp. Sec. Litig.*,
    2007 U.S. App. LEXIS 17623, at *25 (9th Cir. 2007) ............................................. 16

*Livingston v. Toyota Motor Sales USA*,
    1995 U.S. Dist. LEXIS 21757, at *24 (N.D. Cal. 1995) ......................................... 17

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 ...................................................................................................... 7, 8, 13

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ..................................................................................................... 8

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 13, 14, 16

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................. 18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .............................................................................................. 19

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................................. 21

**STATUTES**

15 U.S.C. § 2301 ................................................................................................................ 4

28 U.S.C. § 1712 .............................................................................................................. 24

28 U.S.C. § 1715(b) ......................................................................................................... 12

73 Pa. Stat. § 201-1 ............................................................................................................ 5

815 Ill. Comp. Stat. § 505/1 .............................................................................................. 5

C.R.S. § 6-1-105 ................................................................................................................. 5

California Business & Professions Code § 17200................................................... 4, 22

California Business & Professions Code § 17500........................................................... 4

California Civil Code §1750 ...................................................................................... 4, 21

Conn. Gen. Stat. § 42-110 .................................................................................................. 5

Fla. Stat. § 501.201 ............................................................................................................ 5

Mich. Comp. Laws § 445.901 .............................................................................................. 5

Mo. Rev. Stat. § 407.010 ................................................................................................... 5

N.C. Gen. Stat. § 75-1.1 .................................................................................................... 5

New York Gen. Bus. Law § 349 ...................................................................................... 5

New York Gen. Bus. Law § 350 ...................................................................................... 5

Okla. Stat. tit. 15 § 751 ..................................................................................................... 5

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................... passim

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS § 11.25 (1992) ................................................... 7, 17

Manual for Complex Litigation, § 21.312  (4th ed. 2004) ....................................... 7, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs Andrew Ostrowski, Mark Roushion, Kiloe Young, Jason Doerrer, Pedro Santiago, Kyle Ellis, Andy Torrales, Dylan Jordan, Joseph Vorraso, David Dropski, Austin Verlinden, Stephen Denz, Joel Bernabel, Jan Paolo Jimenez, Timothy Farley, Alexander Montgomery, Ryan Brenek, Jorrell Dye, Chester Bailey, Gukjin Chung, Garret Giordano, Francis Palagano, and Patrick E. Parker (collectively, "Plaintiffs"), by and through Interim Class Counsel Bursor & Fisher, P.A. and Whatley Kallas, LLP (collectively, "Co-Lead Interim Class Counsel" or "Class Counsel"), respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

The instant case is a consolidated set of 15 consumer class action lawsuits filed nationwide beginning in February 2015, which were either filed in or transferred to the U.S. District Court for the Northern District of California, as well as an additional lawsuit pending in San Diego County Superior Court.  All of these related actions arise out of allegedly false and misleading representations on the packaging and advertising of  computer graphics cards incorporating the NVIDIA GeForce GTX 970 graphics processing units (hereinafter, the "GTX 970" devices).  The named plaintiffs are consumers who purchased GTX 970 devices.  The Defendants are the manufacturers of the GTX 970 devices:  NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation d/b/a Giga-Byte Technology Co. Ltd., G.B.T. Inc. (together with Gigabyte Global Business Corporation, "Gigabyte"), ASUS Computer International ("ASUS"), and EVGA Corporation ("EVGA") (collectively, "Defendants").  Specifically, Plaintiffs allege that the GTX 970 devices were sold based on misleading representations that the devices:  (1) operate with a full 4 gigabytes ("GB") of video access memory ("VRAM") instead of the actual 3.5 GB of VRAM and a "less performant" and decoupled 0.5 GB spillover segment that operates as slow as one-seventh the speed of the 3.5 GB pool once the device is required to access more than 3.5 GB of memory, (2) have 64 render output processors ("ROPs"), as opposed to 56 ROPs, and (3) have an L2 cache capacity of 2,048 kilobytes ("KB"), as opposed to 1,792 KB, and omitted material facts

1   to the contrary.  *See* Second Amended Consolidated Class Action Complaint ("SACC") ¶ 4.

2   Defendants have denied these allegations and asserted numerous defenses.

3          The Settlement Agreement and its exhibits are attached to the Declaration of L. Timothy

4   Fisher, filed herewith.  As more specifically set forth in the Settlement Agreement, and as

5   described in more detail below, the parties to this action have reached a settlement that provides a

6   real and substantial benefit to the Settlement Class.  Without any admission of liability, Defendants

7   have agreed to make a cash payment of $30 per GTX 970 unit to Settlement Class Members who

8   submit valid claims, with no cap.  This is an excellent result for Plaintiffs and Settlement Class

9   Members, given that it constitutes an approximate 70% recovery on their claims compared to their

10  expected recovery if they were to succeed at trial.  *See infra* Argument § IV.A.

