WHATLEY KALLAS LLP
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Co-Lead Interim Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NVIDIA GTX 970 GRAPHICS CHIP LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | CASE NO.: 15-cv-00760-PJH <br><br> **DECLARATION OF L. TIMOTHY FISHER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE** <br><br> Date:  August 24, 2016 <br> Time:  9:00 a.m. <br> Courtroom 3 – 3rd Floor <br><br> Judge:    Honorable Phyllis J. Hamilton |

## DECLARATION OF L. TIMOTHY FISHER

I, L. Timothy Fisher, declare as follows:

      1.     I am an attorney at law licensed to practice in the State of California.  I am a member of the bar of this Court, and I am a partner at Bursor & Fisher, P.A., Co-Lead Interim Class Counsel for Plaintiffs.  I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Nationwide Settlement Class, and Approval of Procedure for and Form of Notice.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

      2.     Bursor & Fisher, P.A. and Whatley Kallas LLP (collectively, "Class Counsel") conducted extensive research, discovery, and investigation during the prosecution of this Action, including, without limitation: (i) inspection and analysis of Defendants' sales data, advertising materials, technical specifications, and benchmarks and other performance data; (ii) research into additional benchmarking and testing of the GTX 970 by various trade publications; (iii) review of Defendants' public filings, press releases, and other public statements; (iv) interviews with NVIDIA employees and third-party witnesses and presentations by Class Counsel to NVIDIA employees and representatives analyzing the technical performance and testing data provided by NVIDIA; (v) consultation with and retention of experts and litigation consultants; and (vi) service of subpoenas *duces tecum* to third-party retailers who sold the GTX 970, and subsequent review of resulting documents from Best Buy, Rakuten, B&H Photo, Amazon, MacMall, and Newegg.

      3.     Class Counsel and counsel for Defendants have engaged in substantial arm's-length negotiations in an effort to resolve the Action over a period of roughly one year, including conducting numerous telephone conferences, in-person meetings with NVIDIA employees and representatives, and an in-person mediation before the Honorable Edward A. Infante on April 26, 2016, with subsequent follow-up negotiations, during which the terms of an agreement were extensively debated and discussed.

      4.     This Settlement constitutes an excellent recovery for Settlement Class Members, and is within the reasonable range of probable recoveries.  While there are various formulations of

recovery, focusing on the concept of comparing the value of what was advertised as compared to the value of what was received, given that the GTX 970 carries "an average retail price of approximately $350," a cash payment of $30 for each Unit would constitute approximately <u>8.6%</u> of the purchase price.  *See* SACC ¶ 52.  One of the primary misrepresentations at issue is that the GTX 970 does not operate with a full 4 gigabytes of RAM, but rather with a 3.5 GB pool of RAM and a decoupled and less performant 0.5 GB spillover segment that operates at one-seventh the speed of the main pool.  *See id.* ¶ 4.  Accordingly, Settlement Class Members allege they were shortchanged on 0.5 GB of their 4 GB of RAM, or about <u>12.5%</u>.  *Id.* ¶ 5 ("However, because the final [0.5 GB segment] runs at a materially slower rate than the first 3.5 GB, the GTX 970 devices do not function as if they have a full 4 GB of memory, a material selling point and characteristic for these devices.").  Thus, as one measure of recovery, Settlement Class Members could expect to receive $43.75 on average (which is 12.5% of $350) if they were successful at trial.  In this way, a recovery of $30 would represent approximately <u>70%</u> of the anticipated value of these claims.  As an alternative measure and check on the range of potential damages set forth above, our survey of sales price data shows the average price differential between the less-performant GTX 960 and the GTX 970 at issue for the majority of the class period is approximately $100.  While no one disputes that the GTX 970 performs at higher output levels as compared to the GTX 960, Plaintiffs allege it does not actually perform as well as represented.  Thus, while this would be the subject of expert testimony on both sides, from Plaintiffs' perspective it is realistic to also consider a per unit damages estimate of approximately $50, particularly when compared to the above performance analysis.

5.      As Judge Infante can independently attest to the Court at the appropriate time, the amount of attorneys' fees were negotiated separately and apart from the other terms of the Settlement Agreement, and only after the other settlement terms were agreed to in principle.  Further, attorneys' fees shall be paid separate from and in addition to the other relief afforded to the Settlement Class Members in the Settlement Agreement.

6.      The parties propose that Kurtzman Carson Consultants, LLC ("KCC") shall serve as the Administrator.  KCC has estimated that the cost of notice and settlement administration will be

approximately $379,000, which shall be paid by NVIDIA.  *See* Settlement Agreement § 6.5 ("NVIDIA shall bear the cost of providing notice to the Settlement Class.").  These costs are reasonable in light of the value of the settlement, given that they do not diminish the money available to Settlement Class Members.  Regardless of the costs of notice, Settlement Class Members who submit a timely and valid claim shall receive a $30 payment under the Settlement Agreement.

7.      NVIDIA is responsible for ensuring that notice is disseminated to public officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).  *See* Settlement Agreement § 6.7.  If NVIDIA requests that KCC mails CAFA notice in its stead, these costs will be included as part of the overall costs of KCC's notice program.

8.      The proposed Settlement Class is comprised of hundreds of thousands of consumers who purchased GTX 970 devices.  Plaintiffs had previously subpoenaed the primary retailers of these devices, and they are in the process of gathering individually identifiable contact information for Settlement Class Members and providing that information to the Administrator.

9.      Class Counsel have vigorously and competently pursued the Settlement Class Members' claims.  The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Class Counsel adequately represent the Settlement Class.  Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Settlement Class.  Rather, the named Plaintiffs, like each absent Settlement Class Member, have a strong interest in proving Defendants' common course of conduct, and obtaining redress.  In pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Settlement Class.  Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.

10.     Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome is not assured.  We recognize that we will face risks at class certification, summary judgment, and trial.  Defendants would no doubt present a vigorous defense at trial, and there is no

1   assurance that the class would prevail – or even if they did, that they would not be able to obtain an

2   award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of

3   Class Counsel, the proposed Settlement provides the Settlement Class with an outstanding

4   opportunity to obtain significant relief at this stage in the litigation.  The Settlement Agreement

5   also abrogates the risks that might prevent them from obtaining relief.

6         11.     Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation and

7   Agreement of Settlement and Release and exhibits thereto (the "Settlement Agreement").

8         12.     Attached hereto as **Exhibit 2** is a true and correct copy of Kurtzman Carson

9   Consultants, LLC's ("KCC") proposal and cost estimate for a notice and claims administration

10   program.

11         13.     Attached hereto as **Exhibit 3** is a true and correct copy of the firm resume of Bursor

12   & Fisher, P.A.

13        I declare under penalty of perjury under the laws of the United States, the State of

14   California, and the State of New York that the foregoing is true and correct.  Executed on July 22,

15   2016 at Walnut Creek, California.

16

17                                                _____

18                                                  L. Timothy Fisher

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

## STIPULATION AND AGREEMENT OF SETTLEMENT AND RELEASE

THIS STIPULATION AND AGREEMENT OF SETTLEMENT AND RELEASE (the "Settlement Agreement") is made by and between the named Plaintiffs proposed as Class and Settlement Class Representatives, Andrew Ostrowski, Mark Roushion, Kiloe Young, Jason Doerrer, Pedro Santiago, Kyle Ellis, Andy Torrales, Dylan Jordan, Joseph Vorraso, David Dropski, Austin Verlinden, Stephen Denz, Joel Bernabel, Jan Paolo Jimenez, Timothy Farley, Alexander Montgomery, Ryan Brenek, Jorrell Dye, Chester Bailey, Gukjin Chung, Garret Giordano, Francis Palagano, Patrick E. Parker and Don Le (collectively, "Plaintiffs") in the lawsuits identified below, on the one hand, and NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation d/b/a Giga-Byte Technology Co. Ltd., G.B.T. Inc. (together with Gigabyte Global Business Corporation, "Gigabyte"), ASUS Computer International ("ASUS"), and EVGA Corporation ("EVGA"), on the other hand (collectively "Defendants").

### RECITALS

1.      On or after February 19, 2015, the following putative class action lawsuits were filed in or transferred to the United States District Court for the Northern District of California, San Francisco Division (the "Court") or in the San Diego County Superior Court:

      (1)     *Ostrowski v. NVIDIA Corp.*, Case No. 15-cv-00760-CRB

      (2)     *Santiago v. NVIDIA Corp., et al.*, Case No. 15-cv-00789-CRB

      (3)     *Roushion v. NVIDIA Corp., et al.*, Case No. 15-cv-01102-CRB

      (4)     *Young v. NVIDIA Corp., et al.*, Case No. 15-cv-01204-CRB

      (5)     *Denz v. NVIDIA Corp., et al.*, Case No. 15-cv-01243-CRB

      (6)     *Doerrer v. G.B.T., INC., et al.*, Case No. 15-cv-01304-CRB

      (7)     *Bernabel, et al. v. NVIDIA Corp., et al.*, Case No. 15-cv-01296-CRB

(8)   *Farley, et al. v. NVIDIA Corp., et al.*, Case No. 15-cv-01800-CRB

(9)   *Dye v. NVIDIA Corp.*, Case No. 15-cv-03428-CRB

(10)  *Bailey v. NVIDIA Corp.*, Case No. 15-cv-04861-CRB

(11)  *Chung v. NVIDIA Corp.*, Case No. 15-cv-04308-CRB

(12)  *Giordano v. NVIDIA Corp.*, Case No. 15-c-04410-CRB

(13)  *Palagano v. NVIDIA Corp.*, Case No. 15-cv-03948-CRB

(14)  *Parker v. NVIDIA Corp.*, Case No. 15-cv-04306-CRB

(15)  *Don Le v. NVIDIA Corp.*, Case No. 37-2015-00006732-CU-BT-CTL  (the "State Court Action").

2.     By Order dated March 27, 2015 (original Dkt. No. 34), and subsequently on April 23, 2014 (Dkt. No. 57 – Farley), November 10, 2015 (Dkt. No. 100 – Dye, Giordano, Palagano, Parker, Chung & Bailey), the Court consolidated all such actions filed in federal court under the caption *In re NVIDIA GTX 970 Graphics Chip Litigation,* Case No. 15-cv-00760-CRB (collectively, the "Consolidated Federal Court Actions," and together with the State Court Action, the "Litigation"), and on May 14, 2014 (Dkt. No. 64) appointed Whatley Kallas LLP and Bursor & Fisher, P.A. as Joint Lead Counsel effective May 8, 2014.  The State Court Action was thereafter stayed in deference to the Consolidated Federal Court Actions.

3.     The claims asserted in the Litigation concerned the NVIDIA GeForce GTX 970 graphics processing unit (the "GTX 970" or "GPU"), which was designed by NVIDIA and manufactured and/or sold by Defendants and Add-In Card ("AIC") partners Gigabyte, ASUS, EVGA, InnoVISION Multimedia Limited, Micro-Star International Co., Ltd., Manli Technology Group Ltd., Palit Microsystems Ltd., PC Partner Group Ltd., PNY Technologies Inc. and ZOTAC International (MCO) Ltd. or their subsidiaries, divisions or affiliates

2

(collectively, the "AIC Partners").  Plaintiffs allege in the Litigation that the GTX 970 was sold to consumers (directly or indirectly through retailers) based on inaccurate or misleading information regarding the GTX 970's specifications, performance and capabilities.  Defendants deny, and continue to deny, all such allegations.

4. On July 15, 2015, Defendants filed in the Consolidated Federal Court Actions a motion to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC").

5. On November 24, 2015, after Defendants withdrew their motion to dismiss the FAC, and after the Consolidated Federal Court Actions were reassigned to the Honorable Phyllis J. Hamilton, Plaintiffs filed a Second Amended Consolidated Class Action Complaint ("SAC").  The SAC alleges 22 claims for relief:

(1)   *Violation of The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq.;*

(2)   *Breach of Express Warranty;*

(3)   *Breach of Implied Warranty of Merchantability;*

(4)   *Common Counts / Assumpsit/ Unjust Enrichment;*

(5)   *Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code §§1750, et seq.;*

(6)   *Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, et seq.;*

(7)   *Violation of California's False Advertising Law ("FAL"), California business & Professions Code §§ 17500, et seq.;*

(8)   *Negligent Misrepresentation;*

(9)   *Violation of the Michigan Consumer Protection Act ("MCPA), Mich. Comp. Laws §§ 445.901, et seq.;*

(10)   *Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq.;*

(11)     *Violation of New York Gen. Bus. Law § 349;*

(12)     *Violation of New York Gen. Bus. Law § 350;*

(13)     *Violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. §§ 505/1, et seq.;*

(14)     *Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, et seq.;*

(15)     *Violation of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §§ 751, et seq.;*

(16)     *Violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110, et seq.;*

(17)     *Violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1;*

(18)     *Violation of the Maryland Unfair and Deceptive Trade Practices Act, Md. Code Ann. § 13-303;*

(19)     *Violation of the Colorado Unfair and Deceptive Trade Practices Act, C.R.S. § 6-1-105;*

(20)     *Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, et seq.;*

(21)     *Violation of the Georgia Fair Business Practices Act; and*

(22)     *Violation of Similar Unfair and Deceptive Trade Practices Act.*

6.     On January 22, 2016, Defendants filed in the Consolidated Federal Court Actions a motion to dismiss the SAC, which Plaintiffs opposed on April 20 2016.  The motion to dismiss the SAC was set for hearing on July 6, 2016, but by stipulation has been vacated.

7.     Plaintiffs, through their counsel, have conducted extensive research, discovery and investigation during the prosecution of the Litigation, including, without limitation, review of testing of the GTX 970 provided by both NVIDIA and third parties, retention and consultation with an industry consultant to explain how the GTX 970 operated and the technical

and performance limitations in its design and structure, review of technical performance documents provided by NVIDIA and promotional materials provided by both Defendants and the primary third party retailers who sold the GTX 970, in person interviews with representatives of NVIDIA, including Jonah Alben, the primary designer of the GTX 970, and a presentation to NVIDIA of Plaintiffs' understanding of the technical performance data provided by NVIDIA, review and analysis of pricing data, consumer performance complaints and industry reviews of the GTX 970 and its competitors;  review of NVIDIA's and other entities' public filings, press releases and other public statements and the consumer petition submitted to the Federal Trade Commission for similarity of complaints.

8.      Counsel for Plaintiffs and counsel for Defendants have engaged in substantial arm's-length negotiations in an effort to resolve the Litigation over a period of more than nine months, including conducting numerous telephone conferences, direct meetings with NVIDIA representatives and their counsel, and a face-to-face mediation session before the Honorable Edward A. Infante on April 26, 2016, with subsequent follow on negotiations after that mediation during which the terms of an agreement were extensively debated and negotiated.

9.      Defendants deny all claims, charges and allegations asserted against them, and disclaim any wrongdoing or liability whatsoever.  As set forth in Defendants' motion to dismiss the SAC, Defendants argue that they did not make any misrepresentation of any kind to Plaintiffs or other members of the Settlement Class regarding the GTX 970, which has received numerous awards and accolades, including "GPU of the Year," "Best Graphics Card" and "Best Gaming Gear."  As further set forth in Defendants' motion to dismiss, Defendants argue that Plaintiffs and other members of the Settlement Class purchased a superior product at a bargain price relative to competitor products on the market.

10.    Defendants have agreed to the compromise and settlement of the Litigation subject to the terms and conditions set forth herein to avoid the substantial burden, expense, management distraction and uncertainties that would be involved in protracted litigation, and to terminate the Released Claims against Defendants.

11.    Plaintiffs have agreed to settle their claims and those of the Settlement Class upon the terms and provisions set forth herein and as a result of extensive investigation and thorough research of the law applicable to the claims underlying the Litigation, after balancing the benefits that Plaintiffs and the Settlement Class will receive from the Settlement against the uncertain outcome, risks, difficulties, and delays of litigation, in general, and in complex actions such as this Litigation, in particular, and after concluding that the Settlement is in the best interests of the Settlement Class.

12.    The Parties and their counsel believe that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to the Settlement Class and the Parties.

NOW, THEREFORE, in consideration of the recitals, agreements and covenants set forth herein, subject to approval by the Court and intending to be legally bound, Plaintiffs, on behalf of themselves and the Settlement Class, and Defendants, on behalf of the Released Parties (collectively, the "Parties"), hereby STIPULATE AND AGREE to compromise and resolve the Litigation on the following terms and conditions:

**TERMS**

1.    Additional Definitions

1.1    "Administrator" means Kurtzman Carson Consultants, LLC ("KCC"), which shall serve as the settlement administrator for the settlement and perform the settlement administration duties as set forth herein.