11         As in any class action, the Settlement is subject initially to preliminary approval and then to

12  final approval by the Court after notice to the class and a hearing.  Plaintiffs now request this Court

13  to enter an order in the form of the Proposed Preliminary Approval Order, which is attached to the

14  Settlement Agreement as Exhibit 5.  That Order will:

15         (1)    grant preliminary approval of the Settlement;

16         (2)    conditionally certify the Settlement Class on a nationwide basis, designate Plaintiffs

17                as Class Representatives, and appoint Whatley Kallas LLP and Bursor & Fisher,

18                P.A. as Settlement Class Counsel;

19         (3)    appoint Kurtzman Carson Consultants LLC ("KCC") as the Administrator and

20                establish procedures for giving notice to members of the Settlement Class;

21         (4)    approve forms of notice to Settlement Class Members;

22         (5)    mandate procedures and deadlines for exclusion requests class and objections; and

23         (6)    set a date, time and place for a final approval hearing.

24         Class certification for purposes of settlement is appropriate under Federal Rules of Civil

25  Procedure 23(a) and (b)(3).  The proposed Settlement Class is so numerous that the joinder of all

26  Settlement Class Members is impracticable; there are questions of law or fact common to the

27  proposed Settlement Class; the proposed Class Representatives' claims are typical of those of the

28  Settlement Class; and the proposed Class Representatives will fairly and adequately protect the

interests of the proposed Settlement Class.  In addition, common issues of law and fact predominate over any questions affecting only individual members and a class action as proposed here is superior to other available methods for the fair and efficient adjudication of the controversy. Issues of manageability of a nationwide class are of little consequence as the parties now seek certification only of a Settlement Class.

The Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Settlement Class Members are treated fairly under the terms of the Settlement.  Plaintiffs, by and through their counsel, have conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Fisher Declaration.  Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement Agreement on a fully informed basis.  It is an outstanding result for parties and Settlement Class Members.  The Court should enter the proposed order granting preliminary approval.

## II.      PROCEDURAL BACKGROUND

On or after February 19, 2015, the following putative class action lawsuits (collectively, the "Related Actions") were filed in or transferred to the United States District Court for the Northern District of California, San Francisco Division (the "Court") or in the San Diego County Superior Court:

> (1)  *Ostrowski v. NVIDIA Corp.*, Case No. 15-cv-00760-CRB
>
> (2)  *Santiago v. NVIDIA Corp., et al.*, Case No. 15-cv-00789-CRB
>
> (3)  *Roushion v. NVIDIA Corp., et al.*, Case No. 15-cv-01102-CRB
>
> (4)  *Young v. NVIDIA Corp., et al.*, Case No. 15-cv-01204-CRB
>
> (5)  *Denz v. NVIDIA Corp., et al.*, Case No. 15-cv-01243-CRB
>
> (6)  *Doerrer v. G.B.T., INC., et al.*, Case No. 15-cv-01304-CRB
>
> (7)  *Bernabel, et al. v. NVIDIA Corp., et al.*, Case No. 15-cv-01296-CRB
>
> (8)  *Farley, et al. v. NVIDIA Corp., et al.*, Case No. 15-cv-01800-CRB

1      (9)   *Dye v. NVIDIA Corp.*, Case No. 15-cv-03428-CRB

2      (10)  *Bailey v. NVIDIA Corp.*, Case No. 15-cv-04861-CRB

3      (11)  *Chung v. NVIDIA Corp.*, Case No. 15-cv-04308-CRB

4      (12)  *Giordano v. NVIDIA Corp.*, Case No. 15-c-04410-CRB

5      (13)  *Palagano v. NVIDIA Corp.*, Case No. 15-cv-03948-CRB

6      (14)  *Parker v. NVIDIA Corp.*, Case No. 15-cv-04306-CRB

7      (15)  *Don Le v. NVIDIA Corp.,* Case No. 37-2015-00006732-CU-BT-CTL ("the

8            State Court Action").

9            By Orders dated March 27, 2015 (Dkt. No. 34), April 23, 2014 (Dkt. No. 57), and

10    November 10, 2015 (Dkt. No. 100), the Court consolidated all such Related Actions under the

11    caption *In re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760 (collectively, the

12    "Action"), and on May 14, 2014 (Dkt. No. 64) appointed Whatley Kallas LLP and Bursor &

13    Fisher, P.A. as Co-Lead Interim Class Counsel.

14          On July 15, 2015 Defendants filed a Motion to Dismiss the First Amended Complaint,

15    which was later withdrawn following Plaintiffs' filing of a second amended complaint.

16          On November 24, 2015, after the Related Actions were reassigned to the Honorable Phyllis

17    J. Hamilton, Plaintiffs filed the SACC.  The SACC alleges 22 claims for relief:

18
19          (1)   Violation of The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§
                  2301, *et seq.*;

20          (2)   Breach of Express Warranty;

21          (3)   Breach of Implied Warranty of Merchantability ;

22
23          (4)   Common Counts / Assumpsit / Unjust Enrichment;

          (5)   Violation of California's Consumers Legal Remedies Act ("CLRA"),
24                California Civil Code §§1750, *et seq.*;

25
26          (6)   Violation of California's Unfair Competition Law ("UCL"), California
                  Business & Professions Code §§ 17200, *et seq.*;

27          (7)   Violation of California's False Advertising Law ("FAL"), California
                  Business & Professions Code §§ 17500, *et seq.*;