1.2    "Cash Payment" shall mean $30.00 per GTX 970 Unit for which a valid and

timely Claim Form is submitted.

1.3     "GTX 970 GPU" means all versions of the GeForce GTX 970 graphics processing unit that were manufactured and/or sold and/or licensed for manufacture by Defendants and/or the AIC Partners and that were purchased in the United States of America.

1.4     "Claim Form" means the form to be used by Settlement Class Members to make a claim under this Settlement Agreement, a copy of which is attached hereto as Exhibit 1. The Claim Form shall be made available to be completed either on-line through the website to be established by the Administrator as described herein, or available to be downloaded or sent by mail in substantially similar form to be printed and submitted by U.S. Mail, email or facsimile.

1.5     "Claim Period" means the period to submit a Claim Form, which will end on a date to be set in the Preliminary Approval Order.

1.6     "Claims Administration" means the process by which this Settlement Agreement is administered pursuant to the terms of this Settlement Agreement.

1.7     "Class Counsel" means Whatley Kallas LLP and Bursor & Fisher, P.A.

1.8     "Class Notice" or "Notice" means the Court-approved notice of the Settlement and related matters provided to the Settlement Class, substantially in the form of Exhibits 2 (the full notice of class action settlement) and 3 (the summary notice of class action settlement) attached hereto.

1.9     "Closing Date" means the last date of the Claim Period on which a Claim Form must be postmarked if sent by U.S. mail, or 11:59 p.m. Pacific Time on the date set by the Court, if sent by any other means, including email or facsimile, for a Settlement Class Member to be entitled to the relief contemplated in this Settlement Agreement.

1.10    "Court" means the United States District Court for the Northern District of California.

1.11    "Effective" means the date on which all conditions precedent described in Section 12 below have been satisfied.

1.12    "Effective Date" means the date upon which this Settlement Agreement becomes Effective as described in Section 12 below.

1.13    "Final Judgment" means the final judgment by which the Court approves this Settlement Agreement, approves payment of attorneys' fees, expenses, and compensation, and makes such other final rulings as are contemplated by this Settlement Agreement, substantially in the form of Exhibit 4.

1.14    "Objection Date" means the final date on which members of the Settlement Class may file and serve objections to this Settlement Agreement.

1.15    "Opt-Out Date" means the final date on which an opt-out notice must be received by the Administrator for a putative Settlement Class Member to elect to be excluded from this Settlement Agreement and the Settlement Class.

1.16    "Plaintiffs' Counsel" means Whatley Kallas, LLP, Bursor & Fisher, P.A., Audet & Partners, LLP, Bramson Plutzik Mahler & Birkhaeuser, LLP, Cuneo Gilbert & LaDuca, LLP, Doyle Lowther, LLP, Edelson PC, Kaplan Fox & Kilsheimer, LLP, Levi & Korsinsky, LLP, Levin Fishbein Sedran & Berman, McConnell & Sneed, LLC, Schubert Jonckheer & Kolbe, LLP, Seeger Weiss, LLP, Westerman Law Corp., Whitfield Bryson & Mason, LLP, and Wiggins Childs Pantazis Fisher Goldfarb, LLC.

1.17    "Preliminary Hearing" means the hearing at which the Parties will seek preliminary approval of this Settlement Agreement and entry of the Preliminary Approval Order substantially in the form of Ex. 5 hereto.

1.18    "Preliminary Hearing Date" means the date on which the Court holds the Preliminary Hearing.

1.19    "Product Identification Number" means the product identification number,

serial number, stock keeping unit ("SKU"), device identification number, part number, or other letters and/or digits embedded on the box, back, or bottom of each GPU that comprises its identification number, or that can be located by checking the settings for the GPU via software.

1.20    "Proof of Purchase" means one or more of the following, which demonstrates that a member of the Settlement Class purchased a GPU:  a sales receipt, a credit card receipt or statement or other receipt or account statement, a shipping manifest, a purchase order, an email confirmation, submission of a Product Identification Number, or the unique verification or confirmation number provided by the Administrator as set forth in Paragraph 2.2 below, or other similar documentation reflecting a qualifying  purchase.

1.21    "Released Claims" means and includes all claims that were or could have been asserted in the Litigation to the extent they arise out of or relate to the marketing, advertising, promotion, sale, performance, capabilities or specifications of the GTX 970, based on the claims asserted in the SAC relating to the GTX 970.

1.22    "Released Persons" means and includes:

(1)    NVIDIA, Gigabyte, ASUS, EVGA and their present or past parent corporations, subsidiaries, divisions, affiliates, partners, directors, officers, employees, agents and insurers, and each of their respective predecessors, heirs, executors, administrators, successors and assigns, and authorized retailers;

(2)    The AIC Partners and their present or past parent corporations, subsidiaries, divisions, affiliates, partners, directors, officers, employees and agents, and each of their respective predecessors, heirs, executors, administrators, successors and assigns, and authorized retailers.

1.23    "Releasing Persons" means and includes Plaintiffs, members of the Settlement Class who have not validly requested exclusion from the Settlement Class pursuant to Section 9 below, Plaintiffs' Counsel and each of their respective predecessors, heirs, executors,

administrators, successors, and assigns in their capacities as such.

1.24     "Settlement" means the settlement embodied and contemplated by this Settlement Agreement.

1.25     "Settlement Class" means all persons and entities resident in the United States of America who purchased a GTX 970 GPU in the United States of America from the Defendants, the AIC Partners or their authorized retailers prior to the Preliminary Hearing Date other than for purposes of resale or distribution.  Excluded from the Settlement Class are (1) employees of Defendants or the AIC Partners, including their current or former directors, officers and counsel; (2) any entity that has a controlling interest in Defendants or the AIC Partners; (3) Defendants' and the AIC Partners' affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any member of the judge's immediate family.

1.26     "Unit" is one GTX 970 GPU.

## 2.     **The Settlement**

The following settlement terms in paragraphs 2(a)-(c) will be implemented upon the Effective Date, unless the Parties otherwise agree:

**a.     GTX 970 Cash Payment.**

2.1     Subject to Section 2.6, members of the Settlement Class who own a GTX 970 GPU purchased prior to the Preliminary Hearing Date are entitled to submit a Claim Form for each Unit purchased during the Class Period to the Administrator within the Claim Period. Subject to verification and approval by the Administrator, members of the Settlement Class shall be entitled to the Cash Payment for each Unit for which a timely Claim is submitted and approved by the Administrator.  If a Settlement Class Member purchased multiple Units, they can submit one Claim Form listing multiple Units.

2.2     If a Settlement Class Member receives direct notice of the terms of the

Settlement, they shall only be required to submit on the Claim Form the unique verification code provided on the direct notice sent to them by the Administrator, and any updates to their mailing address.  If a Settlement Class Member does not receive direct notice of the terms of the Settlement sent to them by the Administrator, they shall be required to submit Proof of Purchase for each Unit for which they submit a Claim Form.

        **b.**    **Reimbursement Fund.**

2.3      The Administrator shall establish and maintain a non-interest bearing escrow account ("Reimbursement Fund"), to be funded by NVIDIA as described below.

2.4      No funds held in the Reimbursement Fund shall be distributed to members of the Settlement Class except in accordance with the terms of this Settlement Agreement, by order of the Court, or with the written agreement of counsel for NVIDIA and Class Counsel.  All funds held in the Reimbursement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed pursuant to the terms of this Settlement Agreement or further order of the Court.

        **c.**    **Authorization of Cash Payment**

2.5      The Administrator shall have sole and exclusive responsibility for determining the eligibility of members of the Settlement Class for the Cash Payment.

2.6      The Administrator shall make determinations regarding the eligibility of Settlement Class Members for the Cash Payment in accordance with the following procedures:

        (1)    Upon receipt of the Claim Form and unique verification code or Proof of Purchase, as applicable, from a member of the Settlement Class, the Administrator shall promptly examine the Claim Form to determine whether the Settlement Class Member is eligible for the Cash Payment.

(2)     If the documents received by the Administrator within the Claim Period are complete and indicate that the member of the Settlement Class is eligible for the Cash Payment, then after the conclusion of the Claim Period, and upon the Effective Date unless the Parties otherwise agree, and as set forth below, the Administrator shall disburse payment from the Reimbursement Fund to the Settlement Class Member in the amount indicated on the Claim Form as approved by the Administrator.

(3)     If the documents received by the Administrator within the Claim Period indicate that the member of the Settlement Class may be eligible for the Cash Payment, but are incomplete or otherwise deficient, the Administrator shall promptly notify the member of the omission(s) or deficiency and the steps that must be taken to rectify them.  In the event a Claim Form is timely submitted but the Administrator requires additional information to evaluate the Claim Form, a member who receives notice of such a deficiency shall have until 30 days after the date of the notice from the Administrator identifying such deficiencies to provide said information.  Such deadline will be specified in the deficiency letter.

(4)     If the documents received by the Administrator indicate that the member of the Settlement Class is not eligible for the Cash Payment, or are received after the expiration of the Claim Period or after the deadline to cure any deficiencies has passed, the Administrator shall notify the member of the Settlement Class that he, she or it is not eligible for the Cash Payment as to such Unit.

(5)     The Administrator shall advise NVIDIA of the amount to contribute to the Reimbursement Fund based on the amount of complete Claim Forms submitted and after all incomplete Claim Forms have been resolved or denied.  NVIDIA shall deposit such amounts with the Administrator within 14 days of the notification from the Administrator of the amounts

12

to be paid.  All valid and timely claims shall be paid within 30 days of the receipt of such funds

by the Administrator, provided that this Settlement becomes Effective.

**3.** **Release**

3.1     The obligations incurred pursuant to this Settlement Agreement shall be in full

and final disposition of the Litigation and any and all Released Claims as against all Released

Persons, to the maximum extent permitted by law.

3.2     Upon the Effective Date, Plaintiffs, including all members of the Settlement

Class who have not validly opted out of the Settlement Agreement pursuant to Section 9 below,

on behalf of themselves, their heirs, executors, administrators, successors and assigns, and any

person they represent, shall, to the maximum extent permitted by law, have released and forever

discharged, and shall forever be enjoined from prosecution of, each and every Released Claim

against any of the Released Persons, whether or not such Plaintiff executes and delivers a Claim

Form.  By releasing and forever discharging all Released Claims, whether known or unknown,

against the Released Persons, Plaintiffs, including all members of the Settlement Class who have

not validly opted out of the Settlement pursuant to Section 9 below, expressly, by operation of

the Final Judgment, waive any and all provisions, rights and benefits conferred by California

Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT  KNOW   OR
> SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE
> TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN  BY  HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE
> DEBTOR,

and any other law of any applicable jurisdiction, or principle of common law, which is similar,

comparable, or equivalent to said provision.

3.3     Upon the Effective Date, each of the Released Persons shall be deemed to have,

and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged Plaintiffs, including all members of the Settlement Class who have not validly opted out of the Settlement pursuant to Section 9 below, and Class Counsel and all other Plaintiffs' Counsel for all claims relating to or arising out of or connected with the institution, prosecution, assertion, settlement or resolution of the Litigation and/or the Released Claims. By releasing and forever discharging all such claims, whether known or unknown, the Released Persons expressly, by operation of the Final Judgment, waive any and all provisions, rights and benefits conferred by California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

and any other law of any jurisdiction (domestic or foreign), or principle of common law, which is similar, comparable, or equivalent to said provision.

4. **Administrator**

4.1     Subject to Court approval, KCC shall serve as the Administrator, and shall be responsible for disseminating the Notice and for Claims Administration, including the activities referred to in Sections 2, 6, 8 and 12.5 with respect to the Settlement.  Promptly upon execution of this Settlement Agreement, the Administrator shall establish a settlement website (the "Settlement Website"), a settlement U.S. mail address (the "Settlement Mail Address"), and designate a settlement telephone number (the "Settlement Telephone Number") for purposes of facilitating communication with members of the Settlement Class and the submission of Claim Forms.

5.      **Certification of Settlement Class**

5.1      For purposes of settlement only, the Parties agree that, subject to Court approval, the Settlement Class should be conditionally certified and that Plaintiffs be appointed as the representatives of the Settlement Class, and Class Counsel appointed as counsel for the Settlement Class.  Defendants do not consent to the certification of the Settlement Class for any purpose other than to effectuate this Settlement Agreement.

5.2      If this Settlement Agreement is terminated pursuant to its terms, or for any reason the Settlement fails to become Effective, any and all orders certifying the Settlement Class, whether in the form of preliminary findings or final findings, shall be immediately vacated and of no force or effect.  The stipulations and agreements contained in the Settlement Agreement shall be null and void, and may not be referred to or used as evidence or for purposes of class certification, or any other purpose.

6.      **Notice**

The parties agree to, and will request the Court to approve, notice to the Settlement Class as follows:

6.1      A copy of the full Notice and Summary Notice of Settlement substantially in the form of Exhibits 2 and 3 shall be posted on the Settlement Website, together with the Settlement Email Address and Settlement Telephone Number.

6.2      A copy of the Summary Notice of Settlement substantially in the form of Ex. 4 shall be published by the Administrator once in *Wired* magazine, or in a comparable mutually agreeable publication.  The Summary Notice shall not be less than 1/4 of a page in size, and shall include the Settlement Website, the Settlement Email Address and the Settlement Telephone Number.

6.3    The Administrator will implement an Internet banner ad campaign that contains an embedded link to the Settlement Website.  This campaign will be designed to reach at least 75% of the members of the Settlement Class when combined with the other aspects of the notice program set forth in Sections 6.1 and 6.2.  The Administrator estimates that it will purchase in the range of 130 million Internet impressions over a 30 day period to implement this aspect of the notice program.

6.4    Members of the Settlement Class for whom contact information is made available to the Administrator by either NVIDIA, the other Defendants, the AIC Partners, or third party retailers, shall receive direct notice from the Administrator in the form of the Summary Notice substantially in the form of Ex. 4, either:

    (1)    By U.S. Mail where there is no available email address on the record provided to the Administrator, or

    (2)    Email to be followed by U.S. Mail in the event that email notice is unsuccessful.

Such direct mailed notice shall include a unique verification code for each Member of the Settlement Class, created by the Administrator, that may be submitted by the Settlement Class Member as the required Proof of Purchase on the Claim Form.

6.5    NVIDIA shall bear the cost of providing notice to the Settlement Class as approved by the Court in accordance with the provisions of this Section and the Court's Preliminary Approval Order as described in Section 7.  The Administrator shall invoice NVIDIA for the amounts to be paid the Administrator for services rendered under this Settlement Agreement, which shall be paid under the terms of the agreement to be reached between the Parties and the Administrator.

6.6    Subject to the approval of the Court, the Administrator shall provide the notice

16

described in Sections 6.1-6.4 above.

6.7    NVIDIA shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act in accordance with the provisions of that Act. NVIDIA shall, at its election, retain the Administrator to disseminate such notice.

6.8    In addition to the Notice and Summary Notice provided by the Administrator as set forth in Sections 6.1-6.4 above, the Settlement Website shall permit members of the Settlement Class who elect to do so to register online to receive email notice that the Court has granted Final Approval of the settlement and updates on the deadlines to submit Claim Forms and the status of payments under the terms of the Settlement.

## 7.    **Preliminary Approval Order**

7.1    As soon as practicable after execution of this Settlement Agreement, the Parties shall move the Court for preliminary approval of the Settlement in the manner contemplated by Rule 23 of the Federal Rules of Civil Procedure.  The Parties shall apply to the Court for entry of a Preliminary Approval Order substantially in the form of Ex. 5:

   (1)    Preliminarily approving the Settlement as fair, reasonable, and adequate;

   (2)    Conditionally certifying the Settlement Class for settlement purposes only and setting the date of the Final Approval Hearing and the dates for submitting papers to the Court and other relevant deadlines;

   (3)    Approving the appointment of the Administrator;

   (4)    Approving the full Notice and Summary Notice of Settlement;

   (5)    Directing the Administrator to provide notice in the manner described in Sections 6.1-6.4;

   (6)    Requiring any member of the Settlement Class who requests exclusion from the Settlement Class to submit to the Administrator a "Request for Exclusion from the Settlement Class" within thirty (30) days from the completion date of the Notice program and

17

in such manner and containing such information as required by the Notice; and

(7)    Requiring any member of the Settlement Class who objects to the approval of this Settlement Agreement to file and serve within thirty (30) days from the completion date of the Notice program and in the manner provided in the Notice, notice of that member's intention to appear and object, the detailed description of the grounds for that objection, the brand or manufacturer name of the AIC Partner and Product Identification Number of the member's Unit and all papers he, she or it intends to present to the Court in opposition to this Settlement Agreement and agrees to be subject to discovery, and providing that any member of the Settlement Class who does not follow the objection procedure in the Notice will be barred from making an objection or participating in the Final Approval Hearing.