28

(8)   Negligent Misrepresentation;

(9)   Violation of the Michigan Consumer Protection Act ("MCPA), Mich. Comp. Laws §§ 445.901, *et seq.*;

(10)   Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*;

(11)   Violation of New York Gen. Bus. Law § 349;

(12)   Violation of New York Gen. Bus. Law § 350;

(13)   Violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. §§ 505/1, *et seq.*;

(14)   Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*;

(15)   Violation of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §§ 751, *et seq.*;

(16)   Violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110, *et seq.*;

(17)   Violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1;

(18)   Violation of the Maryland Unfair and Deceptive Trade Practices Act, Md. Code Ann. § 13-303;

(19)   Violation of the Colorado Unfair and Deceptive Trade Practices Act, C.R.S. § 6-1-105;

(20)   Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et seq.*;

(21)   Violation of the Georgia Fair Business Practices Act; and

(22)   Violation of the Consumer Protection Laws of the Various States.

On January 22, 2016, Defendants filed a Motion to Dismiss portions of the SACC, which Plaintiffs opposed on April 20, 2016. That motion has been taken off calendar pending consideration of this Settlement.  *See* 6/14/16 Order Vacating Schedule for Defendants' Motion to Dismiss (Dkt No. 125).

Plaintiffs, through their counsel, have conducted extensive research, discovery, and

investigation during the prosecution of the Action, including, without limitation: (i) inspection and analysis of Defendants' sales data, advertising materials, technical specifications, and benchmarks and other performance data; (ii) research into additional benchmarking and testing of the GTX 970 by various trade publications; (iii) review of Defendants' public filings, press releases, and other public statements; (iv) interviews with NVIDIA employees and third-party witnesses and presentations by Class Counsel to NVIDIA employees and representatives analyzing the technical performance and testing data provided by NVIDIA; (v) consultation with and retention of experts and litigation consultants; and (vi) service of subpoenas *duces tecum* to third-party retailers who sold the GTX 970, and subsequent review of resulting documents from Best Buy, Rakuten, B&H Photo, Amazon, MacMall, and Newegg.

Counsel for Plaintiffs and counsel for Defendants have engaged in substantial arm's-length negotiations in an effort to resolve the Action over a period of roughly one year, including conducting numerous telephone conferences, in-person meetings with NVIDIA employees and representatives, and an in-person mediation before the Honorable Edward A. Infante on April 26, 2016, with subsequent follow-up negotiations, during which the terms of an agreement were extensively debated and discussed.

Defendants have vigorously denied and continue to vigorously deny all of the claims and contentions alleged in this Action.  However, Defendants have considered the risks and potential costs of continued litigation of this action, on the one hand, and the benefits of the proposed settlement, on the other hand, and desire to settle the action upon the terms and conditions set forth in the Settlement Agreement.

## III.   THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439

U.S. 837 (1978).  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004) (hereinafter "*Manual*").

The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is whether this settlement should be preliminarily approved" for the purposes of notifying the putative class members of the proposed settlement and proceeding with a fairness hearing, which requires the court to consider whether the settlement appears to be fair and "falls within the *range of possible approval*") (emphasis added).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982, *cert. denied,* 459 U.S. 1217 (1983)).

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, however, the Court's role is

1    to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor*, 516

2    F.3d at 1100.

3           In evaluating preliminarily the adequacy of a proposed settlement, particular attention

4    should be paid to the process of settlement negotiations. Here, as Class Counsel both attest, and

5    both sides and the mediator can confirm, the negotiations were conducted at arm's length, were

6    non-collusive and were well informed, with an assessment of the strengths and weaknesses of the

7    claims on both sides, were conducted between counsel on both sides with decades of class action

8    experience, and utilized at the appropriate time the assistance of a well-respected mediator with

9    similar decades of experience. Under such circumstances, the settlement is entitled to a

10   presumption of reasonableness, and the court is entitled to rely upon the opinions and assessments

11   of counsel. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

12          Beyond the public policy favoring settlements, the principal consideration in evaluating the

13   fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the

14   benefits of settlement. "[B]asic to this process in every instance, of course, is the need to compare

15   the terms of the compromise with the likely rewards of litigation." *Protective Committee for*

16   *Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

17   That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated

18   between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

19   judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

20   the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to

21   all concerned." *Officers for Justice*, 688 F.2d at 625.

22   **IV.    TERMS OF THE PROPOSED SETTLEMENT**

23          The proposed Settlement Class consists of "all persons and entities resident in the United

24   States of America who purchased a GTX 970 GPU in the United States of America from the

25   Defendants, the AIC Partners or their authorized retailers prior to the Preliminary Hearing Date

26   other than for purposes of resale or distribution. Excluded from the Settlement Class are (1)

27   employees of Defendants or the AIC Partners, including their current or former directors, officers

28   and counsel; (2) any entity that has a controlling interest in Defendants or the AIC Partners; (3)

Defendants' and the AIC Partners' affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any member of the judge's immediate family."[2]  *See* Settlement Agreement § 1.25. Each Settlement Class Member must submit a single proof of claim for each Unit he or she is making a claim; however, if the Administrator possesses individually identifiable data that demonstrates the person purchased a GTX 970, the claimant only needs to submit a simple verification code and update their contact information (if applicable).  *See* Settlement Agreement § 2.2 ("If a Settlement Class Member receives direct notice of the terms of the Settlement, they shall only be required to submit on the Claim Form the unique verification code provided on the direct notice sent to them by the Administrator, and any updates to their mailing address.").  The proof of claim shall be signed under penalty of perjury.