**8.    Settlement Administration**

8.1    Counsel for the Parties shall promptly retain the Administrator and assist in preparing the Administrator to perform the tasks specified in this Agreement.  Defendants shall provide any contact information they possess from any member of the Settlement Class to the Administrator within twenty-one (21) days of the execution of the Settlement Agreement. NVIDIA and Class Counsel shall work with retailers of the Units to obtain identification information for members of the Settlement Class, and to obtain any orders the retailers may request or believe are necessary to provide such data to the Administrator within sixty (60) days of the execution of the Settlement Agreement.

8.2    Within sixty  (60) days of entry of the Preliminary Approval Order or when the Administrator receives the identification information for members of the Settlement Class as set forth in Section 8.1, whichever is later, the Administrator shall complete providing Notice in the manner described in Section 6.

8.3    For purposes of determining the extent, if any, to which a Settlement Class

Member will be entitled to participate in the Settlement, the following provisions shall apply:

(1)     Each member who wishes to receive the Cash Payment described in Section 2.1 shall, within the Claim Period, submit to the Administrator the information and/or documents identified in Section 2.2 in the manner described in that Section.

(2)     A Claim Form will be deemed submitted to the Administrator on the date postmarked if sent by U.S. Mail, or if received by 11:59 p.m. Pacific Time on the Closing Date if submitted by any other means, including email or facsimile.

(3)     The Claim Form shall provide that, by submitting a Claim Form, the Settlement Class Member expressly consents to the jurisdiction of the Court.

(4)     All determinations as to the validity of a Claim Form, a member's right to receive a Cash Payment, the amount of any reimbursement and other duties of a similar nature to be performed in connection with the administration of this Settlement Agreement, shall be performed by the Administrator.

8.4     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Claim Form within the Claim Period, or such other period allowed by the Court, shall be forever barred from receiving any reimbursement pursuant to this Settlement Agreement, but will in all other respects be subject to and bound by the provisions of this Settlement Agreement, the releases contained herein, and the Final Judgment.

8.5     No Person shall have any claim against Plaintiffs, Class Counsel, Plaintiffs' Counsel, the Administrator, or any other Person designated by Class Counsel, the Administrator or the Court to assist in claims administration, Defendants or their counsel or the Released Persons, based on the administration of and processing and payment of claims consistent with the terms of this Settlement Agreement.

8.6     Defendants and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to:

19

(1)     any act, omission or determination of Class Counsel, Plaintiffs' Counsel or the Administrator in connection with the administration of this Settlement;

(2)     the management or distribution of funds from the Reimbursement Fund; or

(3)     the determination, administration, calculation, or payment of any claims for Cash Payment out of the Reimbursement Fund.

**9.      Opt-Out Rights**

9.1     Putative members of the Settlement Class have the right to request exclusion from this Settlement Agreement.  Any Settlement Class Member who does not timely and validly request exclusion shall be a member of the Settlement Class and shall be bound by the terms of this Settlement Agreement and Final Judgment.  Any member of the Settlement Class who timely and validly requests exclusion from the Settlement Class shall be excluded from this Settlement Agreement and from the Settlement Class.

9.2     The Notice shall describe the procedure whereby members of the Settlement Class may exclude themselves from the Settlement Class, which shall, at a minimum, provide that any such requests must (i) be made in writing; (ii) include the Settlement Class Member's name, current address, telephone number, Unit brand and approximate date of purchase of the Unit; and (iii) a statement that the Settlement Class Member wants to be excluded from the Settlement Class.

**10.     Final Judgment**

10.1     Upon approval by the Court of this Settlement Agreement, the Final Judgment shall be entered substantially in the form of Ex. 6:

(1)     approving this Settlement Agreement and adjudging its terms to be fair, reasonable and adequate, directing consummation of the terms and provisions of this Settlement

Agreement, and retaining jurisdiction to effectuate the same;

(2)     dismissing the Lawsuits filed in the Court with prejudice;

(3)     completely discharging, settling, dismissing with prejudice, releasing, and permanently barring and enjoining the assertion, prosecution, or continuation by Settlement Class Members of any Released Claim, whether known or unknown, against each and every Released Person; provided, however, that the Final Judgment shall not bar any action or claim to enforce the terms of this Settlement Agreement as approved by the Court or the Final Judgment; and

(4)     fully, finally, and forever releasing, relinquishing and discharging Plaintiffs, each and all of the Settlement Class Members, and the Class Counsel and Plaintiffs' Counsel from all claims by the Released Persons relating to or arising out of or connected with the institution, prosecution, assertion, settlement or resolution of the Litigation, and/or the Released Claims.

10.2     The State Court Action shall be voluntarily dismissed with prejudice upon the Effective Date of this Settlement.

## 11.     <u>Attorneys' Fees and Costs</u>

11.1     After an agreement was reached among the Parties as to all principal terms and conditions of this Settlement Agreement, the Parties entered into arm's-length discussions regarding attorneys' fees, costs and expenses with Class Counsel, including extensive discussions through and with the assistance of the third-party mediator, the Hon. Edward A. Infante.  Subject to the approval of the Court, Class Counsel shall apply for payment of attorneys' fees and reimbursement of costs and expenses to Plaintiffs' Counsel, in the amount of $1,300,000.00, to be paid by NVIDIA.  This amount is in addition to and separate from all other consideration and

remedies available to the Settlement Class.  This Settlement, however, is not in any way conditioned on the Court awarding such amount, or any particular amount, of attorneys' fees and expenses.

11.2     In no event shall ASUS, EVGA or Gigabyte or any other AIC Partner be obligated to pay Plaintiffs' Counsels' attorneys' fees, costs, disbursements, or expenses, or Plaintiffs' costs or expenses.  In no event shall NVIDIA be obligated to pay Plaintiffs' Counsels' attorneys' fees, costs, disbursements, or expenses, or Plaintiffs' costs or expenses, in an amount greater than the above amount.

11.3     NVIDIA and Class Counsel have agreed the attorneys' fees shall be payable to Class Counsel within 14 days following the granting of final approval of the Settlement by the Court and entry of the Final Judgment, subject to reimbursement by the recipients in the event this Settlement for any reason fails to become Effective.  In the event that the Final Judgment is reversed or modified on appeal or this Settlement for any reason fails to become Effective as that term is defined under the terms of the Settlement Agreement and the Parties elect to not go forward with the Settlement, Class Counsel shall refund to NVIDIA the attorneys' fees, costs and expenses paid to Class Counsel by NVIDIA consistent with such reversal or modification as to the amounts allocated between them.   The attorneys' fees shall be payable by wire transfer, and Class Counsel shall furnish NVIDIA's counsel with the necessary wire transfer information. Class Counsel shall allocate and pay such amounts among Plaintiffs' Counsel as they deem appropriate based upon their relative contributions to the overall prosecution and resolution of the Litigation.

11.4     Class Counsel shall separately apply to the Court for time and expense reimbursements for certain of the Plaintiffs named in the SAC and the State Court Action, not to

collectively exceed $25,000.00, with such amounts to payable by NVIDIA to such persons as awarded by the Court upon the Settlement Agreement becoming Effective. Approval of the terms of the Settlement Agreement is not a condition of requesting or receiving such payments.

## 12. Contingencies, Effect of Disapproval or Termination of Settlement

12.1 Except as otherwise provided herein, this Settlement and the consideration therefor are given by Defendants as set forth in this Settlement Agreement are in return for, and are contingent upon, entry of Final Judgment.

12.2 Except as otherwise provided herein or agreed between the Parties, the obligations of the Parties pursuant to Sections 2, 3 and 5 of this Settlement Agreement do not become Effective until, and are conditioned upon and subject to:

(1)    entry of an Order preliminarily approving the Settlement Agreement substantially in the form attached hereto as Exhibit 5;

(2)    receipt and review by Defendants of all requests for exclusion from the Settlement Class;

(3)    entry of the Final Judgment substantially in the form attached hereto as Exhibit 4; and

(4)    The expiration of the time to file a notice of appeal from the Final Judgment, the final dismissal with prejudice of any and all appeals from the Final Judgment, or the final affirmance on appeal of the Final Judgment following any and all appeals from the Final Judgment.

12.3 If all of the conditions specified herein are not met, then this Settlement Agreement shall be cancelled and terminated, subject to 12.5 hereof, unless Class Counsel and counsel for Defendants mutually agree in writing to proceed with this Settlement Agreement.

12.4    In the event that the Court fails to approve this Settlement Agreement and the Exhibits in all material respects, or if the Final Judgment is reversed or modified on appeal, either Party shall have the right to terminate this Settlement Agreement.

12.5    If, for any reason, this Settlement fails to become Effective and either Party terminates this Settlement Agreement, then, in such event:

(1)    the Parties shall be deemed to have reverted to their respective status in the Litigation as of the date of this Settlement Agreement and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders of the Court had not been entered;

(2)    the conditional certification of the Settlement Class for settlement purposes only, provided for in Section 5.1 hereof, shall not be cited, considered or used in any manner in connection with any subsequent motion for class certification, or for any other purpose; and

(3)    upon written notice to the Administrator, any funds in the Reimbursement Fund that have not been  disbursed shall be returned to NVIDIA within seven (7) business days of such notice.

12.6    Exhibit 6 shall address the effect on this Settlement Agreement in the event a specified number of members of the Settlement Class requests for exclusion from the Settlement Class.  If, prior to the Final Approval Hearing, persons who otherwise would be members of the Settlement Class have filed with the Administrator timely requests for exclusion in accordance with Section 9 and the provisions of the Notice and the notice given pursuant thereto, and those persons exceed the number of "Opt-Outs" specified in Exhibit 6, NVIDIA shall have, in its sole and absolute discretion, the option to terminate this Settlement Agreement in accordance with

24

the procedure set forth in the Supplemental Agreement.  Plaintiffs' Counsel or the Administrator, as the case may be, shall on a weekly basis deliver to NVIDIA copies of all requests for exclusion from the Settlement Class.  Exhibit 6 shall not be filed with the Court, but made available for the Court to review upon request.

## 13.    No Admission of Wrongdoing

13.1    Defendants have collectively denied, and continue to deny, all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all of the claims and allegations of wrongdoing by Plaintiffs in the Litigation.  Defendants are agreeing to this Settlement solely because it will eliminate the burden, expense, management distraction and uncertainties of further litigation and the distraction of resources and efforts from their business.

13.2    This Settlement Agreement, and any of its terms, or any agreement or order relating thereto, and any payment or consideration provided for herein, is not and shall not be used or construed as an admission by Defendants or any Released Person of any fault, wrongdoing, or liability whatsoever, or as an admission by any of the Plaintiffs of any lack of merit of their claims against Defendants.  Nothing contained in this Section 13.2 shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Judgment, or in which the reasonableness, fairness, or good faith of the Parties in participating in the Settlement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement, the Final Judgment, or the Claim Forms as to Defendants, Plaintiffs, or the Settlement Class Members.

14. **Miscellaneous**

14.1    **Authority of counsel.**   All counsel who execute this Settlement Agreement represent and warrant that they have authority to do so on behalf of their respective clients.

14.2    **Commitment to support the settlement.**   The Parties shall in good faith cooperate, assist and undertake all reasonable actions to effectuate this Settlement Agreement on a timely basis, including, but not limited to, taking all actions required by the Court in accordance with the schedule established by the Court. Neither Plaintiffs, Class Counsel, Plaintiffs' Counsel, Defendants or their counsel will voluntarily aid or encourage any objections to certification of the Settlement Class or to this Settlement Agreement (or any of its terms or provisions), nor voluntarily aid or encourage any putative class members, objectors or other persons to object to, opt-out of the Settlement Class or this Settlement Agreement, except to the extent that Class Counsel may have a duty to putative Settlement Class Members to respond to a request for information or advice about the procedure for objecting to or opting-out of the settlement.  Class Counsel, Plaintiffs' Counsel, Defendants, and Defendants' counsel are entitled to communicate with the putative Settlement Class Members about this Action and this Settlement Agreement in the ordinary course of their business.

14.3    **Choice of law.**  This Settlement Agreement shall be governed by and construed in accordance with the laws of California, without regard to principles of conflicts of law.

14.4    **Jurisdiction and Venue.**   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing this Settlement Agreement.   The Parties, Class Counsel, Plaintiffs' Counsel, Settlement Class Members, Defendants and their counsel agree that venue shall, for all purposes relating to this

Settlement Agreement, be exclusively in the United States District Court for the Northern District of California.

14.5    **Entire agreement.**   This Settlement Agreement (including exhibits expressly referenced herein and attached hereto) contains the entire agreement among the Parties with respect to the subject matter hereof and supersedes any prior written or oral agreements, representations, warranties, or statements.   No representation, warranty, or inducement has been made to any party hereto concerning this Settlement Agreement other than the representations, warranties, and covenant contained herein.   This Settlement Agreement may not be altered, modified or amended, or any of its provisions waived, unless by a writing, executed by counsel for all the Parties hereto.

14.6    **Headings.**   The section headings used throughout this Settlement Agreement are for convenience only and shall not affect the interpretation or construction of this Settlement Agreement or any of its terms.

14.7    **No presumption against drafter.**   None of the Parties hereto or their respective counsel shall be considered the drafter of this Settlement Agreement or any provision hereof for purposes of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.   This Settlement Agreement was drafted with substantial input by all Parties, and no reliance was placed on any representations other than those contained herein.   No Party or person may offer in evidence or otherwise use, for purposes of suggesting any interpretation of this Settlement Agreement, any prior drafts of this Settlement Agreement.

14.8    **Time of the essence.**   The Parties agree that time is of the essence in this Settlement Agreement.   The Parties further agree that upon prior notice to the Court and after

approval by the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement, as they deem necessary and appropriate.

14.9    **Counterparts.**  This Settlement Agreement may be executed in counterparts, all of which shall be considered the same as if a single document shall have been executed, and shall become effective when such counterparts have been signed by each of the Parties and delivered to each of the other Parties.

14.10   **Non-waiver.**  The failure of any Party to enforce at any time any provision of this Settlement Agreement shall not be construed to be a waiver of that provision, nor in any way to affect the validity of this Settlement Agreement or any part thereof, or the right of any Party thereafter to enforce each and every such provision.  No waiver of any breach of this Settlement Agreement shall be held to constitute a waiver of any other breach.

14.11   **Confidentiality.**  Nothing in this Settlement Agreement is intended to or shall be construed to affect the confidentiality of any documents or information provided to any Party by any Person during the course of this Litigation and designated "CONFIDENTIAL" pursuant to the terms of the Stipulated Protective Order entered in this Litigation on July 16, 2015.

14.12   **Materiality of Exhibits.**   All of the exhibits to this Settlement Agreement expressly referenced herein are material and integral parts hereof and are fully incorporated herein by this reference.

14.13   **Privileges, immunities and protections.**  Nothing in this Settlement Agreement, or the negotiations or proceedings relating thereto is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the protections of the California Constitution, the accountants' privilege, the attorney-client privilege, the joint prosecution or defense privilege, or work product immunity.

14.14   **Third Party Beneficiaries.**   The Released Persons described in Section 1.22 are intended to be and are third party beneficiaries of the release contained in this Settlement Agreement.

14.15   **Confirmatory discovery.**   Class Counsel may seek additional "confirmatory" discovery after the execution of this Settlement Agreement for the sole and limited purpose of confirming information provided to them in the course of settlement negotiations, mediation, or other discussions, conversations, or activities concerning the resolution of this Litigation ,or relating to objectors or their standing .  Nothing herein shall preclude any Party from designating portions of any confirmatory discovery "CONFIDENTIAL" in accordance with the terms of the Stipulated Protective Order entered in this Litigation on July 16, 2015.

14.16   **Insolvency.**   NVIDIA warrants, as to the payments made by or on behalf of it, at the time of such payment that NVIDIA made or caused to be made pursuant to Section 2 above, it was not insolvent, nor did or will the payment required to be made by or on behalf of it render NVIDIA insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This warranty is made by NVIDIA and not by NVIDIA's counsel.