### A.    Monetary Relief For Class Members

If the proposed Settlement is approved by the Court, Defendants have agreed to contribute towards a Reimbursement Fund for payments to Settlement Class Members who submit valid claims.  The Reimbursement Fund shall be established and maintained as a non-interest bearing escrow account by the Administrator, who shall advise Defendants of the amount to contribute based on the amount of complete Claim Forms submitted.  Defendants shall deposit such amounts with the Administrator within 14 days of notification.  All funds held in the Reimbursement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the terms of the Settlement Agreement or further order of the Court.  *See* Settlement Agreement § 2.

Settlement Class Members who own a GTX 970 device purchased prior to the Preliminary Hearing Date are entitled to submit a Claim Form for each Unit purchased during the Class Period.

---

[2] This class definition does not differ from the definition proposed in the SACC, with the exception of some minor wording changes.  *Compare with* SACC ¶ 87 ("Plaintiffs seek to represent a class defined as all persons in the United States (including its states, districts or territories) who purchased a GTX 970 graphics card (the 'Class').  Excluded from the Class are the following:  (a) All judicial officers in the United States and their families through the third degree of relationship; (b) Defendants and any of their officers, directors, and employees, and any person or entity who has already settled or otherwise compromised similar claims against a defendant and provided a full release; (c) Plaintiffs' counsel, anyone working at the direction of Plaintiffs' counsel, and/or any of their immediate family members; and (d) Anyone who has pending against a named Defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.").

Subject to verification and approval by the Administrator, Settlement Class Members shall be entitled to a $30 cash payment for each Unit for which a timely Claim is submitted and approved by the Administrator.  If a Settlement Class Member purchased multiple Units, they can submit one Claim Form listing multiple Units.  *See id.*

To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  While settlement amounts that are close to the plaintiffs' estimate of damages provide strong support for granting preliminary and final approval, settlements that constitute only a fraction of the potential recovery do <u>not</u> preclude a court from finding that the settlement is nonetheless fair.  *Id.* (finding that a settlement constituting of one-sixth of the potential recovery was fair and adequate).  Thus, district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be fair and reasonable, especially when taking into account the uncertainties involved with litigation.  *See, e.g.*, *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable).

Here, the Settlement constitutes an excellent recovery for Settlement Class Members, and is within the reasonable range of probable recoveries.  While there are various formulations of recovery, focusing on the concept of comparing the value of what was advertised as compared to the value of what was received, given that the GTX 970 carries "an average retail price of approximately $350," a cash payment of $30 for each Unit would constitute approximately <u>8.6%</u> of the purchase price.  *See* SACC ¶ 52.  One of the primary misrepresentations at issue is that the GTX 970 does not operate with a full 4 gigabytes of RAM, but rather with a 3.5 GB pool of RAM and a decoupled and less performant 0.5 GB spillover segment that operates at one-seventh the speed of the main pool.  *See id.* ¶ 4.  Accordingly, Settlement Class Members allege they were shortchanged on 0.5 GB of their 4 GB of RAM, or about <u>12.5%</u>.  *Id.* ¶ 5 ("However, because the final [0.5 GB segment] runs at a materially slower rate than the first 3.5 GB, the GTX 970 devices do not function as if they have a full 4 GB of memory, a material selling point and characteristic

1    for these devices."). Thus, as one measure of recovery, Settlement Class Members could expect to

2    receive $43.75 on average (which is 12.5% of $350) if they were successful at trial. In this way, a

3    recovery of $30 would represent approximately <u>70%</u> of the anticipated value of these claims.[3]

4    Lastly, there are no issues concerning the fairness of the allocation of the Reimbursement

5    Fund among Settlement Class Members. With the possible exception of incentive awards for the

6    named Plaintiffs, which will be separately submitted consistent with Ninth Circuit authority and are

7    capped at $25,000 in total, each Settlement Class Member shall be treated equally. Every

8    Settlement Class Member who submits a timely claim form shall be entitled to a $30 cash payment

9    for each Unit purchased.

10    **B.    Release And Discharge Of Claims**

11    There are no differences between the claims to be released and the claims set forth in

12    Plaintiffs' operative complaint. Indeed, there is a complete overlap between the releases in the

13    Settlement Agreement and the claims asserted in the SACC. *See id.* at § 3.3 ("Upon the Effective

14    Date, Plaintiffs, including all members of the Settlement Class who have not validly opted out of

15    the Settlement Agreement ... shall, to the maximum extent permitted by law, have released and

16    forever discharged, and shall forever be enjoined from prosecution of, each and every Released

17    Claim against any of the Released Persons ...."); *see also id.* at § 1.21 ("'Released Claims' means

18    and includes all claims that were or could have been asserted in the Litigation to the extent they

19    arise out of or relate to the marketing, advertising, promotion, sale, performance, capabilities or

20    specifications of the GTX 970, based on the claims asserted in the SAC relating to the GTX 970.").