14.17   **Voidable transfers.**   If a case is commenced with respect to Defendants (or any insurer contributing reimbursement funds to the Reimbursement Fund on behalf of Defendants) under Title 11 of the United States Bankruptcy Code, or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Reimbursement Fund or any portion thereof by or on behalf of Defendants to be a preference, fraudulent transfer, voidable transfer, or similar transaction, and any portion thereof is required to be returned, and

such amount is not promptly deposited to the Reimbursement Fund by others, then, at the election of Class Counsel, the parties shall jointly move the Court to vacate and set aside the releases given and judgment entered in favor of the Released Parties pursuant to this Settlement Agreement, which releases and judgment shall be null and void, and the parties shall be restored to their respective positions in the Litigation as of the date of this Settlement Agreement, and any cash amounts in the Reimbursement Fund shall be returned as provided in Section 12.5(3) above.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives dated July 22, 2016.

WHATLEY KALLAS LLP

By: _____
    ALAN M. MANSFIELD
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA 94104
Tel: (415) 860-2503
Fax: (888) 331-9633

16870 W. Bernardo Drive, Suite 400
San Diego, CA 92127
Tel: (619) 308-5034
Fax: (855) 274-1888

WHATLEY KALLAS, LLP
Joe R. Whatley, Jr
jwhatley@whatleykallas.com
(*Admitted Pro Hac Vice*)
1180 Avenue of the Americas, 30th Floor
New York, NY 10036
Tel: (212) 447-7060
Fax: (800) 922-4851

BURSOR & FISHER, P.A.

By:_____
    L. Timothy Fisher

30

L. Timothy Fisher
ltfisher@bursor.com
Neal J. Deckant (Admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Class Counsel*

DOYLE LOWTHER LLP

By: _____
William J. Doyle II
bill@doylelowther.com
John Lowther
john@doylelowther.com
4400 NE 77th Ave., Suite 275
Vancouver, WA 98662
Tel: (360) 818-9320
Fax: (360) 818-9320

Counsel for Plaintiffs in the State Court Action


ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
        Robert P. Varian
        rvarian@orrick.com
Robert P. Varian
rvarian@orrick.com
James N. Kramer
jkramer@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Attorneys for Defendants

31

L. Timothy Fisher
ltfisher@bursor.com
Neal J. Deckant (Admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Class Counsel*

DOYLE LOWTHER LLP

By:_____
William J. Doyle II
bill@doylelowther.com
John Lowther
john@doylelowther.com
4400 NE 77th Ave., Suite 275
Vancouver, WA 98662
Tel: (360) 818-9320
Fax: (360) 818-9320

Counsel for Plaintiffs in the State Court Action

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:_____
        Robert P. Varian
        rvarian@orrick.com
Robert P. Varian
rvarian@orrick.com
James N. Kramer
jkramer@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Attorneys for Defendants

31

EXHIBIT 1

**IN RE: NVIDIA GTX 970 GRAPHICS CARD LITIGATION**
**CLAIM FORM**

If you are a resident of the United States of America or its territories and purchased a GeForce GTX 970 graphics processing unit ("GTX 970 GPU") prior to **[PRELIMINARY HEARING DATE]**, and wish to file a claim to receive money as described in the Settlement Agreement and the Notices of this settlement, you must submit this Claim Form to the Administrator, Kurtzman Carson Consultants, LLC.  Claim Forms submitted on-line or by e-mail or facsimile must be received by the Administrator no later than 11:59 p.m. Pacific Time on **[CLOSING DATE]** to be considered valid.  Claim Forms submitted by U.S. Mail must be completed, signed, and postmarked on or before **[CLOSING DATE]** to be considered valid.

Completed Claim Forms must be submitted on-line *or* sent to one of the following:

| U.S. Mail | E-Mail | Facsimile |
|---|---|---|
| [KCC ADDRESS LINE 1]<br>[KCC ADDRESS LINE 2]<br>[KCC ADDRESS LINE 3] | [KCC E-MAIL] | [KCC FAX NUMBER] |

Please type or print (using CAPITAL letters) in the blanks below.  If your personal information is already filled-in, please verify that it is correct.  You only need to update it where necessary:

First Name: _____     Last Name: _____

Street Address: _____

City: _____     State/Territory: _____     Zip: _____

E-Mail Address: _____

Telephone: _____

**It is your responsibility to keep a current address on file with the Administrator.  Please make sure to notify the Administrator of any changes in your address.**

Please list, by model number, the number of GTX 970 GPU Units **for which you are submitting a claim** (if you have already listed a qualifying GTX 970 GPU Unit on a prior claim form do not list it again):

_____

_____

_____

| Verification / Proof of Purchase | | |
|---|---|---|
| If you received a notice from the Administrator by U.S. Mail or e-mail that contains a unique verification code, please enter it here:<br><br>_____<br><br>*(Example: "111-222-333")* | ***OR*** | Please attach a Proof of Purchase with your completed claim form. This can include a sales receipt, a credit card receipt or statement, a shipping manifest, a purchase order, an email confirmation of purchase or shipping, or other similar documentation reflecting a qualifying purchase, and who you purchased the GPU from.  Alternatively, you may submit a Product Identification Number, which is the product identification number, serial number, stock keeping unit ("SKU"), device identification number, part number, or other letters and/or digits embedded on the box, back, or bottom of each GTX 970 GPU you purchased that comprises its identification number, or that can be located by checking the settings for the GPU via software.<br><br>Please visit **[WEBSITE]** for more information about qualifying Proofs of Purchase, including step-by-step instructions on how to retrieve the Product Identification Number. |

**I represent the information submitted with this claim form is true and correct. I make these statements under penalty of perjury.  I understand that the Administrator retains the right to verify and determine the validity of my claim, and may request additional information from me.  I further understand that by submitting this claim, I consent to the jurisdiction of the Court for the limited purpose of challenging any claim determination by the Administrator**.

Signature: _____     Date: _____

**REMINDER:  If you are submitting your claim form on-line or by e-mail or facsimile, it must be received by the Administrator by 11:59 p.m. Pacific Time on [CLOSING DATE]. Your Claim Form must be postmarked by [CLOSING DATE] if submitted by U.S. Mail.**

PLEASE DO NOT CALL THE COURT OR THE JUDGE REGARDING THIS MATTER.

If you have questions about this lawsuit visit **[WEBSITE]**
**OR** e-mail the Administrator at **[KCC E-MAIL]**
**OR** call the Administrator at **[KCC PHONE]**

**OR** write the Administrator at:
**[KCC ADDRESS LINE 1]**
**[KCC ADDRESS LINE 2]**
**[KCC ADDRESS LINE 3]**

EXHIBIT 2

United States District Court for the Northern District of California

# If You Purchased A GeForce GTX 970 Graphics Processing Unit Prior to [DATE], You May Be Entitled To Cash

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A proposed settlement has been reached in a class action lawsuit.  The lawsuit claims that NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation, G.B.T. Inc., ASUS Computer International, and EVGA Corporation (collectively, "Defendants") sold GeForce GTX 970 graphics processing units to consumers based on inaccurate or misleading information regarding the GTX 970's specifications, performance, and capabilities.  Defendants deny these claims.  The Court did not rule in favor of Plaintiffs or Defendants.  Instead, the parties agreed to a proposed settlement to avoid the expense and risks of continuing the lawsuit.

- You are a class member if you are a resident of the United States of America who purchased a GTX 970 GPU in the U.S. from the Defendants, the AIC Partners or their authorized retailers prior to **[PRELIMINARY HEARING DATE]** other than for purposes of resale or distribution.

- If you are eligible, you may submit a claim for $30 cash for each qualifying GTX 970 device purchased in the U.S. prior to **[PRELIMINARY HEARING DATE]**.  There is no limit on the number of claims you can submit, subject to providing appropriate Proof of Purchase as described below.

**Please read this Notice carefully and in its entirety.**
**Your rights may be affected by the settlement of this Lawsuit,**
**and you have a choice to make now about how to act:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **WHAT IS THIS?** | A proposed settlement has been reached in a class action lawsuit. The lawsuit alleges that Defendants sold GeForce GTX 970 graphics processing units to consumers based on inaccurate or misleading information regarding the GTX 970's specifications, performance, and capabilities. |
| **SUBMIT A CLAIM POSTMARKED BY [CLOSING DATE]** | **This is the only way to receive a Cash Payment.**  By submitting a claim, you will give up any rights to sue Defendants separately about the same legal claims in this lawsuit. |
| **EXCLUDE YOURSELF FROM THE CLASS BY [CLOSING DATE]** | If you opt out of the settlement, you will not be eligible to receive a Cash Payment, but you will keep any rights to sue Defendants separately about the same claims alleged in this lawsuit. |

**Questions?  Visit [WEBSITE]**
**or contact Class Counsel at info@bursor.com**

| | |
|---|---|
| **OBJECT OR COMMENT BY [CLOSING DATE]** | You may write to the Court about why you do, or do not, like the settlement.  You must remain in the class to comment in support of or in opposition to the settlement. |
| **APPEAR IN THE LAWSUIT OR ATTEND A HEARING ON [FINAL APPROVAL DATE]** | You may ask to speak in Court about the fairness of the settlement.  You may enter your appearance in Court through an attorney at your own cost if you so desire. |
| **DO NOTHING** | If you do nothing, you will receive no Cash Payment.  You also give up your right to sue Defendants on your own regarding any claims that are part of the settlement. |

- Your options – **and the deadlines to exercise them** – are further explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. The Cash Payments will be made available if the Court approves the settlement.

## BASIC INFORMATION

### 1.      Why did I get this notice?

If you purchased one or more GTX 970 GPU devices in the U.S. from the Defendants, the AIC Partners ("AIC Partners" is defined in the Settlement Agreement as "Gigabyte, ASUS, EVGA, InnoVISION Multimedia Limited, Micro-Star International Co., Ltd., Manli Technology Group Ltd., Palit Microsystems Ltd., PC Partner Group Ltd., PNY Technologies Inc. and ZOTAC International (MCO) Ltd. or their subsidiaries, divisions or affiliates") or their authorized retailers prior to **[PRELIMINARY HEARING DATE]** other than for purposes of resale or distribution, you have a right to know about a proposed settlement of a class action lawsuit and your options.  If you have received this Notice in the mail or by e-mail, you have been identified from available records as a purchaser of a GTX 970 GPU.  You also may have received this Notice because you requested more information after reading the Summary Notice.

The Court ordered that you be given this Notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options.  If the Court approves this settlement, and after objections and appeals are resolved, an Administrator appointed by the Court will oversee the Cash Payments.  If you register for updates you can be informed of the progress of the settlement.

This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *In re:*

*NVIDIA GTX 970 Graphics Card Litigation*, Case No. 15-CV-00760-PJH.  The people who sued are called the Plaintiffs, and the companies they sued are called the Defendants.

## 2.      What is this lawsuit about?

This lawsuit claimed that Defendants sold GeForce GTX 970 graphics processing units to consumers based on inaccurate or misleading information regarding the GTX 970's specifications, performance, and capabilities.

Defendants deny that they did anything wrong.  The Court has not made any ruling on the factual allegations in the lawsuit.

## 3.      What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of other people who have similar claims.  The people together are a "Class" or "Class Members." One court resolves the issues for everyone in the Class,except for those people who choose to exclude themselves from the Class.

## 4.      Am I part of this Class?

If you fit into the following description, you are a Class Member:

All persons and entities resident in the United States of America who purchased a GTX 970 GPU in the United States of America from the Defendants, the AIC Partners or their authorized retailers prior to **[PRELIMINARY APPROVAL DATE]** other than for purposes of resale or distribution.  Excluded from the Settlement Class are (1) employees of Defendants or the Add-In Card Partners ("AIC Partners"), including their current or former directors, officers and counsel; (2) any entity that has a controlling interest in Defendants or the AIC Partners; (3) Defendants' and the AIC Partners' affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any member of the judge's immediate family.  For an explanation of some of the Definitions used in this Notice, you can refer to the Settlement Agreement, which can be accessed at **[WEBSITE]**.

## THE CLAIMS IN THE LAWSUIT

## 5.      What does the lawsuit complain about?

Defendants manufacture, design and/or sell GTX 970 GPU devices throughout the United States.  Plaintiffs allege that Defendants sold the GTX 970 GPU devices to consumers based on inaccurate or misleading information regarding the GTX 970's specifications, performance, and capabilities.  Specifically, Plaintiffs allege that Defendants misrepresented that the GTX 970 devices:  (1) operate with a full 4 gigabytes of video random access memory, (2) have 64 render output processors, and (3) have an L2 cache capacity of 2 megabytes, or omitted material facts to the contrary.  You can read Plaintiffs' Complaint <link> at **[WEBSITE]**.

## 6.      How do Defendants answer?

Defendants deny any wrongdoing and deny the Plaintiffs' allegations. You can read Defendants' Response to the Complaint <link> at **[WEBSITE]**.

## 7.   Has the Court decided who is right?

The Court hasn't decided whether the Defendants or the Plaintiffs are correct. Instead, the parties agreed to a proposed settlement.

## YOUR LEGAL RIGHTS AND OPTIONS

You have to decide now whether to submit a claim, do nothing at all, comment on or object to the proposed settlement, or ask to be excluded from the proposed settlement.

## 8.   What does the proposed settlement provide if I submit a claim?

If you are eligible, you may submit a claim for $30 cash for each qualifying GTX 970 GPU device purchased in the U.S. prior to **[PRELIMINARY HEARING DATE]**. There is no limit to the number of claims you can submit as long as you submit the required proof of purchase.

When submitting a claim, you will be required to provide a verification code or proof of purchase. If you were sent a direct notice of the settlement, the verification code was included on the notice. If you were not, qualifying proofs of purchase include a sales receipt, a credit card receipt or statement, a shipping manifest, a purchase order, an email confirmation, or other similar documentation reflecting a qualifying purchase and who you purchased the GPU from. Alternatively, you may submit a Product Identification Number, which is the product identification number, serial number, stock keeping unit ("SKU"), device identification number, part number, or other letters and/or digits embedded on the box, back, or bottom of each GPU that comprises its identification number, or that can be located by checking the settings for the GPU via software.

Please visit **[WEBSITE]** for more information about qualifying proofs of purchase, including step-by-step instructions on how to retrieve your Product Identification Number.

## 9.   How do I submit a claim form?

Class Members who wish to receive a Cash Payment must submit a Claim Form.

You can download a Claim Form at **[WEBSITE]**, or call **[KCC PHONE]** and ask that a copy be sent to you. Read the instructions carefully, fill out the form, and submit it by e-mail or facsimile on or before 11:59 p.m. Pacific Time on **[CLOSING DATE]**. Alternatively, you may also submit you Claim Form by mailing it to the following address: **[KCC ADDRESS]**. It must be postmarked no later than **[CLOSING DATE]**.

If you received this Notice in the mail or by e-mail, a link or directions on how to access the Claim Form is included.

## 10.   What if I didn't get a Claim Form in the mail or by e-mail?

If you didn't receive a Claim Form in the mail or by e-mail, you can obtain the Claim Form in

---

one of three ways:

(1) **By Phone:**  Call toll-free, **[KCC PHONE]**

(2) **By Mail:**  Write to **[KCC ADDRESS]**.  Be sure to include your name and mailing address.

(3) **Online:**  You can download the Claim Form at **[WEBSITE]**.

## 11.   What happens if I do nothing at all?

By doing nothing, you are electing to stay in the Class but will not receive a Cash Payment.

Keep in mind that if you do nothing now, you will not be able to separately sue, or continue to sue, Defendants as part of any other lawsuit for the same claims that are the subject of this lawsuit.  You will also be legally bound by all of the Orders the Court and judgments the Court issues in this action.  You must exclude yourself to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the subject matter of this lawsuit ever again.

## 12.   Why would I ask to be excluded?

If you exclude yourself from the Class – which is sometimes called "opting-out" of the Class – you won't get a Cash Payment from the proposed settlement.  However, you may then be able to separately sue or continue to sue Defendants for the legal claims that are the subject of this lawsuit.  If you exclude yourself, you will not be legally bound by the Court's judgments in this proposed settlement.

If you bring your own lawsuit against Defendants after you exclude yourself, you will have to hire and pay your own lawyer for that lawsuit, and you will have to prove your claims.  If you exclude yourself so you can start or continue your own lawsuit against Defendants, you should talk to your own lawyer soon, because your claims may be subject to a filing deadline called a statute of limitations.

## 13.   How do I exclude myself from the Class?

To exclude yourself from the Class, you must send a written request for exclusion *that is received no later than [EXCLUSION DATE]*, to:

**[KCC ADDRESS]**

Your request for exclusion *must* be signed by you and contain, in writing:  (1) the name of this lawsuit, "*In re: NVIDIA GTX 970 Graphics Card Litigation*, Case No. 15-CV-00760-PJH"; (2) your full name and  address, telephone number, GTX 970 model and approximate date of purchase; (3) a clear statement of your intention such as "I wish to be excluded from the Class and do not wish to participate in the settlement."