21    **C.    Payment Of Attorneys' Fees And Expenses**

22    Subject to Court approval, Defendants will pay Class Counsel Court-approved fees and

23    expenses up to a maximum of $1,300,000. As Judge Infante can independently attest to the Court

24    at the appropriate time, the amount of attorneys' fees were negotiated separately and apart from the

---

25    [3] As an alternative measure and check on the range of potential damages set forth above, a survey
26    of sales price data shows the average price differential between the less-performant GTX 960 and
       the GTX 970 at issue is approximately $100. While no one disputes that the GTX 970 performs at
27    higher output levels as compared to the GTX 960, Plaintiffs allege it does not actually perform as
       well as represented. Thus, while this would be the subject of expert testimony on both sides, from
28    Plaintiffs' perspective it is realistic to also consider a per unit damages estimate of approximately
       $50, particularly when compared to the above performance analysis. Fisher Decl. at ¶ 4.

other terms of the Settlement Agreement, and only after the other settlement terms were agreed to

in principle.  Further, attorneys' fees shall be paid separate from and in addition to the other relief

afforded to the Settlement Class Members in the Settlement Agreement.

### D.        Compensation For The Class Representatives

In addition to the individual relief discussed above, Defendants have also agreed to pay

incentive awards to the Class Representatives, up to a maximum of $25,000 in total for all Class

Representatives.

### E.        Payment Of Notice And Administrative Fees

Defendants shall pay directly to the administrator handling the administration of the

Settlement the reasonable costs and expenses of providing notice to the Settlement Class in

accordance with the Settlement Agreement.

The parties propose that Kurtzman Carson Consultants, LLC ("KCC") shall serve as the

Administrator.  KCC has estimated that the cost of notice and settlement administration will be

approximately $379,000, which shall be paid by NVIDIA.  *See* Fisher Decl., ¶ 6, Ex. 2 (KCC

proposal); *see also* Settlement Agreement § 6.5 ("NVIDIA shall bear the cost of providing notice

to the Settlement Class.").  These costs are reasonable in light of the value of the settlement, given

that they do not diminish the money available to Settlement Class Members.  Regardless of the

costs of notice, Settlement Class Members who submit a timely and valid claim shall receive a $30

payment under the Settlement Agreement.[4]

## V.        THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement]

only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this

determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the

strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

---

[4] NVIDIA is responsible for ensuring that notice is disseminated to public officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).  *See* Settlement Agreement § 6.7.  If NVIDIA requests that KCC mails CAFA notice in its stead, these costs will be included as part of the overall costs of KCC's notice program.

in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026;[5] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of these factors readily establishes that the proposed Settlement should be preliminarily approved.

### A.      Strength Of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Fisher Declaration, Class Counsel engaged in an arms-length negotiations with Defendants' counsel, and were thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  For example, Defendants have moved to dismiss the SACC on the basis that Plaintiffs purportedly fail to state a claim on their claims for breaches of warranty and violation of each respective state's consumer protection laws.  Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured.  They also recognize that they will face risks at class certification, summary judgment, and trial.  Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  The Settlement Agreement also abrogates the risks that might prevent them from obtaining relief.

---

[5] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

1

**B.      Risk Of Continuing Litigation**

2          As referenced above, proceeding in this litigation in the absence of settlement poses various

3    risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or

4    losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See*

5    *Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4

6    (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of

7    continuing with the litigation and will produce a prompt, certain, and substantial recovery for the

8    Plaintiff class.").  Even assuming that Plaintiffs were to survive summary judgment, they would

9    face the risk of establishing liability at trial in light of conflicting expert testimony between their

10   own expert witnesses and Defendants' expert witnesses.  In this "battle of experts," it is virtually

11   impossible to predict with any certainty which testimony would be credited, and ultimately, which

12   expert version would be accepted by the jury.  The experience of Class Counsel has taught them

13   that these considerations can make the ultimate outcome of a trial highly uncertain.

14         Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that

15   could be presented by both sides, there is a substantial likelihood based on the above analysis

16   Settlement Class Members may not be awarded significantly more than is offered to them under

17   this Settlement on an individual basis.  For example, in *In re Apple Computer Sec. Litig.*, 1991 U.S.

18   Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an

19   extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100

20   million.  However, weeks later, Judge Ware overturned the verdict, entering judgment

21   notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to

22   the corporate defendant.  By settling, Plaintiffs and the Settlement Class avoid these risks, as well

23   as the delays and risks of the appellate process.

24   **C.      Risk Of Maintaining Class Action Status**

25         In addition to the risks of continuing the litigation, Plaintiffs would also face risks in

26   certifying a class and maintaining that class status through trial.  Even assuming that the Court

27   were to grant a motion for class certification, the class could still be decertified at any time.  *See In*

28   *re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a

1  district court could decertify a class at any time is one that weighs in favor of settlement.") (internal

2  citations omitted).  From their prior experience, Class Counsel anticipates that Defendants would

3  likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later

4  date.  Here, the Settlement Agreement eliminates these risks by ensuring that Settlement Class

5  Members a recovery that is "certain and immediate, eliminating the risk that class members would

6  be left without any recovery … at all."  *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at

7  *8 (N.D. Cal. Mar. 5, 2010).