## 14.   How do I tell the Court I don't like the proposed settlement?

You can ask the Court to deny approval by filing an objection with the Court.  You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement.  If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.  If you believe the settlement is

unsatisfactory, you may hire your own lawyer to appear in Court for you if you wish; however, if you do, you will be responsible for paying that lawyer on your behalf. The Court will consider your views. By objecting, you understand that you may be subject to discovery.

To object, you must file with the Clerk of the Court a document signed by your or your counsel that contains all the following:

- Your name, current address, telephone number, and your lawyer's name and address if you are objecting through counsel;
- Clearly identify the case name and number of the lawsuit, *In re: NVIDIA GTX 970 Graphics Card Litigation*, Case No. 15-CV-00760-PJH;
- A statement of your objections and a detailed description of the grounds for each objection you make;
- The name of the manufacturer and Production Identification Number for your GTX 970 GPU Unit;
- All the papers you intend to present to the Court in opposition to the settlement Agreement.

Your objection must be signed, mailed, and filed on or before **[OBJECTION DATE]** with the Court at:

<div align="center">

Clerk of the Court
United States District Court
Northern District of California
1301 Clay Street, Suite 400S
Oakland, CA 94612

</div>

Your objection can also be filed in person at any location of the United States District Court for the Northern District of California.

## 15. What's the difference between objecting and excluding?

Objecting is telling the Court you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## 16. Can I appear or speak in this lawsuit and proposed settlement?

As long as you do not exclude yourself, you can (but do not have to) participate and speak for yourself in this lawsuit and proposed settlement. This is called making an appearance. You can also have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

## 17. How can I appear in this lawsuit?

If you want yourself or your own lawyer (instead of Class Counsel) to participate or speak for you in this lawsuit, you must file with the Court a "Notice of Appearance." The Notice of Appearance must contain the title of the lawsuit, a statement that you wish to appear at the final approval hearing, and the signature of you or your lawyer.

Your Notice of Appearance can also state that you or your lawyer would like to speak at the Court's final approval hearing on the proposed settlement. If you submit an objection (see

**Questions?  Visit [WEBSITE]
or contact Class Counsel at info@bursor.com**

- 6 -

question 14 above) and would like to speak about the objection at the Court's final approval hearing, both your Notice of Appearance and your objection should be included in that information.

Your Notice of Appearance must be signed, mailed, and *postmarked by* **[OBJECTION DATE]** to the Court at:

<div align="center">

Clerk of the Court
United States District Court
Northern District of California
1901 Clay Street, Suite 400S
Oakland, CA 94612

</div>

## THE LAWYERS REPRESENTING YOU

| 18. | Do I have a lawyer in this case? |
|---|---|

The law firms of Bursor & Fisher, P.A. and Whatley Kallas LLP (collectively, "Class Counsel") represent you and the other Class Members.  You will not be charged for these lawyers.  More information about Bursor & Fisher, P.A. and Whatley Kallas LLP, their practice, and the firm's lawyers are available at www.bursor.com and www.whatleykallas.com.

| 19. | Should I get my own lawyer? |
|---|---|

If you choose to remain in the Class, you do not need to hire your own lawyer because Class Counsel are working on your behalf.  But, if you want your own lawyer, you will be responsible for paying that lawyer.

| 20. | How will the lawyers and the class representative be paid? |
|---|---|

From the inception of the litigation in February 2015 to the present, Class Counsel have not received any payment for their services in prosecuting the case, nor have they been reimbursed for any out-of-pocket expenses they have incurred.  When they ask the Court to approve the settlement, Class Counsel will also make a motion to the Court for an award of attorneys' fees and expenses of up to $1.3 million.  The amount of attorneys' fees and expenses is in addition to and separate from all other cash available to Settlement Class Members who submit a Claim Form, and, by the time this settlement is ruled upon, will be approximately counsel's collective lodestar (their standard hourly rates multiplied by the hours they have expended in litigating this lawsuit).  The Court may award less than that.  No matter what the Court decides with regard to the requested attorneys' fees and expenses, Settlement Class Members will never have to pay anything toward the fees or expenses of Class Counsel.

When Class Counsel ask the Court to approve the settlement, they will also ask for payment of up to $25,000 collectively for some or all of the 24 named Class representatives in the lawsuit and a related lawsuit named *Don Le v. NVIDIA Corp.* that was filed in San Diego County Superior Court.  The payments to the named Class representatives will be based on the hours they expended acting as Class representatives.  No conditions have been placed on requesting or obtaining such awards.  These amounts are in addition to and separate from all other cash available to the Settlement Class Members.  Settlement Class Members will never have to pay

anything toward the payments to the Class representatives.

## THE COURT'S FAIRNESS HEARING

On **[FINAL APPROVAL DATE]**, the Court will hold a hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you don't have to attend or speak.

| 21. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a final approval hearing at **[TIME]** on **[DATE]**, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Courtroom 3, 3rd Floor.  This date may change without further notice to the class.  Check the settlement website at **[WEBSITE]** or the Court's PACER docket to confirm that the date has not been changed.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are timely objections that have been properly submitted, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  The Court will also consider Class Counsel's request for an award of attorneys' fees, reimbursement of expenses and class representative payments.  After the hearing, the Court will decide whether to approve the settlement, and whether to grant Class Counsel's request for attorneys' fees, expenses and class representative payments.  We do not know how long these decisions will take

| 22. | Do I have to come to the hearing? |
|---|---|

No.  Class Counsel is working on your behalf and will answer any questions the Court may have.  You are welcome to attend the hearing at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you served your written objection on time and as set forth in Question 14 above, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

| 23. | May I speak at the hearing? |
|---|---|

You may ask the Court for permission to speak at the final approval hearing.  To do so, you must follow the steps listed in number 16 and 17 above.  You cannot speak at the hearing if you excluded yourself.

## FINAL SETTLEMENT APPROVAL

| 24. | What is the effect of final settlement approval? |
|---|---|

If the settlement is not approved, the case will proceed as if no settlement had been attempted.  There can be no assurance that if the settlement is not approved and litigation resumes, the Class will recover more than is provided for under the settlement, or will recover anything.

If the Court grants final approval of the settlement, all members of the Settlement Class will release and forever discharge any and all claims or causes of action that were or could have been asserted in the Litigation against the Released Persons to the extent they arise out of or relate to the marketing, advertising, promotion, sale, performance, capabilities or

specifications of the GTX 970 GPU, based on the claims asserted in Plaintiffs' Second Amended Consolidated Class Action Complaint relating to the GTX 970.  The text of the release, as it appears in the Settlement Agreement, also provides as follows:

Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished and discharged Plaintiffs, including all members of the Settlement Class who have not validly opted out of the Settlement pursuant to Section 9 below, and Class Counsel and all other Plaintiffs' Counsel for all claims relating to or arising out of or connected with the institution, prosecution, assertion, settlement or resolution of the Litigation and/or the Released Claims. By releasing and forever discharging all such claims, whether known or unknown, the Released Persons expressly, by operation of the Final Judgment, waive any and all provisions, rights and benefits conferred by California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT  KNOW  OR  SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF  KNOWN  BY  HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS  OR HER SETTLEMENT WITH THE DEBTOR,

and any other law of any jurisdiction (domestic or foreign), or principle of common law, which is similar, comparable, or equivalent to said provision.

For an explanation of some of the Definitions used in this Notice, you can refer to the Settlement Agreement, which can be accessed at **[WEBSITE]**.

## GETTING MORE INFORMATION

| **25.** | **Are more details available?** |
|---|---|

This Notice summarizes the proposed settlement.  For the precise terms and conditions of this settlement, please see the Settlement Agreement at **[WEBSITE]**.  You may also obtain a **copy** by writing to the Administrator (at the address listed above), by contacting Class Counsel as set forth below, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) at https://ecf.cand.uscourts.gov, or by  reviewing the court file, which is available for your inspection between 9:00 a.m. and 4:00 p.m. Monday through Friday (excluding Court holidays) at the Office of the Clerk of the United States District Court for the Northern District of California, 1901 Clay Street, Suite 400S, Oakland, CA 94612, under the Civil Action Number 15-CV-00760-PJH.

You may also visit the settlement website, at **[WEBSITE]**, where you will find the Settlement Agreement <link>, Plaintiff's Second Amended Consolidated Complaint <link>, Defendants' response to the Complaint <link>, the papers filed with the Court in support of this settlement <link>, and instructions on how to submit a Claim Form <link>.

You may also obtain more information by contacting Class Counsel by email at **[EMAIL ADDRESS]**, or by calling the Settlement Administrator tool free at **[KCC PHONE]**.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

DATED: _____, 2016                    **BY ORDER OF THE UNITED STATES**
                                          **DISTRICT COURT FOR THE NORTHERN**
                                          **DISTRICT OF CALIFORNIA**

**Questions?  Visit [WEBSITE]**
**or contact Class Counsel at info@bursor.com**

- 10 -

EXHIBIT 3

**LEGAL NOTICE**

# If You Purchased A GeForce GTX 970 Graphics Processing Unit Prior to [DATE], You May Be Entitled To Cash

*In re: NVIDIA GTX 970 Graphics Card Litigation*, Case No. 15-CV-00760-PJH

**WHAT IS THIS NOTICE ABOUT?**

A lawsuit is pending in the United States District Court, Northern District of California, (the "Litigation") that may affect your rights.  The Litigation claims that NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation, G.B.T. Inc., ASUS Computer International, and EVGA Corporation (collectively, "Defendants") sold GeForce GTX 970 graphics processing units ("GTX 970 GPU") to consumers based on inaccurate information regarding the GTX 970 GPU's specifications and performance.  Defendants deny these claims.  The Court did not rule in favor of Plaintiffs or Defendants.  Instead, the parties agreed to a proposed settlement.

**AM I A MEMBER OF THE CLASS?**

The class is defined as all persons and entities residing in the United States of America who purchased a GTX 970 GPU from the Defendants, the AIC Partners or their authorized retailers prior to **[PRELIMINARY APPROVAL DATE]** other than for purposes of resale or distribution.

**WHAT DOES THE SETTLEMENT PROVIDE?**

Subject to Court approval, Defendants will pay $30 cash for each qualifying GTX 970 GPU device purchased in the U.S. prior to **[PRELIMINARY HEARING DATE]**.  There is no limit on the number of GTX 970 GPU devices a person can submit a claim for, so long as they submit the necessary proof of purchase.

**WHAT ARE MY RIGHTS ?**

You have a choice of whether to stay in the Class or not, and you must decide this now.

1. You Can Accept the Settlement.  Class Members who wish to receive a Cash Payment **must** submit claims by **[CLOSING DATE]**.  You can download a Claim Form at **[WEBSITE]**.  Read the instructions carefully, fill out the form, and submit it online on or before **[CLOSING DATE]**.  Alternatively, you may also submit a Claim Form by mailing it to the following address: **[KCC ADDRESS]**.  It must be postmarked no later than **[CLOSING DATE]**.  Claim Forms may also be e-mailed or faxed to **[KCC E-MAIL]** or **[KCC FAX]**, and must be received by the Administrator no later than 11:59 p.m. Pacific Time on **[CLOSING DATE]** to be considered valid.  If you fail to submit a timely Claim Form and do not exclude yourself from the settlement, then you will be bound by the settlement but will not receive a Cash Payment. If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, Defendants as part of any other lawsuit involving the same claims that are in this lawsuit.

2. You Can Object to the Settlement.  You can ask the Court to deny approval by filing an objection with the Court.  You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement.  If the Court denies approval no settlement payments will be sent out and the lawsuit will continue.  If that is what you want to happen, you must object. You may hire your own lawyer to appear in Court for you if you wish; however, if you do, you will be responsible for paying that lawyer on your behalf.

Objections to the proposed settlement will be considered by the Court only if such objections are filed in writing by **[OBJECTION DATE]** with the Clerk of the Court at Clerk of the Court, United States District Court, Northern District of California, 1301 Clay Street, Suite 400S, Oakland, CA 94612. Objections must clearly state your name, address, telephone number, the title of this Litigation, the manufacturer or Product Identification Number for your GTX 970 GPU Unit, and provide a detailed description of the grounds for each objection you make.

3. You Can "Opt Out" of the Settlement.  If you exclude yourself from the Class – which is sometimes called "opting-out" of the Class – you won't get a payment from the settlement but won't be barred from asserting claims against Defendants.  Such notice shall include your name, address, telephone number, Unit brand, approximate date of purchase, and a statement that you want to be excluded from the lawsuit *In re: NVIDIA GTX 970 Graphics Card Litigation, Case No. 15-CV-00760-PJH*.  Send the written notice to **[KCC ADDRESS] no later than [DATE]**.

**THE FAIRNESS HEARING**

On [_____], 2016, at [_____], the Court will hold a hearing in the United States District Court for the Northern District of California to determine: (1) whether the proposed settlement is fair, reasonable, and adequate and should receive final approval; and (2) whether the application for Plaintiffs' attorneys' fees and expenses of $1.3 million (which is in addition to and separate from all other consideration and remedies available to the Settlement Class), and payment of up to $25,000 to some or all of the 24  named plaintiffs should be granted.  Class Members who support the proposed settlement do not need to appear at the hearing or take any other action to indicate their approval.

**HOW CAN I GET MORE INFORMATION?**

This is only a summary of the settlement. If you have questions or want to view the detailed notice or other documents about this lawsuit, including the Settlement Agreement, you  may visit **[WEBSITE]**.  You may also contact Class Counsel by email at info@bursor.com, or call the Settlement Administrator at : **[KCC Toll Free number**.  You may also review the Court's docket for this case on-line at https://ecf.cand.uscourts.gov or visit the Court Clerk's office during regular business hours.

By Order of the United States District Court for the Northern District of California.

EXHIBIT 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE NVIDIA GTX 970 GRAPHICS CHIP LITIGATION | CASE NO. 15-cv-00760-PJH |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | [PROPOSED] SETTLEMENT APPROVAL ORDER AND FINAL JUDGMENT |
| | Courtroom:        Hon. Phyllis J. Hamilton |

This Motion having been brought before the Court by the Class Representatives through Class Counsel, pursuant to Fed. R. Civ. P. 23(e), for a Settlement Approval Order and Final Judgment of the settlement with Defendants NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business Corporation, G.B.T. Inc., ASUS Computer International, and EVGA Corporation (collectively, "Defendants"), and the application of Class Counsel for payment of attorneys' fees and reimbursement of reasonable litigation expenses, and incentive awards to one or more of the Plaintiffs (together, the "Motion"); and the Court, having reviewed the submissions of the Parties and all purported members of the Settlement Class, having held a hearing on [DATE], and having found that the Parties are entitled to the relief they seek for the reasons stated on the record during the hearing on the Motion based upon the submission of the Parties, and for good cause shown, the Court makes the following findings:[1]

1.        Notice to the Settlement Class has been provided in accordance with this Court's Preliminary Approval Order entered on [DATE] ("Settlement Notice"). Such Settlement Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable

---

[1] Except as otherwise specified herein, all defined terms set forth in this Order shall have the same meaning as that set forth in the Settlement Agreement, and are incorporated herein.

under the circumstances, and satisfies the requirements of due process, Fed. R. Civ. P. 23, and any other applicable laws.  The Settlement Notice apprised the members of the Settlement Class of the pendency of the litigation, of all material elements of the proposed settlement, of the effect on the members of the Settlement Class, and of their opportunity to opt out of the settlement, to object to the settlement, and to appear at the final approval hearing.  Full opportunity has been afforded to Class Members to participate in the final approval hearing.  Accordingly, the Court determines that all Class Members are bound by this Settlement Approval Order and Final Judgment.

2.     The Court finds that, in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, notice of the settlement was sent to all state attorneys general and the U.S. Attorney General.  The Court has reviewed the substance of the notice pursuant to CAFA, and finds that the parties have complied with all applicable requirements of CAFA.

3.     The Settlement Agreement was arrived at after extensive arm's-length negotiations conducted in good faith by Class Counsel and counsel for Defendants in the above-captioned action, which included an in-person mediation session before the Honorable Edward A. Infante on April 26, 2016, with subsequent follow-up negotiations after that mediation during which the terms of the Settlement Agreement were extensively debated and negotiated.

4.     The claims against Defendants present difficult and complex issues as to liability and damages, as to which there are substantial grounds for differences of opinion.

5.     The settlement is fair, reasonable, and adequate in light of the complexity, expense, and duration of the litigation, and the risks inherent and involved in establishing liability and damages, and in maintaining the class action through trial and appeal.