8  　　　**D.　　The Extent Of Discovery And Status Of Proceedings**

9  　　　Under this factor, courts evaluate whether class counsel had sufficient information to make

10  an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

11  at 459.  Plaintiffs, through their counsel, have conducted extensive research, discovery, and

12  investigation during the prosecution of the Action, including, without limitation: (i) inspection and

13  analysis of Defendants' sales data, advertising materials, technical specifications, and benchmarks

14  and other performance data; (ii) research into additional benchmarking and testing of the GTX 970

15  by various trade publications; (iii) review of Defendants' public filings, press releases, and other

16  public statements; (iv) interviews with NVIDIA employees and third-party witnesses and

17  presentations by Class Counsel to NVIDIA employees and representatives analyzing the technical

18  performance and testing data provided by NVIDIA; (v) consultation with and retention of experts

19  and litigation consultants; and (vi) service of subpoenas *duces tecum* to third-party retailers who

20  sold the GTX 970, and subsequent review of resulting documents from Best Buy, Rakuten, B&H

21  Photo, Amazon, MacMall, and Newegg.  Fisher Decl. at ¶ 2.  The parties also held numerous

22  telephonic settlement conferences, direct meetings with NVIDIA representatives, and a face to face

23  mediation session before the Honorable Edward A. Infante on April 26, 2016, with subsequent

24  follow on negotiations after that mediation during which the terms of an agreement were

25  extensively debated and negotiated.  The Settlement Agreement is thus the result of fully-informed

26  negotiations.

27

28

1

### E. Experience And Views Of Counsel

2

"The recommendations of plaintiffs' counsel should be given a presumption of

3

reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

4

Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties

5

represented by competent counsel are better positioned than courts to produce a settlement that

6

fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In*

7

*re Pac. Enters. Sec. Litig.*, 47 F.3d at 378.

8

Here, the Settlement was negotiated by counsel with extensive experience in consumer

9

class action litigation. *See* Fisher Decl. Ex. 3 (firm resume of Bursor & Fisher, P.A.); Mansfield

10

Decl. Ex. 1 (firm resume of Whatley Kallas LLP). Based on their collective experience, Class

11

Counsel concluded that the Settlement Agreement provides exceptional results for the class while

12

sparing the class from the uncertainties of continued and protracted litigation.

13

14

### VI. THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS, AND ENTER THE PRELIMINARY APPROVAL ORDER

15

16

### A. The Settlement Should Be Preliminarily Approved Because It Satisfies Accepted Criteria

17

It is well-established that the law favors the compromise and settlement of class action

18

suits: "[S]trong judicial policy favors settlements ...." *Churchill Vill., L.L.C. v. GE*, 361 F.3d at

19

566 (original ellipsis omitted). This is particularly true where "class action litigation is concerned."

20

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

21

The approval of a proposed settlement of a class action is a matter of discretion for the trial

22

court. *In re Veritas Software Corp. Sec. Litig.*, 2007 U.S. App. LEXIS 17623, at *25 (9th Cir.

23

2007) ("[T]he district court has substantial discretion in approving the details of a class action

24

settlement"). Courts, however give "proper deference to the private consensual decision of the

25

parties," since "the court's intrusion upon what is otherwise a private consensual agreement

26

negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

27

reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

28

between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and

1     adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *accord*, Fed. R. Civ. P. 23(e)(2) (settlement

2     must be "fair, reasonable, and adequate").

3         To grant preliminary approval, the Court need only find that the Settlement falls within the

4     range of possible approval.  The *Manual for Complex Litigation*, § 21.632 (4th ed. 2004),

5     characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the

6     proposed settlement made by the court on the basis of written submissions and informal

7     presentation from the settling parties.

8         Here, as shown below, the Settlement should be preliminarily approved because it clearly

9     falls "within the range of possible approval."  *Alaniz*, 73 F.R.D. at 273; *see also Livingston v.*

10     *Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757, at *24 (N.D. Cal. 1995) ("The proposed

11     settlement must fall within the range of possible approval ...."); *see also* Alba Conte and Herbert

12     Newberg, 4 Newberg on Class Actions § 11.25 (4th ed. 2002).  It is non-collusive, fair, and

13     reasonable.

14         At the same time, the Settlement eliminates the substantial risk and delay of litigation.

15     By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays and risks of a

16     lengthy trial and appellate process.  The Settlement will provide Settlement Class Members with

17     monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might

18     have prevented them from obtaining relief.

19         In light of the relief obtained, the magnitude and risks of the litigation and the legal

20     standards set forth above, the Court should allow notice of the settlement to be sent to the

21     Settlement Class so that class members can express their views on it.  The Court should conclude

22     that the Settlement's terms are within the range of possible approval.