6.     The promises and commitments of the Parties under the terms of the Settlement Agreement constitute fair value given in exchange for the releases set forth in the Settlement Agreement and as detailed herein.

7.     The Court has personal jurisdiction over the Parties and Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all Exhibits thereto, and the Court has jurisdiction to enter this Settlement Approval Order and Final Judgment.

8.      The Parties to the Settlement Agreement have submitted to the jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of the Settlement Agreement.  It is in the best interests of the Parties and the members of the Settlement Class, and consistent with principles of judicial economy, that any dispute between any member of the Settlement Class (including any dispute as to whether any person is a Class Member) and any of the Released Parties that in any way relates to the applicability or scope of the Settlement Agreement or of this Settlement Approval Order and Final Judgment, should be presented exclusively to this Court for resolution by this Court.

Based upon the foregoing findings, and all of the evidence presented in the record, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Settlement Agreement submitted with the Motion is finally approved as fair, reasonable, adequate, just, and in the best interests of the Settlement Class, and the Parties are hereby directed to consummate the Settlement Agreement and provide the relief described in the Settlement Agreement in accordance with the terms of the Settlement Agreement.

2.      The complex legal and factual posture of this case, and the fact that the Settlement Agreement is the result of arm's-length negotiations support the finding that the settlement is fair, reasonable, and adequate.

3.      The Court finds that the objections to the settlement, if any, do not establish that the settlement is unfair, unreasonable, inadequate, or should otherwise not be approved, and are hereby overruled.  Settlement Class Members who did not timely file and serve an objection to the settlement in writing pursuant to the Settlement Agreement are deemed to have waived any objection through any appeal, collateral attack, or otherwise.

4.      Based upon the submissions of the Parties, the Court finally finds as to the Settlement Class for purposes of settlement only that:  (a) the members of the Settlement Class are so numerous as to make joinder of them impracticable; (b) there are questions of law and fact common to the Settlement Class, and such questions predominate over any questions affecting only individual members of the Settlement Class; (c) the Class Representatives' claims and the defenses asserted thereto are typical of the claims of the members of the Settlement Class and the

defenses asserted thereto; (d) the Class Representatives and Class Counsel have fairly and adequately protected the interests of the members of the Settlement Class throughout this action; and (e) a class action is superior to all other available methods for fairly and efficiently resolving this action, considering: (i) the interests of the members of the Settlement Class in individually controlling the prosecution of separate actions; (ii) the extent and nature of the litigation concerning the controversy already commenced by the members of the Settlement Class; (iii) the desirability and undesirability of concentrating the litigation of these claims in a particular forum; and (iv) the difficulties likely to be encountered in the management of a class action.  The Court confirms these previous findings based on the record submitted to the Court and affirms certification of the Settlement Class.

5.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), this Court hereby finally certifies this action, for purposes of settlement, as a nationwide class action on behalf of:  All persons and entities resident in the United States of America who purchased a GTX 970 GPU in the United States of America from the Defendants, the AIC Partners or their authorized retailers prior to the Preliminary Hearing Date other than for purposes of resale or distribution.  Excluded from the Settlement Class are (1) employees of Defendants or the AIC Partners, including their current or former directors, officers and counsel; (2) any entity that has a controlling interest in Defendants or the AIC Partners; (3) Defendants' and the AIC Partners' affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any member of the judge's immediate family.  Further excluded from the Settlement Class are the Released Persons.  Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in Section 9 of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement.

6.     The Court finally approves the Class Representatives as representatives of the Settlement Class, and finds that the Class Representatives adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement.

7.     The Court finally designates Class Counsel as counsel for the Settlement Class for

-3-

the sole purposes of the settlement, and finds that Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement.

8.     The proposed attorneys' fee and expense award to Class Counsel in the amount of $1,300,000 is hereby approved as reasonable.  Such fees and expenses shall be paid pursuant to the terms of the Settlement Agreement.

9.     The Court also approves inventive awards in the following amounts to the following named Plaintiffs: _____.  Such incentive awards shall be paid pursuant to the terms of the Settlement Agreement.

10.    The claims in the Litigation are hereby dismissed on the merits with prejudice, consistent with the terms and releases as set forth in the Settlement Agreement.

11.    The terms of the Settlement Agreement, including all Exhibits thereto, and of this Settlement Approval Order and Final Judgment, shall be forever binding on, and shall have *res judicata* and preclusive effect in, any pending or future lawsuits maintained by the named Plaintiffs and each Settlement Class Member, as well as their respective heirs, beneficiaries, administrators, successors, and assigns, asserting the claims subject to the Releases set forth in the Settlement Agreement.  This Settlement Approval Order and Final Judgment the Settlement Agreement may be filed in any action asserting the claims subject to the Releases set forth in the Settlement Agreement to support any defense or counterclaim, including, without limitation, those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

12.    The Releases, which are set forth in Section 3 of the Settlement Agreement, are expressly incorporated herein in all respects and are deemed effective as of the date of this Settlement Approval Order and Final Judgment.

13.    Upon entry of this Settlement Approval Order and Final Judgment, all persons bound by the Releases in Section 3 of the Settlement Agreement shall, by operation of this Settlement Approval Order and Final Judgment, be permanently restrained, barred, and enjoined from instituting, maintaining, filing, commencing, prosecuting, or proceeding in any action with

-4-

respect to any of the claims set forth in Section 3 of the Settlement Agreement, except as provided under the terms of the Settlement Agreement, to the fullest extent permitted by law.

14.     The Settlement Agreement may be pleaded as a full and complete defense to, and may be used as the basis for a temporary restraining order or preliminary or permanent injunction against, any action, suit or other proceeding, which has been or may be instituted, prosecuted, continued to be prosecuted, or attempted to be brought by any person bound by the Releases in Section 3 of the Settlement Agreement, asserting any of the claims set forth in Section 3 of the Settlement Agreement.

15.     Without affecting the finality of the judgment entered pursuant to this Settlement Approval Order and Final Judgment, this Court retains continuing jurisdiction over this settlement, including the administration, consummation, and enforcement of the Settlement Agreement.  In addition, without affecting the finality of the judgment entered pursuant to this Settlement Approval Order and Final Judgment, this Court retains jurisdiction over the Parties, the Released Parties, and each Settlement Class Member and their counsel, who are deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Approval Order and Final Judgment and the terms of the Settlement Agreement, including the monies described in this Order and in the Settlement Agreement.

16.     Unless the Court orders otherwise, all Claim Forms are to be submitted in conformance with the Settlement Agreement and processed in accordance with the procedures for processing claims set forth in Section 8 of the Settlement Agreement.  Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement, as modified by either the Preliminary Approval Order or this Settlement Approval Order and Final Judgment.

17.     In the event that the Effective Date does not occur, this Settlement Approval Order and Final Judgment shall be rendered automatically null and void and be vacated, and in such event, all orders entered and releases delivered in connection with this settlement shall be null and void and be automatically vacated.

18.     The Court finds that there is no reason for delay and directs the Clerk to enter

-5-

judgment in accordance with the terms of this Settlement Approval Order and Final Judgment as of the date set forth below.

DATED:

_____

Phyllis J. Hamilton
United States District Court Judge

[PROPOSED] SETTLEMENT APPROVAL ORDER AND FINAL JUDGMENT

EXHIBIT 5

1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**
9                       **NORTHERN DISTRICT OF CALIFORNIA**
10
11   **IN RE NVIDIA GTX 970 GRAPHICS CHIP**          **CASE NO.: 15-cv-00760-PJH**
     **LITIGATION**
12                                                    [PROPOSED] ORDER GRANTING
                                                      MOTION FOR PRELIMINARY
13                                                    APPROVAL OF CLASS ACTION
     **THIS DOCUMENT RELATES TO:**                    SETTLEMENT AND DIRECTING
14                                                    DISSEMINATION OF CLASS
     **ALL ACTIONS**                                  NOTICE PROGRAM
15
16                                                    Judge:    Honorable Phyllis J. Hamilton
17        This Motion having been brought before the Court by the Class Representatives through
18   Class Counsel[1], pursuant to Fed. R. Civ. P. 23(e), for an Order granting preliminary approval of a
19   Settlement Agreement with NVIDIA Corporation ("NVIDIA"), Gigabyte Global Business
20   Corporation d/b/a Giga-Byte Technology Co. Ltd., G.B.T. Inc. (together with Gigabyte Global
21   Business Corporation, "Gigabyte"), ASUS Computer International ("ASUS"), and EVGA
22   Corporation ("EVGA") (collectively "Defendants"), and directing the dissemination of class notice
23   and appointing Settlement Class Counsel and the Settlement Administrator (the "Motion"); and the
24   Court having reviewed the submissions of the parties, and having found that the parties are entitled
25   to the relief they seek, and for good cause shown;
26        IT IS ORDERED that the Motion is GRANTED, and it is further ORDERED as follows:
27   _____
28   [1]  Except as otherwise specified herein, all defined terms set forth in this Order shall have the same
     meaning as that set forth in the Settlement Agreement, and are incorporated herein.

1.      The Court has jurisdiction over the subject matter of the Action and over all Parties to this Settlement, including, without limitation, the Settlement Class (as defined below in paragraph 4), to enter this Order.

2.      The Settlement Agreement submitted with the Motion is preliminarily approved as fair, reasonable and adequate.  The Settlement Agreement was arrived at in good faith, following extensive arm's-length negotiations by counsel for the Parties.  The Court finds that the terms of Settlement Agreement fall "within the range of possible approval" sufficient to warrant sending notice thereof to the Settlement Class.  Federal Judicial Center, *Manual for Complex Litigation* ("MCL 4th") § 21.632 (4th ed. 2004).  This finding that the Settlement is reasonable is subject to a final determination to be made after a Fairness Hearing, as set forth below.

3.      Based upon the submissions of the Parties, for purposes of the Settlement only, the Court finds as to the Settlement Class that: (a) the members of the Settlement Class are so numerous as to make joinder of them impracticable; (b) there are questions of law and fact common to the Settlement Class as to the reasonableness of the Settlement, and such questions predominate over any questions affecting only individual members of Settlement Class; (c) the Class Representatives' claims and the defenses asserted thereto are typical of the claims of members of the Settlement Class and the defenses asserted thereto; (d) the Class Representatives and Class Counsel have fairly and adequately protected the interests of members of the Settlement Class throughout this Action; and (e) a class action is superior to all other available methods for fairly and efficiently resolving this Action, considering: (i) the interests of the members of the Settlement Class in individually controlling the prosecution of separate actions; (ii) the extent and nature of the litigation concerning the controversy already commenced by members of the Settlement Class; (iii) the desirability and undesirability of concentrating the litigation of these claims in a particular forum; and (iv) the difficulties likely to be encountered in the management of a class action.

4.      Therefore, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court conditionally certifies the Settlement Class, defined as "all persons and entities resident in the United States of

America who purchased a GTX 970 GPU in the United States of America from the Defendants, the AIC Partners or their authorized retailers prior to the Preliminary Hearing Date other than for purposes of resale or distribution.  Excluded from the Settlement Class are (1) employees of Defendants or the AIC Partners, including their current or former directors, officers and counsel; (2) any entity that has a controlling interest in Defendants or the AIC Partners; (3) Defendants' and the AIC Partners' affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any member of the judge's immediate family."

5.     The Court preliminarily approves the Plaintiffs listed in the Settlement Agreement as representatives of the Settlement Class ("Class Representatives").

6.     Whatley Kallas, LLP and Bursor & Fisher, P.A. are appointed as Class Counsel.

7.     A Fairness Hearing shall be held before this Court on _____, 2016, at _____ a.m. to determine (a) the merits of any valid and timely objection submitted by Settlement Class Members; (b) whether this action finally meets each of the prerequisites for class certification set forth in Fed. R. Civ. P. 23(a), and may properly be maintained as a class action for settlement purposes only on behalf of the Settlement Class under Fed. R. Civ. P. 23(b)(3); (c) whether the Settlement should receive final approval as fair, reasonable, adequate, and in the best interests of the Settlement Class; (d) whether the Final Approval Order should be entered granting final approval of the Settlement, entering final judgment and dismissing the claims asserted in the Complaint in this action with prejudice as to Defendants and the Released Parties, consistent with the terms provided for in the Settlement Agreement; (e) whether Settlement Class Members should be bound by the Releases set forth in the Settlement Agreement; (f) whether Settlement Class Members should be subject to a permanent injunction which, among other things, bars Settlement Class Members from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), organizing, or soliciting participation of other Settlement Class Members to pursue any action in any jurisdiction based on or relating to any of the Released Claims or the facts and circumstances relating thereto against any Released Party, and (g) whether the application of Class Counsel for the payment of attorneys' fees and reasonable litigation

1   expenses, and payment of an incentive award to one or more of the Plaintiffs are reasonable and

2   should be approved.  The Fairness Hearing may be postponed, adjourned or continued by further

3   order of this Court, without further notice to the Settlement Class.

4         8.    At the Fairness Hearing, the Court will consider any timely and valid objections

5   presented by Settlement Class Members and the Parties' responses to any such objections.

6         9.    Any Person included within the Settlement Class who wishes to be excluded from

7   membership in the Settlement Class must do so in writing by mailing a request for exclusion from

8   the Settlement Class to the Administrator, postmarked no later than _____, 2016.  To be

9   effective, the request for exclusion (or opt-out request) must: (a) include the case name and

10   number, (b) include the Person's full name and current mailing address; (c) identify the GTX 970

11   Model purchased and the appropriate date of purchase, (d) contain a statement that the Person is a

12   member of the Settlement Class, (e) include a statement clearly indicating the Person's intent to be

13   excluded from the Settlement Class; and (f) be signed by the Person submitting the request for

14   exclusion.  Requests for exclusion must be submitted individually, and not on behalf of more than

15   one member of the Settlement Class.  No member of the Settlement Class shall have the right or

16   may exclude themselves from the Settlement Class as a class or group of persons, in a

17   representative capacity on behalf of a class or group of persons, or on behalf of any other member

18   of the Settlement Class.  Any request for exclusion that fails to satisfy the requirements of this

19   paragraph or that is not properly and timely submitted, as required above, shall be ineffective and

20   void absent further Court order or agreement.  Such member of the Settlement Class shall be

21   deemed to have waived all rights to opt out of the Settlement Class, and shall be deemed a Class

22   Member for all purposes pursuant to this Order.

23        10.   If a timely and valid request for exclusion is made by a member of the Settlement

24   Class, then that Person will not be a Settlement Class Member, will not be entitled to participate in

25   the Settlement, cannot object to the Settlement, and will not be bound by the Settlement and/or any

26   determinations and/or judgments concerning the Settlement Agreement.

27

28

11. Any member of the Settlement Class who does not request exclusion from the Settlement Class may object to the fairness, reasonableness or adequacy of the proposed Settlement. Any such objection must be filed with the Clerk of the Court, at the address listed below, and must be filed and postmarked no later than _____, 2016:

Clerk of the Court
United States District Court
Northern District of California
1301 Clay Street, Suite 400S
Oakland, CA 94612

In order to be a valid objection, the Class Member must timely submit the objection to the Court, and the objection must include: (a) the case name and number, (b) the objector's full name and current address, (c) a statement that the objector is a Class Member, (d) the name of the manufacturer and product identification number of the GTX 970 Units the objector purports to own or have owned during the Class Period, (e) a statement in writing of all objections and the reasons therefor, and include all supporting papers, including, without limitation, briefs, written evidence, and declarations and an agreement to be subject to discovery, and (f) a statement whether the objector intends to appear at the Fairness Hearing, through counsel or otherwise. Objections must be submitted individually and not on behalf of more than one Class Member. No Class Member may file objections as a class or group of persons, in a representative capacity on behalf of a class or group of persons, or on behalf of any other Class Member.

12. Responses to any valid and timely objections shall be filed by the Parties no later than _____, 2016.

13. Settlement Class Members who timely submit valid written objections in accordance with the requirements of Paragraph 11 of this Order may, but need not, appear and be heard at the Fairness Hearing regarding any objections so submitted, in person or by counsel, but must include in their written objections a statement of their intent to appear at the Fairness Hearing and identify all evidence and witnesses that they may offer at the Fairness Hearing.

14. Any Settlement Class Member that does not properly and timely submit an objection to the Settlement in accordance with the provisions of this Order will be considered to

1  have waived any such objection, shall not be permitted to object to the Settlement at the Fairness

2  Hearing, shall be foreclosed from seeking any review of the Settlement or its terms by appeal or

3  otherwise, and shall be bound by the final determination of this Court.