23        **B.**      **The Proposed Settlement Class Should Be Certified**

24         The Settlement Class consists of all persons and entities resident in the United States of

25     America who purchased a GTX 970 device in the United States of America from the Defendants,

26     the AIC Partners or their authorized retailers prior to the Preliminary Hearing Date other than for

27     purposes of resale or distribution.  Excluded from the Settlement Class are (1) employees of

28     Defendants, including their current or former directors, officers and counsel; (2) any entity that has

---

a controlling interest in a Defendant; (3) Defendants' affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any member of the judge's immediate family.  This Court has not yet certified this case as a class action.  For settlement purposes, the parties and their counsel request that the Court provisionally certify the Settlement Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  For the reasons below, the Settlement Class meets the requirements of Rule 23(a) and (b).

### 1.       The Settlement Class Satisfies Rule 23(a)

#### a)     *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).   Here, the proposed Settlement Class is comprised of hundreds of thousands of consumers who purchased over 700,000 GTX 970 devices – a number that obviously satisfies the numerosity requirement.  Accordingly, the proposed Settlement Class is so numerous that joinder of their claims is impracticable.

#### b)     *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See* Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of

1  the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because

2  the commonality requirement may be satisfied by a single common issue, it is easily met.  H.

3  Newberg & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

4          There are ample issues of both law and fact here that are common to the members of the

5  Settlement Class.  Indeed, all of the Settlement Class Members' claims arise from a common

6  nucleus of facts and are based on the same legal theories.  The Plaintiffs allege that that GTX 970

7  devices do not operate as represented.   Accordingly, commonality is satisfied by the existence of

8  these common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439,

9  448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common

10  discriminatory practices").

11          Second, Plaintiffs' claims are brought under legal theories common to the Settlement Class

12  as a whole.  Alleging a common legal theory alone is enough to establish commonality.  *See*

13  *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.

14  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common

15  core of salient facts coupled with disparate legal remedies within the class.").  Here, however, all of

16  the legal theories asserted by Plaintiffs are common to all Settlement Class Members.  Given that

17  there are virtually no issues of law which affect only individual members of the Settlement Class,

18  common issues of law clearly predominate over individual ones.  Thus, commonality is satisfied.

19                    *c)*      *Typicality*

20          Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the

21  claims … of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards,

22  representative claims are 'typical' if they are reasonably co-extensive with those of absent class

23  members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to

24  meet the typicality requirement, the representative plaintiffs simply must demonstrate that the

25  members of the settlement class have the same or similar grievances.  *Gen. Tel. Co. of the*

26  *Southwest Falcon*, 457 U.S. 147, 161 (1982).

27          The claims of the named Plaintiffs are typical of those of the Settlement Class.  Like those

28  of the Settlement Class, their claims arise out of the allegations that that GTX 970 do not operate as

represented.  Each named Plaintiff purchased a GTX 970 device and experienced the limitations

here at issue.  The named Plaintiffs have precisely the same claims as the Settlement Class, and

must satisfy the same elements of each of their claims, as must other Settlement Class Members.

Supported by the same legal theories, the named Plaintiffs and all Settlement Class Members share

claims based on the same alleged course of conduct.  The named Plaintiffs and all Settlement Class

Members have been injured in the same manner by this conduct.  Therefore, the named Plaintiffs

satisfy the typicality requirement.

### d)        *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the

representative parties "fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P.

23(a)(4).  A plaintiff will adequately represent the class where:  (1) plaintiffs and their counsel do

not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel

prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958

(9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-

length.  2 *Newberg on Class Actions, supra*, §11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Settlement Class Members'

claims.  The arm's-length settlement negotiations that took place and the investigation they

undertook demonstrate that Class Counsel adequately represent the Settlement Class.  Moreover,

the named Plaintiffs and Class Counsel have no conflicts of interests with the Settlement Class.

Rather, the named Plaintiffs, like each absent Settlement Class Member, have a strong interest in

proving Defendants' common course of conduct, and obtaining redress.  In pursing this litigation,

Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and

fully protect the common interests of all members of the Settlement Class.  Class Counsel have

extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active

practitioners who are highly experienced in class action, product liability, and consumer fraud

litigation.  *See* Fisher Decl. Ex. 3 (firm resume of Bursor & Fisher, P.A.); Mansfield Decl. Ex. 1

(firm resume of Whatley Kallas LLP).  Accordingly, Rule 23(a)(4) is satisfied.

2.       **The Settlement Class Satisfies Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

a)       *Common Questions Of Law And Fact Predominate*

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27), *inter alia*: (1) whether Defendants' representations regarding the GTX 970 were false and misleading or reasonably likely to deceive customers targeted by such statements; (2) whether Defendants had adequate substantiation for their claims prior to making them; (3) whether Defendants' failure to disclose that the GTX 970 did not perform as advertised and represented was material and would be likely to mislead a reasonable consumer and whether Defendants had a duty to disclose such material facts as exclusively known by them; (4) whether the GTX 970 performs as advertised and represented; (5) whether Defendants charged a price premium for the GTX 970

devices and the extent of that premium; (6) whether Defendants engaged in unfair, unlawful, and/or deceptive business practices regarding the GTX 970 in violation of Cal. Bus. & Prof. Code §§ 17200; (7) whether Defendants represented, through their words or conduct, that the GTX 970 provided performance benefits that it did not actually have in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. and § 17500, *et seq*., and Cal. Civ. Code § 1750, *et seq.*, and other state consumer protection laws; (8) whether Defendants breached applicable express and implied warranties; (9) whether California or other state laws should apply to adjudicate such claims; and (10) whether Plaintiffs and the Settlement Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Settlement Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

        b)     <u>A Class Action Is The Superior Mechanism For Adjudicating This Dispute</u>

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Settlement Class Members. Each individual Settlement Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

**C.     The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved**

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."   Fed R. Civ. P Rule 23(e)(1)

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows Settlement Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court.  *Id*.