4        15.    The Court finds that the manner and content of the settlement notice program

5  specified in the Settlement Agreement and as described in the Motion and in the form submitted to

6  the Court will provide the best notice practicable to the Settlement Class under the circumstances

7  to apprise members of the Settlement Class of the pendency of this action, the terms of the

8  Settlement, and their right to participate in, object to, or exclude themselves from the Settlement.

9  The Court further finds that the Full Notice, the Summary Notice, the Claim Form, the mailed and

10 published notices, and the settlement website program as set forth in Section 6 and Exhibits "2",

11 "3" and "4" of the Settlement Agreement are reasonable, constitute due, adequate and sufficient

12 notice to all persons entitled to receive notice, and meet the requirements of due process.  The

13 Court hereby directs that notice be given pursuant to the terms set forth in the Settlement

14 Agreement, provided that the Parties, by agreement, may revise the Notices and Claim Form in

15 ways that are not material, or in ways that are appropriate to update those documents for purposes

16 of accuracy.  All costs incurred in connection with the preparation and dissemination of any notices

17 to the Settlement Class shall be paid by Defendants directly to the Administrator, subject to the

18 provisions of the Settlement Agreement.

19        16.    If the Settlement is finally approved, the Court shall enter a separate order finally

20 approving the Settlement, entering judgment and dismissing the claims asserted in the Complaint

21 with prejudice against the Released Parties consistent with the terms of the Settlement Agreement.

22 Such order and judgment shall be fully binding with respect to the Plaintiffs, all Settlement Class

23 Members, and the Released Parties.

24        17.    In the event that the proposed Settlement provided for in the Settlement Agreement

25 is not approved by this Court, or the Effective Date does not occur for any reason, then the

26 Settlement Agreement, all drafts, negotiations, discussions, and documentation relating thereto, and

27 all orders entered by this Court in connection therewith shall become null and void and

28

1    automatically vacated and all monies (except for incurred settlement notice and administrative

2    costs) returned to Defendants by the Administrator pursuant to the terms of the Settlement

3    Agreement.  In such event, the Settlement Agreement and all negotiations and proceedings relating

4    thereto shall be withdrawn without prejudice to the rights of the Parties, who shall be restored to

5    their respective positions as of the date of the execution of the Settlement Agreement.

6         18.    The Court hereby appoints Kurtzman Carson Consultants LLC ("KCC") as the

7    Administrator to perform the duties of the Administrator as set forth and in accordance with the

8    Settlement Agreement and all Exhibits thereto, in accordance with the schedule set forth in this

9    Order.  The dates of performance are as follows:

| | |
|---|---|
| Activation of Settlement Website by Settlement Administrator. | Date:  _____, 2016 |
| Posting of Statement on Settlement Class Counsel's websites directing individuals to the Settlement Website | Date:  _____, 2016 |
| Mailing of the Summary Notice | Date:  _____, 2016 |
| Completion of publication of a summary notice per the Settlement Agreement | Date:  _____, 2016 |
| Settlement Administrator to provide Court with Declaration confirming notice was provided in accordance with terms of Settlement Agreement | Date:  _____, 2016 |

18        19.    The deadline for any Claim Form to be postmarked shall be _____,    2017.

19   Unless the Court orders otherwise, Claim Forms must be submitted in conformance with the

20   Settlement Agreement and shall be processed in accordance with the procedures set forth in the

21   Settlement Agreement.

22        20.    The Parties shall file and serve papers in support of final approval of the Settlement,

23   including any request for payment of attorneys' fees, costs and reasonable litigation expenses, and

24   incentive awards to one or more of the Named Plaintiffs, by _____, 2016.

25        21.    Pending final determination of whether the Settlement embodied in the Settlement

26   Agreement is to be approved, all Settlement Class Members are preliminarily enjoined from either

27   directly, representatively, derivatively, or in any other capacity, including organizing other

28

1   Settlement Class Members for purposes of, commencing or prosecuting, or continuing to prosecute

2   any action or proceeding in any court or tribunal asserting any of the Released Claims as defined in

3   the Settlement Agreement against Defendants or any of their Affiliates. This injunction is

4   necessary to protect and effectuate the Agreement and the Settlement contemplated thereby, this

5   Order, and the Court's flexibility and authority to effectuate the Settlement Agreement and to enter

6   Judgment when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its

7   judgments.

8   DATED: _____, 2016

9                                                   HON. PHYLLIS J. HAMILTON
                                                UNITED STATES DISTRICT JUDG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2



**Administration Services Estimate**
*Nvidia Graphics Card Settlement*
June 3, 2016
Patrick Ivie; pivie@kccllc.com; 310.776.7385

| Key Assumptions Used in Estimate Preparation | | |
|---|---|---|
| Size of Class: | 650,000 class members | |
| Estimated # of Class Members with Email & Postal Address: | 150,000 class members | |
| | | |
| Case Duration: | 6 months | |
| # of Electronic, Finalized Data Files Provided (Excel, Access, etc.): | 1 file(s) | |
| | | |
| CAFA Notice Required? | No | |
| | | |
| Claims Processing: | Yes | |
| Address Searches: | Yes | |
| % of returned notices to be forwarded: | 1% | |
| % of returned undeliverable notices: | 10% | |
| % of successful address searches: | 60% | |
| Media Campaign Required: | Yes | |
| Expert Media Services: | No | |
| | | |
| English Only: | Yes | |
| # of Email Campaigns: | 1 | |
| % of emails bounced back ("Bouncebacks"): | 20% | |
| Reminder Mailing: | No | |
| | | |
| Duration of Claims Filing Period: | 8 weeks | |
| Business Reply Mail ("BRM" or "pre-paid" postage): | No | |
| % of class members that will file a claim: | 5% | |
| % of claims filed online: | 98% | |
| % of claims filed by postal mail: | 2% | |
| % of deficient claims filed by postal mail: | 5% | |
| | | |
| Type of Telephone Support: | IVR w/ Punchthrough | |
| % of class that will call: | 5% | |
| % of callers that will punch through to a Live Operator: | 10% | |
| % of callers that will request a Notice Packet: | 5% | |
| Duration of Telephone Support: | 6 months | |
| | | |
| Type of Website Support: | Dynamic | |
| Online Claims Filing: | Yes | |
| Duration of Website Support: | 6 months | |

**SUMMARY OF COSTS**

| | |
|---|---|
| Estimated Claims Filing Rate: | 5% |
| Estimated # of Claims Filed: | 32,500 |
| **Notice Procedures** | **$264,026** |
| **Telephone Support** | **$40,405** |
| **Claims Administration** | **$29,239** |
| **Disbursements & Tax Reporting** | **$21,463** |
| **Sub-Total Administration Costs** | **$355,132** |
| **Plus Estimated Postage*** | **$24,030** |
| **Total Estimated Cost**** | **$379,162** |
| | |
| **Media Options** | |
| **Incremental Media Cost** | **$31,250** |

| NOTICE PROCEDURES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| **Data and Forms Set-up** | | | | | |
| - Intake and Process Data, Set up Case Management System | | 25 hrs | $100.00 | $2,500 | |
| - Format Document(s) | | 10 hrs | $100.00 | $1,000 | |
| Sub-total of Data and Forms Set-up | | | | | $3,500 |
| | | | | | |
| **Email Campaign** | | | | | |
| - Email Service | | 150,000 units | $0.053 | $7,950 | |
| - Email Campaign Management | | 10 hrs | $100.00 | $1,000 | |
| - Estimated # of Bouncebacks | 20% | 30,000 units | | | |
| - Track/Manage Bouncebacks | | 5 hrs | $100.00 | $500 | |
| Sub-total of Email Campaign | | | | | $9,450 |
| | | | | | |
| **Print/Mail Notice Packet** | | | | | |
| - Estimated # of Class Members with Email Bounceback | | 30,000 units | | | |
| - NCOA Updates | | 30,000 units | | $250 | |
| - Single-Postcard Summary Notice | | 30,000 units | $0.080 | $2,400 | |
| - Print Production Management | | 5 hrs | $100.00 | $500 | |
| - Forwarding of Returned Mail with USPS Forwarding Addresses | 1% | 300 units | $0.85 | $255 | |
| - Data Entry for Re-mails to New Addresses | | 300 units | $0.50 | $150 | |
| - Returned Undeliverable Mail | 10% | 3,000 units | | | |
| - Handling of Returned Undeliverable Mail | | 4 hrs | $100.00 | $400 | |
| Sub-total of Print/Mail Notice Packet | | | | | $3,955 |
| | | | | | |
| **Address Searches/Re-mails** | | | | | |
| - Number of Address Searches Performed | | 3,000 units | $0.50 | $1,500 | |
| - Number of New Addresses Found | 60% | 1,800 units | | | |
| - Re-mails to Found Addresses | | 1,800 units | $0.85 | $1,530 | |
| - Staff Time for Address Searches/Re-mails | | 4 hrs | $100.00 | $400 | |
| Sub-total of Address Searches/Re-mails | | | | | $3,430 |



**Administration Services Estimate**
*Nvidia Graphics Card Settlement*
June 3, 2016
Patrick Ivie; pivie@kccllc.com; 310.776.7385

| | | | |
|---|---|---|---|
| **Media Campaign** | | | |
| - Media Campaign | | | |
|   - See the attached *Notice Plan Highlights* for details | | | $186,266 |
|   - Production of Materials | | | (included in above pricing) |
| - Social Media Sites | | | |
|   - TopClassActions.Com, Facebook Page | | | $10,000 |
| - Expert Services | | | |
|   - Plain Language Notice Drafting | 25 hrs | $350.00 | $8,750 |
|   - Notice Plan Research | 24 hrs | $300.00 | $7,200 |
|   - Notice Plan for Court Submission | 24 hrs | $350.00 | $8,400 |
|   - Affidavit for Preliminary Approval | 16 hrs | $375.00 | $6,000 |
|   - Notice Program Implementation | | | *(waived)* |
|   - Affidavit for Final Approval | 16 hrs | $375.00 | $6,000 |
|   - Testimony | TBD hrs | $375.00 | TBD |
|   - Travel and Administration | TBD hrs | $75.00 | TBD |
|     **Sub-total of Media Campaign** | | | **$232,616** |
| | | | |
| **Website Set-up & Maintenance** | | | |
| - Design & Set up Dynamic Website | 50 hrs | $100.00 | $5,000 |
| - Domain Registration (5 yrs/Privacy Registration) | | | $175 |
| - Maintenance | 6 hrs | $100.00 | $600 |
| - Server Space rental | 6 mos | $50.00 | $300 |
|     **Sub-total of Website Set-up & Maintenance** | | | **$6,075** |
| | | | |
| **Case Management, Opt Out Processing, and Declaration of Notice Procedures** | | | |
| - Case Management | 35 hrs | $100.00 | $3,500 |
| - Opt-Out/Objection Processing (per hr) | 5 hrs | $100.00 | $500 |
| - Correspondence Processing | 5 hrs | $100.00 | $500 |
| - Declaration of Notice Procedures | 5 hrs | $100.00 | $500 |
|     **Sub-total of Case Management, Opt Out Processing, and Declaration of Notice Procedures** | | | **$5,000** |
| | | | |
|     **SUB-TOTAL OF NOTICE PROCEDURES** | | | **$264,026** |

| TELEPHONE SUPPORT | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| **Automated Call Support** | | | | | |
| - Toll Free Phone Line & System Set-up Cost | | | | $3,000 | |
| - Script Drafting and Management | | 15 hrs | $100.00 | $1,500 | |
| - Monthly Maintenance Fees | | 6 mos | $50.00 | $300 | |
| - Projected # of Calls (% of Class) | 5% | 32,500 calls | | | |
|   - Average Call Duration (minutes) | | 3 mins | | | |
|   - IVR Line Charges | | 97,500 mins | $0.18 /min | $17,550 | |
| - Projected # of Punchthroughs to Live Operator (% of Calls) | 10% | 3,250 calls | | | |
|   - Average Call Duration (minutes) | | 3 mins | | | |
|   - IVR Transfer Line Charges | | 9,750 mins | $0.18 /min | $1,755 | |
|   - Live Operator Line Charges | | 9,750 mins | $1.25 /min | $12,188 | |
| - Long-Form Notice Packet Requests | 5% | 1,625 units | | | |
|   - Fulfill Notice Packet Requests | | 1,625 units | $1.50 | $2,438 | |
|   - Print Production Management | | 4 hrs | $100.00 | $400 | |
| - Transcriptions | | 1,625 units | $0.60 | $975 | |
| - Staff Time Downloading Transcribed Data (30 min/month x 6 months) | | 3 hrs | $100.00 | $300 | |
|     **SUB-TOTAL OF TELEPHONE SUPPORT** | | | | | **$40,405** |

| CLAIMS ADMINISTRATION | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| **Estimated # of Claims** | 5% | 32,500 claims | | | |
| **Process Claims Filed Online** | 98% | 31,850 claims | $0.75 | $23,888 | |
| **Process Claims Filed by Postal Mail** | 2% | 650 claims | | | |
| - Staff Hours Processing Claims | | 35 hrs | $100.00 | $3,500 | |
| - Open/Image Forms | | 650 claims | $0.60 | $390 | |
| **Deficient Claims filed by Postal Mail** | 5% | 33 units | | | |
| - Print/Mail Deficiency Letters | | 33 units | $1.25 | $41 | |
| - Staff Hours Processing Deficiencies | | 4 hrs | $100.00 | $400 | |
| - Open/Image Forms | | 33 units | $0.60 | $20 | |
| **Status Reports** | | 10 hrs | $100.00 | $1,000 | |
|     **SUB-TOTAL OF CLAIMS ADMINISTRATION** | | | | | **$29,239** |



**Administration Services Estimate**
*Nvidia Graphics Card Settlement*
June 3, 2016
Patrick Ivie; pivie@kccllc.com; 310.776.7385

| DISBURSEMENTS & TAX REPORTING | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Funds Management, Obtain Tax ID | | 10 hrs | $100.00 | $1,000 | |
| Distribution Calculations & Prep | | 15 hrs | $100.00 | $1,500 | |
| Print/Mail Checks | | 32,500 cks | $0.40 | $13,000 | |
| Distribution Management | | 10 hrs | $100.00 | $1,000 | |
| Returned Undeliverable Checks | 1% | 325 units | | | |
| - Handling of Returned Undeliverable Mail | | 10 hrs | $100.00 | $1,000 | |
| Reissue Checks | 1% | 325 cks | $4.50 | $1,463 | |
| Post-Distribution Follow-up & Reports | | 15 hrs | $100.00 | $1,500 | |
| Settlement Fund Tax Returns (annual) | | 1 yrs | $1,000.00 | $1,000 | |
| **SUB-TOTAL OF DISBURSEMENTS & TAX REPORTING** | | | | | $21,463 |
| | | | | | |
| **SUB-TOTAL ADMINISTRATION COSTS** | | | | | $355,132 |
| **Plus Estimated Postage*** | | | | | $24,030 |
| **TOTAL ESTIMATED COST**** | | | | | $379,162 |

| MEDIA OPTIONS | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Media Plan | | | | | |
| - Incremental Media Costs | | | | | |
| - Incremental Cost to Shift 10M RON Internet Impressions to Behavioral Target of Tech Savvy Adults 18-64 | | | | $31,250 | |
| **Sub-total of Incremental Media Costs** | | | | | $31,250 |

| OTHER SERVICES AND OUT-OF-POCKET EXPENSES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Other Services and Ad Hoc Reporting, as needed or requested | | | | (standard hourly rates) | |
| Other Charges and Out-of-Pocket Costs**** | | | | (actual) | |

\* Estimated Postage and Handling.
\*\* Does not include applicable taxes.
\*\*\* Includes, but is not limited to long distance calls, overnight shipping, photocopies, storage, PO Box rentals, broker fees, etc.
\*\*\*\* Rates are based on media placements occurring in 2015. We anticipate a 5-8% increase in media costs for placements that occur in 2016.

This Class Action Administration Services Estimate and the attached Cost Summary & Scope of Services (together, the "Proposal") are valid for ninety days from 6/3/2016. After such period, KCC reserves the right to amend the Proposal (including, without limitation, by increasing fees and costs) or to withdraw the Proposal in its sole discretion.

All services to be provided to the undersigned (the "Client") and all fees and costs set forth in the Proposal are subject to the terms, specifications, assumptions and conditions set forth in the Proposal and the attached Terms and Conditions (the "Terms of Service").

KCC Class Actions Services, LLC

BY: _____     DATE: _____

TITLE: _____

Consumer Law Group of California

BY: _____     DATE: _____

TITLE: _____

EXHIBIT 3

# BURSOR & FISHER

P.A.