The proposed notice program here, which is described in detail in the Fisher Declaration, informs the Settlement Class of their rights and includes a comprehensive plan for delivery of notice by e-mail, U.S. Mail, a settlement website, publication in a nationally-distributed technology magazine, and Internet banner ads constitutes the best notice practicable under the circumstances of this case.

The Notices accurately inform Settlement Class Members of the salient terms of the Settlement Agreement, the Settlement Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.  The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process.  *See* Exs. 3 and 4 to the Settlement Agreement, at Fisher Decl. Ex. 1.

**E-Mail Notice:**  A notice substantially in the form attached as Exhibit 3 to the Settlement Agreement shall be e-mailed to the last known e-mail address of any Settlement Class Member whose e-mail address information is available, either through the records of Defendants or through

subpoenaed third-party retailers.[6]  E-Mail Notice will be followed by U.S. Mail Notice to any recipient for whom E-Mail Notice is unsuccessful.

**U.S. Mail Notice:**  A notice substantially in the form attached as Exhibit 3 to the Settlement Agreement shall be sent to any Settlement Class Member whose address information is available, but for whom there is no available e-mail address on the record provided to the Administrator.

**Settlement Website:**  The parties will post a copy of the Notice (Exs. 3 and 4) on a website to be maintained by the Administrator, which will additionally contain the settlement documents, an online claim form, a list of important dates, and any other information to which the parties may agree.  The website shall also contain a Settlement Email Address and Settlement Telephone Number, where Settlement Class Members can submit questions and receive further information and assistance.

**Internet Banner Ad Campaign:**  The Administrator will implement an Internet banner ad campaign that contains an embedded link to the Settlement Website, which will be designed to reach at least 75% of the members of the Settlement Class when combined with the other aspects of the notice program.  The Administrator estimates that it will purchase in the range of 130 million Internet banner impressions over a 30 day period to implement this aspect of the notice program.

**Publication Notice:**  The parties shall supplement direct notice by publishing the Summary Notice, attached as Exhibit 3 to the Settlement Agreement, on one occasion in *Wired* magazine or in a comparable mutually agreeable publication.  The Summary Notice shall not be less than 1/4 of a page in size.

**CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA") in accordance with the provisions of that Act. *See* Settlement Agreement § 6.7. [7]

---

[6] Plaintiffs had previously subpoenaed the primary retailers of these devices, and they are in the process of gathering individually identifiable contact information for Settlement Class Members and providing that information to the Administrator.  Fisher Decl. at ¶ 8.

[7] Since this is not a coupon settlement, 28 U.S.C. § 1712 is inapplicable here.  Nor do the parties dispute that the Court has subject matter jurisdiction under CAFA, given that "there are more than 100 Class Members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a state different from Defendants."  SACC ¶ 1.

1       This proposed method of giving notice is appropriate because it provides a fair opportunity

2   for members of the Settlement Class to obtain full disclosure of the conditions of the Settlement

3   Agreement and to make an informed decision regarding the proposed Settlement.  Under § 6.3 of

4   the Settlement Agreement, this program is designed to reach at least 75% of the Settlement Class

5   Members.

6       Thus, the notices and the procedures embodied in the notices amply satisfy the

7   requirements of due process.

8   **VII.   CONCLUSION**

9       For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court

10  grant preliminary approval to the Settlement Agreement, provisionally certify the Settlement Class,

11  approve the proposed notice plan, and enter the Proposed Preliminary Approval Order in the form

12  submitted herewith. A schedule of proposed dates is set forth in the following chart:

| Event | Proposed Date |
|---|---|
| Date Preliminary Approval Order issued | August 24, 2016 |
| Deadline to complete notice program | October 23, 2016 |
| Deadline to file motion for final approval of settlement, including initial Settlement Class Member response | November 8, 2016 |
| Deadline to file motion for approval of attorneys' fees and expenses, and payments to class representatives | November 8, 2016 |
| Deadline for Settlement Class Members to file objections or submit  requests for exclusion | November 22, 2016 |
| Deadline to file responses to any filed objections and updated response of Settlement Class Members | December 6, 2016 |
| Closing Date for submission of Claim Forms | December 21, 2016 |
| Final approval hearing | December 21, 2016 |

Dated: July 25, 2016                    Respectfully submitted,

                                        **WHATLEY KALLAS LLP**

                                        By:  _____*/s/ Alan M. Mansfield*_____

Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

**BURSOR & FISHER, P.A.**

By: _____

L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Co-Lead Interim Class Counsel*