[www.bursor.com](http://www.bursor.com)

888 SEVENTH AVENUE                                          1990 NORTH CALIFORNIA BLVD.
NEW YORK, NY 10019                                          WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in New York and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million dollar verdicts or recoveries in five of five civil jury trials since 2008.  Our most recent trial victory came in August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel and won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Verizon Wireless, AT&T Wireless, Cingular Wireless, Sprint, T-Mobile, General Electric, Haier America, and Michaels Stores as well as purchasers of Avacor™, Xenadrine™, and Sensa™ products.  Since 2014, our lawyers have certified four consumer classes pursuant to contested class certification motions (*see Ebin*, *Forcellati*, *In re EZ Seed Litig.*, and *Dei Rossi infra*).  Since December 2010, Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

  i.    *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

  ii.   *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

  iii.  *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

  iv.   *Loreto v. Coast Cutlery Co.* (D.N.J. Sep. 8, 2011) to represent a certified nationwide class of purchasers of knives or tools made by Coast Cutlery,

  v.    *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

BURSOR&FISHER
P.A.

vi.   *Avram v. Samsung Electronics America, Inc., et al.* (D.N.J. Jan. 3, 2012), to represent a proposed nationwide class of purchasers of mislabeled refrigerators from Samsung Electronics America, Inc. and Lowe's Companies, Inc.,

vii.   *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012), to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

viii.   *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012), to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

ix.   *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012), to represent a certified nationwide class of purchasers of Sensa weight loss products,

x.   *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers of Sinus Buster products,

xi.   *Scott v. JPMorgan Chase & Co., et al.* (S.D.N.Y. May 30, 2013) to represent a proposed nationwide class of Chase customers who were allegedly unilaterally enrolled into Chase's Overdraft Protection service and charged unauthorized fees,

xii.   *Podobedov v. Living Essentials, LLC* (C.D. Cal. Nov. 8, 2013) to represent a proposed nationwide class of purchasers of 5-hour Energy products,

xiii.   *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

xiv.   *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

xv.   *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

xvi.   *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015), to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

xvii.   *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015), to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

xviii.   *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

xix.   *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015), to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards, and

xx.   *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products.

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in five of five civil jury trials since 2008. Mr. Bursor's most recent victory came in August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which he served as lead trial counsel and won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict. Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury. Mr. Bursor's perfect record of five wins in five class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer. Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996. He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif. Prior to starting his own practice, Mr. Bursor was a litigation associate with Cravath, Swaine & Moore (1996-2000) and Chadbourne & Parke LLP (2001), where he represented large telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second Circuit, United States Court of Appeals for the Third Circuit, United States Court of Appeals for the Fourth Circuit, United States Court of Appeals for the Sixth Circuit, United States Court of Appeals for the Ninth Circuit, United States Court of Appeals for the Eleventh Circuit, United States District Courts for the Southern and Eastern Districts of New York, United States District Courts for the Northern, Central, Southern and Eastern Districts of California, and the United States District Courts for the Southern and Middle Districts of Florida.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified. Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans. Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified). These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation. Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members, and ensured that the class would recover in excess of $275 million.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, provides for a $20 million cash payment to provide

BURSOR&FISHER
P.A.

refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and includes an injunction that will reduce late fee charges by $18.6 million over 28 months.

## L. TIMOTHY FISHER

Mr. Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.  Prior to founding Bursor & Fisher, P.A. in 2011, Mr. Fisher was an associate with Bramson, Plutzik, Mahler & Birkhaeuser, LLP in Walnut Creek, California for 13 years.  During his career, he has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors.  Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud.  With his partner Scott A. Bursor, Mr. Fisher has tried four class action jury trials, all of which produced successful results.  In the initial phase of *Thomas v. Global Vision Products*, the jury awarded the plaintiff class more than $36 million plus punitive damages, while the Court awarded a $40 million recovery on separate legal claims. In a subsequent phase of the trial against individual defendants, Mr. Fisher and Mr. Bursor obtained a jury award of $50,024,611 – the largest class action award in California in 2009 and the second-largest jury award of any kind.

Mr. Fisher was admitted to the State Bar of California in 1997.  He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern and Eastern Districts of California.  Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004.  Recently, Mr. Fisher contributed jury instructions, a verdict form, and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010).  In 2014, Mr. Fisher was appointed to a four-year term as a member of the Standing Committee on Professional Conduct for the United States District Court for the Northern District of California.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997.  While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States.  In 1994, Mr. Fisher received an award for Best Oral Argument in the first year moot court competition.  In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science.  Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council."  He is also a member of Phi Beta Kappa.

### *Representative Cases*

- *Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor.  The case lasted more than seven years and involved two trials.  The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000.  The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

BURSOR&FISHER
P.A.

- *In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court).  Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems.  Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions.  The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

- *In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Cases, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

- *Guyette v. Viacom, Inc.* (Alameda County Superior Court) - Mr. Fisher was co-counsel for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.  A settlement was negotiated shortly before trial under which defendants paid the class $13 million in cash.

- *In re Haier Freezer Consumer Litigation* (Northern District of California) - Mr. Fisher filed the case in June 2011 and alleged that Haier had misrepresented the energy consumption of its HNCM070E freezer on the ENERGYGUIDE labels attached to the freezers.  After two years of litigation, District Judge Edward J. Davila approved a nationwide settlement valued at $4 million, which provides for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

### ***Selected Published Decisions***

- *In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010)

- *In re Cellphone Termination Fee Cases*, 180 Cal.App.4th 1110 (2009)

- *Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007)

## JOSEPH I. MARCHESE

Mr. Marchese is a Partner with Bursor & Fisher, P.A.  Mr. Marchese focuses his practice on complex business litigation, consumer class actions, and employment law disputes.  Prior to joining Bursor & Fisher, Mr. Marchese was an associate with DLA Piper and Shearman & Sterling where he litigated complex commercial matters on behalf of investment banks, pharmaceutical companies, insurance carriers, food manufacturers, and tobacco companies.

Mr. Marchese is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York, as well as the United States Court of Appeals for the Second Circuit.

Mr. Marchese graduated from Boston University School of Law in 2002 where he was a Member of The Public Interest Law Journal.  In 1998, Mr. Marchese graduated with honors from Bucknell University where he earned a B.S.B.A.

### *Representative Cases*

- *Rossi v. The Procter & Gamble Co.* (District of New Jersey) – Mr. Marchese filed the first nationwide consumer class action lawsuit alleging Crest Sensitivity Treatment & Protection toothpaste ("CSTP") was not effective as advertised, and was essentially identical to an existing brand called Crest Pro-Health toothpaste, with only three differentiating features: (1) claims of rapid relief for tooth sensitivity on the product packaging; (2) a different coloring additive; and (3) a 75% price premium over Crest Pro-Health.  The plaintiff defeated defendant's motion to dismiss before negotiating a settlement with P&G.  District Judge Jose L. Linares granted final approval of the nationwide class settlement which provides class members with a monetary refund of at least $4.00 per tube of CSTP.

- *In Re Michaels Stores Pin Pad Litigation* (Northern District of Illinois) – Mr. Marchese filed the first nationwide consumer class action against Michaels Stores concerning a data breach that resulted in the unauthorized release of customers' financial data.  He actively litigated claims that Michaels failed to secure customer personal financial data appropriately, and failed to provide adequate notice to its customers whose information and funds were stolen as a result of the breach at 86 Michaels stores across the country.  After two years of litigation, District Judge Thomas M. Durkin approved a nationwide settlement that required Michaels to create a monetary fund from which class members could receive full reimbursement for monetary losses arising from the data breach.  Also, every settlement class member was entitled to credit monitoring services for early detection of identity theft and credit fraud.  As part of the settlement Michaels also verified that it had implemented strict new security measures to protect its customers from similar data breaches in the future.

- *Cox et al. v. Clarus Marketing Group, LLC et al.* (Southern District of California) – Mr. Marchese actively litigated claims for a nationwide class of online shoppers who made purchases on Provide-Commerce websites and who were deceptively enrolled in an online service, Freeshipping.com, for which they were charged unauthorized membership fees.  The plaintiffs alleged that they were secretly enrolled in a "Freeshipping" rewards program using the aggressive Internet marketing practice known as "data pass," where Provide-Commerce engaged in the unauthorized sharing and charging of customers' billing information with a third-party vendor.  After more than two years of litigation, District Judge Marilyn L. Huff approved a nationwide settlement valued at over $2.65 million, which included monetary reimbursement to settlement class members for their unauthorized membership charges.

- *Rodriguez v. Citimortgage, Inc.* (Southern District of New York) – Mr. Marchese filed a class action lawsuit on behalf of Sergeant Rodriguez and other active duty military servicemembers alleging the lender's foreclosure practices violated the Servicemembers Civil

Relief Act, a federal law that protects military servicemembers against foreclosures while they're serving on active duty.  After two years of litigation, Judge Paul G. Gardephe approved a nationwide $38 million settlement.  Under the settlement, each servicemember that suffered a foreclosure will recover $116,785, plus the amount of any lost equity in the foreclosed property, plus interest accrued on such lost equity calculated from the date of the foreclosure sale.

### *Selected Published Decisions*

- *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) (denying motion to dismiss in data breach consumer class action)

- *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (certifying nationwide class of purchasers of purported "100% Pure Olive Oil" in false advertising consumer class action against edible oil distributor)

- *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying New York and California classes in false advertising case against grass seed manufacturer)

- *Weisblum, et al. v. ProPhase Labs, Inc., et al.*, No. 14-cv-3587. --- F. Supp. 3d ---, 2015 WL 738112 (S.D.N.Y. Feb. 20, 2015) (denying motion to dismiss in false advertising consumer class action against manufacturer of homeopathic cold medicine)

### JOSHUA D. ARISOHN

Joshua D. Arisohn is a partner with Bursor & Fisher, P.A.  Mr. Arisohn focuses his practice on complex business litigation, consumer class actions, and terrorism-related matters. Prior to joining Bursor & Fisher, Mr. Arisohn was an associate at Dewey & LeBoeuf LLP and DLA Piper LLP where he litigated precedent-setting cases in the areas of mass torts, terrorism and commercial disputes.  He participated in the first ever trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism.

Mr. Arisohn is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Mr. Arisohn received his Juris Doctor from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar.  In 2002, Mr. Arisohn received his B.A. from Cornell University.

### SARAH N. WESTCOT

Sarah N. Westcot is an Associate with Bursor & Fisher, P.A.  Ms. Westcot focuses her practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Ms. Westcot litigated civil actions as an attorney with Bay Area Legal Aid in San Jose, CA.

Ms. Westcot served as trial counsel with Mr. Bursor in *Ayyad v. Sprint Spectrum L.P.*, and helped to win a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Ms. Westcot is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California.

Ms. Westcot received her Juris Doctor from the University of Notre Dame Law School in 2009. During her third year of law school, Ms. Westcot worked as a law clerk with the local public defender's office representing juvenile clients in criminal hearings. She graduated with honors from the University of Florida in 2005.

### NEAL J. DECKANT

Neal J. Deckant is an Associate with Bursor & Fisher, P.A. Mr. Deckant focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Mr. Deckant counseled low-income homeowners facing foreclosure in East Boston.

Mr. Deckant is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Mr. Deckant received his Juris Doctor from Boston University School of Law in 2011, graduating *cum laude* with two Dean's Awards. During law school, Mr. Deckant served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms. In 2007, Mr. Deckant graduated with Honors from Brown University with a B.A. in East Asian Studies and Philosophy.

### YITZCHAK KOPEL

Yitzchak Kopel is an Associate with Bursor & Fisher, P.A. Mr. Kopel focuses his practice on complex business litigation and consumer class actions.

Mr. Kopel is admitted to the State Bars of New York and New Jersey and is a member of the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, and District of New Jersey.

Mr. Kopel received his Juris Doctor from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Mr. Kopel served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Mr. Kopel graduated *cum laude* from Queens College with a B.A. in Accounting.

### ANNICK M. PERSINGER

Annick M. Persinger is an Associate with Bursor & Fisher, P.A. Ms. Persinger focuses her practice on complex business litigation and consumer class actions. Prior to joining Bursor &

Fisher, Ms. Persinger worked as a legal research attorney for Judge John E. Munter in Complex Litigation at the San Francisco Superior Court.

Ms. Persinger is admitted to the State Bar of California and the bars of the United States District Courts for the Northern District of California, Central District of California, Southern District of California, and Eastern District of California.

Ms. Persinger received her Juris Doctor from University of California, Hastings College of the Law in 2010, graduating *magna cum laude*. During law school, Ms. Persinger served as a member of Hastings Women's Law Journal, and authored two published articles. In 2008, Ms. Persinger received an award for Best Oral Argument in the first year moot court competition. In 2007, Ms. Persinger graduated *cum laude* from University of California, San Diego with a B.A. in Sociology, and minors in Law & Society and Psychology.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is an Associate with Bursor & Fisher, P.A. Mr. Klorczyk focuses his practice on complex business litigation and consumer class actions.

Mr. Klorczyk is admitted to the State Bars of New York and New Jersey and is a member of the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, and District of New Jersey, and the United States Court of Appeals for the Second Circuit.

Mr. Klorczyk received his Juris Doctor from Brooklyn Law School in 2013, graduating *magna cum laude* with two CALI Awards for the highest grade in his classes on criminal law and conflict of laws. During law school, Mr. Klorczyk served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut. In 2010, Mr. Klorczyk graduated from the University of Connecticut with a B.S. in Finance.

## YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is an Associate with Bursor & Fisher, P.A. Mr. Krivoshey focuses his practice on complex business litigation and consumer class actions.

Mr. Krivoshey is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern and Eastern Districts of California.

Mr. Krivoshey received his Juris Doctor from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar. During law school, Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C. Mr. Krivoshey also interned at the United States Department of Justice and the American Civil Liberties Union. In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

BURSOR&FISHER
P.A.

## PHILIP L. FRAIETTA

Philip L. Fraietta is an Associate with Bursor & Fisher, P.A.  Mr. Fraietta focuses his practice on complex business litigation, consumer class actions, and employment law disputes.

Mr. Fraietta is admitted to the State Bars of New York and New Jersey, the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, the District of New Jersey, and the United States Court of Appeals for the Second Circuit. Mr. Fraietta was a Summer Associate with Bursor & Fisher prior to joining the firm.

Mr. Fraietta received his Juris Doctor from Fordham University School of Law in 2014, graduating *cum laude*.  During law school, Mr. Fraietta served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In addition, Mr. Fraietta received the Addison M. Metcalf Labor Law Prize for the highest grade in his graduating class in the Labor Law course, and received the highest grade in his Anti-Discrimination Law & Policy course.  In 2011, Mr. Fraietta graduated *cum laude* from Fordham University with a B.A. in Economics.

## ASHER B. BUNDLIE

Asher B. Bundlie is a former Associate of Bursor & Fisher, P.A., where he focused his practice on complex business litigation and consumer class actions.  Mr. Bundlie is currently an Associate at Pryor Cashman LLP, where he represents public and private companies in a variety of matters.

Mr. Bundlie is admitted to the State Bar of New York and the bar of the United States District Court for the Southern District of New York.  Mr. Bundlie received his Juris Doctor from New York University School of Law in 2011.  During law school, Mr. Bundlie served as an Articles Editor for the *Journal of Law and Business*.  Prior to attending law school, Mr. Bundlie graduated from the University of Wisconsin-Madison in 2005, where he was a William F. Vilas Scholar.

## JULIA A. LUSTER

Julia A. Luster is a former Associate of Bursor & Fisher, P.A., where she focused her practice on complex business litigation and consumer class actions.  Ms. Luster is currently an Associate at Seyfarth Shaw LLP where she represents payors in health care reimbursement disputes and provider fraud claims under state law and the Employee Retirement Income Security Act.

Ms. Luster is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the United States Court of Appeals for the Ninth Circuit.

In 2013, Ms. Luster received her Juris Doctor from UC Davis School of Law.  While attending UC Davis, Ms. Luster externed with the Honorable Judge Arthur L. Alarcón of the United States Court of Appeals for the Ninth Circuit.  She was a Senior Articles Editor for the UC Davis Law Review and a top 10 oral advocate in appellate advocacy.  She also participated

**BURSOR&FISHER**
P.A.

in the Moot Court interschool competition team.  Ms. Luster worked at both the UC Davis Prison Law Clinic and UC Davis Civil Rights Clinic.  While at the Civil Rights Clinic, she co-authored a Ninth Circuit brief for an appeal she subsequently argued and won.  Prior to law school, Ms. Luster received her B.A. in English from UCLA and her M.A. in English and Comparative Literature from Columbia University.