WHATLEY KALLAS LLP
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NVIDIA GTX 970 GRAPHICS CHIP LITIGATION | CASE NO.: 15-cv-00760-PJH |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES**<br><br>Date:  December 7, 2016<br>Time:  9:00 a.m.<br>Courtroom 3 – 3rd Floor<br><br>Judge:    Honorable Phyllis J. Hamilton |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 7, 2016 at 9:00 a.m., before the Honorable Phyllis J. Hamilton, Chief District Judge for the U.S. District Court for the Northern District of California, 1301 Clay St., Oakland, CA 94612, the Class Representatives, by and through their undersigned counsel of record, will and hereby do move for an order approving the award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive awards to the Class Representatives, consistent with the agreement of the parties as reflected in Section 11 of the Settlement Agreement on file with the Court.[1]

This motion is made on the grounds that approval of an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive awards, consistent with the recommendation of the mediator who oversaw the negotiation of such provisions, is proper given that the parties have agreed that Class Counsel may make such applications in their Stipulation and Agreement of Settlement and Release (the "Settlement Agreement"), the work of Class Counsel has conferred substantial benefits to the Class, and that such awards are permitted under the law of this Circuit.

This motion is based on the Court's August 26, 2016 Order Granting Motion for Preliminary Approval of Class Action Settlement and Directing Dissemination of Class Notice (Dkt. No. 137) and the papers submitted in support of that Motion (which are incorporated herein by reference), this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of L. Timothy Fisher, Alan M. Mansfield, Cliff A. Cantor, William J. Doyle, II, Dennis G. Pantazis, Jr., Jeff Westerman,  and of numerous Class Representatives filed in support of this Motion, the moving papers and Declarations filed in support of the accompanying motion for final approval of settlement, the Proposed Order Granting Final Approval, and all other papers filed and proceedings had in this action, and any other written and oral arguments that may be presented to the Court.

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement.  *See* Dkt. No. 130-2, Ex. A.

1

**CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED**

2

Whether the Court should award attorneys' fees, reimbursement of litigation costs and

3

expenses, and payment of incentive awards to the Class Representatives.

4

Dated: October 25, 2016                                    Respectfully submitted,

5

                                                           **WHATLEY KALLAS LLP**

6

                                                           By: _____*/s/ Alan M. Mansfield*_____

7

                                                           Alan M. Mansfield (SBN 125998)
                                                           amansfield@whatleykallas.com

8

                                                           1 Sansome Street, 35th Fl., PMB # 131
                                                           San Francisco, CA  94104

9

                                                           Tel: (415) 860-2503
                                                           Fax: (888) 331-9633

10

11

                                                           **BURSOR & FISHER, P.A.**

12

                                                           By: _____

13

                                                           L. Timothy Fisher (SBN 191626)
                                                           ltfisher@bursor.com

14

                                                           Neal J. Deckant (admitted *pro hac vice*)
                                                           ndeckant@bursor.com

15

                                                           1990 North California Boulevard, Suite 940
                                                           Walnut Creek, CA  94596

16

                                                           Tel: (925) 300-4455
                                                           Fax: (925) 407-2700

17

                                                           *Class Counsel*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

NOTICE OF MOTION.................................................................................................. i

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND AND PROCEDURAL HISTORY....................................... 4

III.    THE CLRA PROVIDES FOR A MANDATORY AWARD OF
        ATTORNEYS' FEES TO THE PREVAILING PARTY ................................ 5

IV.     THE REQUESTED AWARD OF ATTORNEYS' FEES IS FAIR AND
        REASONABLE UNDER THE LODESTAR METHOD................................. 5

        1.      Class Counsel Spent A Reasonable Number Of Hours On This
                Litigation At A Reasonable Hourly Rate ......................................... 6

        2.      While All Relevant Factors Support Applying A Significant
                Multiplier To Settlement Class Counsel's Lodestar, Either No
                Or A Very Modest Multiplier Would Need To Be Applied To
                Approve This Application............................................................... 7

                a.      Novelty And Complexity Of This Litigation..................... 8

                b.      Class Counsel Provided Exceptional Representation
                        Prosecuting This Complex Case ...................................... 9

                c.      Class Counsel Obtained Excellent Class Benefits ............ 9

                d.      Class Counsel Faced A Substantial Risk Of
                        Nonpayment.................................................................... 9

V.      CLASS COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES IS
        FAIR AND REASONABLE UNDER A "CONSTRUCTIVE COMMON
        FUND" CROSS-CHECK .............................................................................. 10

VI.     THE FACT DEFENDANT AGREED TO THIS AMOUNT, AND THAT IT
        WAS RECOMMENDED BY JUDGE INFANTE, ALSO SHOWS THE
        REASONABLE OF THIS REQUEST ......................................................... 12

VII.    CLASS COUNSEL'S EXPENSES WERE REASONABLE AND
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED
        ON BEHALF OF THE CLASS ................................................................... 13

VII.    THE REQUESTED INCENTIVE AWARDS FOR THE CLASS
        REPRESENTATIVE AND INTERESTED PARTIES ARE FAIR AND
        REASONABLE ........................................................................................... 14

VIII.   CONCLUSION........................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Blum v. Stenson*,
    465 U.S. 886 (1984) .......................................................................................................... 8

*Boeing v. Van Gemert*,
    444 U.S. 472 (1980) .........................................................................................................12

*Bond v. Ferguson Enters.*,
    2011 U.S. Dist. LEXIS 77692 (E.D. Cal. July 18, 2011) ............................................. 14

*Consumer Privacy Cases*,
    175 Cal. App. 4th 545 (2009) ........................................................................................11

*Fischer v. Equitable Life Assur. Soc'y*,
    307 F.3d 997 (9th Cir. 2002) ...........................................................................................5

*Glass v. UBS Fin. Servs.*,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ................................................14

*Graciano v. Robinson Ford Sales*,
    144 Cal. App. 4th 140 (2006) ....................................................................................5, 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................5, 6

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .............................................................................................13

*Harris v. Vector Mgtg. Corp.*,
    2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) ...............................................14

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................................10

*Hensley v. Eckerhart*,
    461 U.S. 425 (1983) .....................................................................................................7, 12

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ..............................................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...........................................................................................6

*In re Continental Illinois Securities Litigation*,
    962 F.2d 566 (7th Cir. 1992) .........................................................................................13

*In re Online DVD-Rental Antitrust Litigation*,
    779 F.3d 934 (9th Cir. 2015) .........................................................................................10

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...........................................................................................11

# TABLE OF AUTHORITIES

**PAGE(S)**

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................................10

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................................13

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ........................................................................6, 8

*Kim v. Euomotors West/The Auto Gallery*,
  149 Cal. App. 4th 179 (2007) ........................................................................5

*Lealao v. Beneficial California, Inc.*,
  82 Cal. App. 4th 19 (2000) ........................................................................10

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ........................................................................6, 7

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................13

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................10, 13

*Trujillo v. City of Ontario*,
  2009 U.S. Dist. LEXIS 79309 (C.D. Cal. Aug. 24, 2009)........................................15

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................14

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................................6, 7, 8, 9

*Williams v. MGM-Pathe Communications*,
  129 F.3d 1026 (9th Cir. 1997) ........................................................................11, 12

**STATUTES**

Civil Code § 1750 ........................................................................5

Civil Code § 1780(d) ........................................................................5

**TREATISES**

Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* § 14:03 (3d ed. 1992)........................................7

Manual for Complex Litigation § 21.71 (4th ed. 2008)........................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiffs Andrew Ostrowski, Mark Roushion, Kiloe Young, Jason Doerrer, Pedro Santiago, Kyle Ellis, Andy Torrales, Dylan Jordan, Joseph Vorraso, David Dropski, Austin Verlinden, Stephen Denz, Joel  Bernabel, Jan Paolo Jimenez, Timothy Farley, Alexander Montgomery, Ryan Brenek, Jorrell Dye, Chester Bailey, Gukjin Chung, Garret Giordano, Francis Palagano, Patrick E. Parker and Don Le (collectively, the "Class Representatives" or the "Plaintiffs"), through the Court-appointed counsel Bursor & Fisher, P.A. and Whatley Kallas, LLP (collectively, "Class Counsel"), respectfully submit this memorandum of points and authorities in support of their motion for approval of an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive awards in connection with the class-wide settlement of this action, consistent with Sections 11.1 and 11.4 of the Settlement Agreement.

As set forth in more detail in the accompanying Motion for Entry of Order Finally Approving Class Action Settlement (which is incorporated herein by reference), pursuant to the Settlement Agreement, Settlement Class Members may claim $30.00 in cash for each GTX 970 unit for which a valid and timely claim form is submitted, with no cap on individual or overall claims.  *See* 10/25/16 Fisher Decl. ¶ 68.  This payment is <u>not</u> subject to *pro rata* dilution.  *Id.*  The Settlement Class is defined to include:

> [A]ll persons and entities resident in the United States of America who purchased a GTX 970 GPU in the United States of America from the Defendants, the AIC Partners or their authorized retailers prior to the Preliminary Hearing Date other than for purposes of resale or distribution.

*See* 7/25/16 Fisher Decl., Ex. A ¶ 1.25 (Doc. 130-2).

Given that the GTX 970 carries "an average retail price of approximately $350," a cash payment of $30.00 for each unit would constitute approximately 8.6% of the average purchase price for the GTX 970 devices.  See 10/25/16 Fisher Decl. ¶ 74 (citing SACC ¶ 52).  However, one of the primary misrepresentations at issue is that the GTX 970 does not operate with a full 4 gigabytes of RAM, but rather with a 3.5 GB pool of RAM and a decoupled and less performant 0.5 GB spillover segment that operates as slow as at one-seventh the speed of the main pool.  *Id.* (citing SACC ¶ 4).

Accordingly, Settlement Class Members allege they were shortchanged on 0.5 GB of their 4 GB of RAM, which is 12.5% of their RAM. *Id.* (citing SACC ¶ 5) ("However, because the final [0.5 GB segment] runs at a materially slower rate than the first 3.5 GB, the GTX 970 devices do not function as if they have a full 4 GB of memory, a material selling point and characteristic for these devices."). Thus, as one measure of recovery (which would be vigorously disputed by Defendants), Settlement Class Members could expect to receive $43.75 on average. *Id.*[2] This is an excellent recovery that will compensate most Settlement Class Members for approximately 70% of their alleged losses based on these damages estimates.

To date, the response to the settlement has been overwhelmingly positive. In addition to the Court-ordered notice program described in the Declaration of Phil Cooper being filed in support of the motion for final settlement approval ("Cooper Decl."), news of the settlement has been reported by a number of prominent technology and gaming websites, including *AnandTech, PC Gamer, PC World, Tom's Hardware, GameSpot, Tech Report, Polygon, Escapist Magazine, ArsTechnica, Reddit, Digital Trends, Game Revolution, Wired,* and more. 10/25/16 Fisher Decl., ¶ 76. These publications have generally explained the basic terms of the settlement and referred consumers to the settlement website at http://www.gtx970settlement.com to learn more. *See id.*

Additionally, as explained in the final approval motion, based on the average number of GTX 970 devices claimed by Settlement Class Members so far, Class Counsel estimate that the Court-appointed claims administrator, KCC, was able to provide direct notice to a significant percentage of Settlement Class Members. This phenomenal outcome was a direct result of Class Counsel's efforts to serve, and in one case successfully move to compel compliance with, subpoenas *duces tecum* on the primary retailers of the GTX 970 – Amazon, B&H Photo, Best Buy, NewEgg, MacMall, PC Nation, and Rakuten.com – seeking individually identifiable class member data. *See id.* ¶¶ 28-30. This endeavor required Class Counsel to hire local counsel and successfully move to compel

---

[2] As an alternative measure of the range of potential damages, a survey of sales price data shows the average price differential between the less-performant GTX 960 and the GTX 970 at issue is approximately $100. *Id.* While no one disputes that the GTX 970 performs at higher output levels as compared to the GTX 960, Plaintiffs allege it does not actually perform as well as represented. *Id.* Thus, while this would be the subject of expert testimony on both sides, from Plaintiffs' perspective it is realistic to also consider a per unit damages estimate of approximately $50, particularly considering the above performance analysis. *Id.*

Amazon in the U.S. District Court for the Western District of Washington.  *See* Declaration of Cliff Cantor, ¶ 3.  Ultimately, these retailers produced over 558,582 <u>unique email addresses</u> of GTX 970 purchasers to the Settlement Administrator.  After de-duplication with contact data provided by Defendants, the Settlement Administrator was able to send direct mail and email notice to 485,227 unique email and mail addresses.  *Id.* ¶¶ 62-66.  Given Class Counsel's estimate that conservatively there are approximately 600,000 Settlement Class Members who purchased GTX 970 devices during the class period, and the fact that at this point, a significant number of  Settlement Class Members are submitting claims for multiple GTX 970 GPUs (an average of 1.8 per submitted claim), these records account for an estimated 80% of potential Settlement Class Members.  *Id.*[3]

The claims rate to date has also been significant.  As of October 24, 2016, there have been claims for 83,762 GTX 970 devices submitted by 54,787 Settlement Class Members, for a total of <u>over $2.5 million in claimed value so far</u>.  *Id*. ¶ 79.  In comparison, there have only been 2 opt-outs and 1 objection to date.  *Id.*[4]  Simply put, these results are outstanding.

Consistent with the Settlement Agreement and the recommendation of the Hon. Edward Infante (Ret.), the mediator who helped the parties negotiate this settlement, Class Counsel requests that the Court approve an award of attorneys' fees and reimbursement of expenses totaling $1,300,000.  *Id.* ¶ 69.  As explained below, the lodestar technique confirms that the amount of attorneys' fees and expenses in Section 11 of the Settlement Agreement is fair, reasonable, and supported by the law of this Circuit.  *See infra*.  As of October 14, 2016, Class Counsel and their co-counsel who worked on matters common to the Settlement Class had collectively worked 2,300.6 hours on this case for a total lodestar, at current billing rates, of $1,234,350.00.  10/25/16 Fisher Decl. ¶ 87; Declaration of Alan M. Mansfield in support of final approval of settlement ("Mansfield Decl."), ¶¶ 24-27, Ex. 1; Declaration of Jeff Westerman, ¶¶ 4-5, Ex. A; Declaration of Dennis G.

---

[3] To be conservative, this calculation assumes that the vast majority of Settlement Class Members only purchased <u>one</u> GTX 970 device.  *Id.*  In actuality, the percentage of the Settlement Class for whom KCC possesses individual contact information is likely higher, given that a large number of Settlement Class Members purchased two or more GTX 970 devices.  *Id.*

[4] The claims rate is likely to increase in the coming weeks, given that the deadline for submission of claim forms is on November 30, 2016.  Such claims are also in the process of being subject to audit and verification by KCC, which has already verified a significant number of claims.  *Id.* ¶ 80.

Pantazis, Jr., ¶¶ 4-6; Declaration of William J. Doyle, II, ¶¶ 7-12; Declaration of Cliff Cantor, ¶¶ 3-6. This represents a blended hourly rate of less than $575.00, which is well within the bounds of reasonable hourly rates in this District.  *See* 10/25/16 Fisher Decl., ¶¶ 88, 93-101.  A fee award of $1,300,000, after payment of close to $64,000 in litigation expenses, would represent no multiplier over the base lodestar fee by the time this settlement is finally approved (*id.* ¶ 89), and thus is well within the accepted range of multipliers and fees approved by courts in the Ninth Circuit.  *See* Parts V.C.2.a – V.C.2.d, below.

The $1,300,000 requested by Class Counsel will also include reimbursement  for $63,889.84 in out-of-pocket expenses.  *See* 10/25/16 Fisher Decl. ¶¶ 91-92; *see also id.*, Ex. C (an itemized listing of each out-of-pocket expense incurred by Bursor & Fisher in connection with this case); Mansfield Decl., ¶ 28, Ex. 2; Declaration of Jeff Westerman, ¶ 6, Ex. 3; Declaration of Dennis G. Pantazis, Jr., ¶ 6; Declaration of William J. Doyle, II, ¶¶ 13-14.  These expenses were necessary to the prosecution of this case, were carefully and reasonably expended, and should be reimbursed.

## II.     BACKGROUND AND PROCEDURAL HISTORY

The Declaration of L. Timothy Fisher, submitted herewith, as well as the Mansfield Decl., contains a detailed discussion of the background and procedural history of these consolidated actions, including (i) Class Counsel's pre-suit investigation of the claims, (ii) the pleadings and initial motions, (iii) amendments to the complaint, (iv) the service and enforcement of subpoenas *duces tecum* on the primary retailers who sold the GTX 970 devices, (v) the retention of an expert consultant to assist Class Counsel given the highly technical nature of the facts at issue, (vi) the parties' arm's-length settlement negotiations, and (vii) preliminary approval and dissemination of comprehensive notice.  10/25/16 Fisher Decl. ¶¶ 3-80.

Of relevance to this motion, Section 11.1 of the Settlement Agreement authorizes the Class Representatives and Class Counsel to petition the Court for an award of attorneys' fees, costs, and expenses in an amount no greater than $1,300,000.  *Id.* ¶ 69.  There is no "clear sailing" agreement. *Id.*  Defendants are free to oppose the fee application, should they wish to do so*. Id.*

Section 11.3 of the Settlement Agreement also provides that the Class Representatives and Class Counsel may petition the Court for approval of payments of no more than $25,000 total for the

Class Representatives.  Class Counsel are requesting all of the Class Representatives receive $500 each, and that eight of the Class Representatives who provided additional services to the Settlement Class as described in their Declarations receive an additional $1,000 each, for a total of $20,000.

## III.   THE CLRA PROVIDES FOR A MANDATORY AWARD OF ATTORNEYS' FEES TO THE PREVAILING PARTY

The Class Representatives brought claims against Defendants under various theories, including under California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.* (the "CLRA") based on each Defendants' substantial nexus to California.  For CLRA claims, an award of fees to the prevailing party is mandatory under Civil Code § 1780(d), which provides:  "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  As the California Court of Appeal has explained, for a Court in construing this provision:

> The word 'shall' is usually deemed mandatory, unless a mandatory construction would not be consistent with the legislative purpose underlying the statute."  (*West Shield Investigations and Sec. Consultants v. Superior Court* (2000) 82 Cal. App. 4th 935, 949, 98 Cal.Rptr.2d 612.)  Our Supreme Court has observed that "the availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute."  (*Broughton v. Cigna Healthplans* (1999) 21 Cal. 4th 1066, 1085, 90 Cal. Rptr. 2d 334, 988 P.2d 67.)  Thus, a mandatory construction of the word "shall" in section 1780(d) is consistent with the legislative purpose underlying the statute.

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178 (2007).

Here, Class Counsel have  recovered a valuable settlement that will distribute millions of dollars in cash to Settlement Class Members located nationwide.  Plaintiffs have thus succeeded on a practical level by realizing in part their litigation objectives.  *See infra*.  As the Settlement Class is the "prevailing party," a fee award to Plaintiffs' counsel is mandatory under the CLRA.  *Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140, 150-51 (2006).

## IV.   THE REQUESTED AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE UNDER THE LODESTAR METHOD

Under Ninth Circuit standards, a Court may award attorneys' fees based on the "lodestar" method where there is no formal common fund, taking into account numerous factors as described,

*infra.  Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).   Class Counsel's fee request is fair and reasonable under this methodology.

The lodestar figure is calculated by multiplying the hours reasonably spent on the case by reasonable hourly rates based on the locale and attorney experience.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.  The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to:  (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[5]  Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that plaintiffs' counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).  Thus, a fee that approximates lodestar is considered presumptively reasonable.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (citing cases).

## 1.    Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel's Declarations, along with those of several co-counsel whose efforts directly contributed to this result, describe the extensive work they performed in connection with this litigation over the past two years.   Bursor & Fisher and Whatley Kallas coordinated their efforts and the efforts of their co-counsel throughout this litigation in an effort to ensure that there was minimal

---

[5] *Kerr* identifies twelve factors for analyzing the reasonableness of an attorneys' fees request:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

526 F.2d at 70.

duplication of effort by assigning specific tasks to each.  To support this request, Class Counsel are separately submitting their detailed daily billing records for *in camera* inspection showing what work was done and by whom.  *See* 10/25/16 Fisher Decl., ¶ 88, Ex. B.  This was a novel case that involved a significant amount of original work, requiring significant involvement by more experienced lawyers, primarily on developing the litigation strategy, participating in settlement meetings with both Defendants' counsel and Judge Infante, editing briefs on motions, making court appearances, and negotiating the settlement.  *Id.* ¶¶ 3-80; *see also*  Mansfield Decl., ¶¶ 11-13, 24-26; Declaration of Jeff Westerman, ¶¶ 2-3, Ex. 2; Declaration of Dennis G. Pantazis, Jr., ¶¶ 2-3; Declaration of William J. Doyle, II, ¶¶ 3-8; Declaration of Cliff Cantor, ¶¶ 2-3.

Defendants were represented by very able counsel from Orrick, Herrington & Sutcliffe, one of the largest and most prestigious law firms in the United States.  This case was hard-fought and concerned complex factual allegations.  Given the technical nature of the litigation, and the difficulty of the settlement negotiations, the number of hours Class Counsel spent was reasonable.  Furthermore, the hourly rates for each of the lawyers who staffed the case, which are set forth in the accompanying Declarations of counsel and exhibits thereto, are also reasonable and supported by the evidentiary material submitted with the Fisher Declaration.  *See id.* & Exs. thereto.

### 2.   While All Relevant Factors Support Applying A Significant Multiplier To Settlement Class Counsel's Lodestar, Either No Or A Very Modest Multiplier Would Need To Be Applied To Approve This Application

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee.  *See Morales, supra,* 96 F.3d at 363-64.  Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4.  *See Vizcaino*, 290 F.3d at 1051 n.6; *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).

/ / /

In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Kerr*, 526 F.2d at 70;; *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984). All of these factors further support the reasonableness of the requested fee award in this action. *Vizcaino*, 290 F.3d at 1051.

### a.     Novelty And Complexity Of This Litigation

This was not a run-of-the-mill Rule 23 consumer class action. As is evident from the Second Amended Consolidated Class Action Complaint ("SACC"), the GTX 970 devices at issue are specialized computer components that are largely used within a niche community: PC game enthusiasts who have the knowledge and experience to install their own add-on graphics card. *See* SACC ¶ 83. Moreover, the three misrepresentations at issue – that the GTX 970 provides "a true 4 GB of VRAM, 64 ROPs, and 2,048 KB of L2 cache capacity" – are technical in nature and, while important to these individuals, are fairly esoteric outside the realm of computer graphics cards. *See id.* ¶ 5. These factual issues were further complicated by the fact that the GTX 970 itself has a unique design, even among computer graphics cards, in the way it handles the last 0.5 GB segment of spillover video RAM above 3.5 GB. *Id.* ¶¶ 52-81. Thus, Class Counsel were faced with difficult legal and factual issues, which required substantial original work. This case also posed a significant risk that Class Counsel's efforts (and their over $63,000 in out-of-pocket costs) would go uncompensated. Settlement negotiations were complicated both in terms of the underlying subject matter and the varying damages analyses at issue. The parties' efforts to resolve this case included two in-person meetings with Defendants' attorneys and key employees, the production and analysis of benchmark data and practically weekly telephonic conferences with Defendants' counsel regarding the data produced by Defendants and the terms of a settlement, and a mediation before Judge Infante at JAMS with several follow up discussions. *See id.* ¶¶ 31-35, 39-44, 55-58. Even after the parties reached an agreement in principle, it still took several months of further negotiations to prepare and execute the Settlement Agreement and accompanying Exhibits. *See id.* ¶¶ 59-61; Mansfield Decl., ¶¶ 11-13.

Therefore, a positive multiplier is well within the parameters used throughout this Circuit. Indeed, in light of the novelty and technical complexity of this case, and concomitant risks to counsel, even if theoretically the Court were to reduce the overall lodestar a substantially higher multiplier would be justified, resulting in the same fee award.

### b. Class Counsel Provided Exceptional Representation Prosecuting This Complex Case

Class Counsel respectfully submit the attorneys who have worked on this matter have conducted themselves in this action in a professional, diligent, and efficient manner.  The lawyers at Bursor & Fisher and Whatley Kallas have extensive experience in the field of class action litigation.  *See id.*, Ex. A (Bursor & Fisher's resume); Declaration of Alan M. Mansfield In Support of Motion for Preliminary Approval of Settlement (Dkt. 130-1) Ex. 1 (Whatley Kallas' Resume).  Additionally, litigation tasks were allocated between counsel to prevent "over-lawyering" and inefficiency.  *See* 10/25/16 Fisher Decl. ¶ 88.  The bulk of the work was performed by a small number of attorneys fully familiar with the complex factual and legal issues presented by this litigation, as well as with experience litigating against Defendant NVIDIA Corp.  *Id.*  This division of labor permitted the work to be done efficiently, resulting in an economy of service and minimizing duplication of effort.

### c. Class Counsel Obtained Excellent Class Benefits

As  pointed out above and in the Declaration of Phil Cooper of KCC filed in support of the motion for final settlement approval, this settlement provided direct notice to an estimated  80% of the Settlement Class Members, resulting in the opportunity for those class members to submit claims for a significant percentage of their potential out-of-pocket losses.  This process has already resulted in claims for over $2.5  million in cash as of this date, with that amount increasing every day.  These results are plainly excellent.

### d. Class Counsel Faced A Substantial Risk Of Nonpayment

A critical factor bearing on fee applications in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation.  *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1048.  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that

/ / /

any recovery would be obtained, are significant. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases …. [I]f this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted).

Throughout this action, Class Counsel expended substantial time and resources to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against sophisticated Defendants represented by high caliber attorneys. *See* 10/25/16 Fisher Decl. ¶¶ 3-80. Class Counsel obtained a highly favorable result for the Settlement Class, knowing that if their efforts were ultimately unsuccessful, they would receive no compensation or reimbursement for their already expended costs. This fact would further support a multiplier in this situation.

## V.   CLASS COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE UNDER A "CONSTRUCTIVE COMMON FUND" CROSS-CHECK

To further satisfy itself that Class Counsel's requested attorneys' fees are reasonable, as an optional cross-check the Court can examine this request as if this were a common fund settlement, through the analogy of a "constructive common fund." To create a constructive common fund, the Court add ups the value of the benefits made available to the Settlement Class, any attorneys' fee and cost payments to be made, and notice and administration costs. *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012). As this Court recognized in its decision that was affirmed in *In Re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015), California courts consider <u>all</u> the benefits provided under the settlement, including the requested attorneys' fees, when calculating the total value of the settlement fund. *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 33 (2000). Thus, "the sum of the [amounts provided to the class and the attorneys' fees]

ordinarily should be treated as a settlement fund for the benefit of the class ….” *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554 (2009) (quoting *Manual for Complex Litigation* § 21.71 at 525 (4th ed. 2008)).

Here, as of the date of these papers, the total value of the constructive common fund is over $4.5 million, comprised of the following elements:

- $2,512,860 to satisfy payment of claims for 83,762 GTX 970 devices; *see* Cooper Decl., ¶ 27;

- $1,300,000 to Class Counsel for attorneys’ fees, which includes reimbursement of $63,889.84 in litigation costs and expenses, *see* 10/25/16 Fisher Decl., ¶ 69;

- $25,000 in possible incentive awards to the Class Representatives, *see id.* ¶ 70;

- $674,475 in estimated administrative costs, *see* Cooper Decl., ¶30.

Of this, Class Counsel’s requested payment of attorneys’ fees (after reimbursement for the litigation costs and expenses set forth herein and in the accompanying Declarations) constitutes approximately 27% of the constructive common fund, with that percentage decreasing every day.  This percentage is consistent with the norm for this District.  *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (“[T]his court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%.”); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney’s fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App’x 663, 664 (9th Cir. 2003) (affirming attorney’s fee award of 33% of the recovery).

This is a conservative cross-check analysis, since the Ninth Circuit has expressly held that in evaluating the reasonableness of fee requests, the Court is to evaluate the whole amount made available to Settlement Class Members, even when unclaimed funds would remain with Defendants. This is the relevant question since the Court cannot force consumers to submit claims – even where, as here, the parties make it straightforward to do so.  In *Williams v. MGM-Pathe Communications,*

129 F.3d 1026, 1027 (9th Cir. 1997), the Ninth Circuit reversed the reduction of a fee application for one-third of a fund based on amount claimed as compared to amount of the fund available for claims, even where the unclaimed funds would stay with Defendants, when that term was part of the settlement agreement:  "We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."  *See also Boeing v. Van Gemert*, 444 U.S. 472, 480 (1980) (class plaintiffs' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the effort of class representatives and their counsel").  There is no meaningful difference between a fund with a reversion provision and a claims process with no cap on either individual or overall claims.  Thus, it would be inconsistent with Ninth Circuit and Supreme Court precedent to determine the reasonableness of this fee request based on consideration of the claims rate.  It would also be inconsistent with California state law interpreting the CLRA to do so.  *Graciano v. Robinson Ford Sales, supra,* 144 Cal. App. 4th at 162-64.

## VI. THE FACT DEFENDANT AGREED TO THIS AMOUNT, AND THAT IT WAS RECOMMENDED BY JUDGE INFANTE, ALSO SHOWS THE REASONABLENESS OF THIS REQUEST

The fact that Defendants, after extensive negotiation, agreed to include this fee and expense amount in the Settlement Agreement is also an appropriate factor for the Court to consider in reviewing the fee and expense provisions of the settlement.  Because the substantive terms of the settlement had been agreed to between the parties before these amounts were agreed to, and were ultimately agreed to with the assistance and recommendation of Judge Infante, this provision was negotiated in such a manner as to avoid any potential conflict with the Settlement Class, or any argument that such amounts were "traded off" for lesser class consideration.  Mansfield Decl., ¶¶ 9-10.

In *Hensley v. Eckerhart, supra*, 461 U.S. at 437, the United States Supreme Court held that negotiated attorneys' fee provisions are the "ideal" toward which the parties should strive: "a request for attorneys' fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  Fee arrangements between Plaintiffs and defendants in class actions are to be encouraged, particularly where as here the record shows the attorneys' fees to be requested

were negotiated separately after the settlement terms of the class claims has been agreed to by the parties, and are to be paid on top of the class consideration.  *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees.").

As Judge Posner observed in *In Re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), the virtue in the negotiation of fees by the adversarial parties to the settlement regarding the amount of fees to be requested (the defendants who want to minimize the payment to be made versus the lawyers who wish to receive it) is that the "markets know market value better than judges do."  *Id.* at 570.  Here, the provision as to the amount of fees to be requested set forth in the Settlement Agreement was negotiated under market conditions:  Plaintiffs' counsel wished to maximize fees to compensate them, as the law encourages, for risk, innovation, and delay;  Defendants wished to pay the minimum amount they could, as any monies not approved would be retained by them.  The result is an arm's-length negotiated amount set by market forces, and resolved only after the other settlement terms had been agreed to in principle.  Such a process provides further indicia of the reasonableness of this requested amount.

## VII.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Plaintiffs' counsel incurred out-of-pocket costs and expenses in the aggregate amount of $63,889.84 in prosecuting this litigation on behalf of the Settlement Class.  *See* 10/25/16 Fisher Decl., Ex. C; Mansfield Decl., ¶ 28, Ex. 2; Declaration of Jeff Westerman, ¶ 6, Ex. 3; Declaration of Dennis G. Pantazis, Jr., ¶ 6; Declaration of William J. Doyle, II, ¶¶ 13-14.

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement in addition to the payment of attorneys' fees.  *See Staton,* 327 F.3d at 974.  Class Counsel are entitled to reimbursement for litigation out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client.  *See*, *e.g.*, *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994).  These expenses include court fees, copying fees, courier service charges, conference call fees, travel expenses, postage and delivery fees, mediator fees, expert consultant fees, and other related

1    expenses.  Each of these expenses was necessarily and reasonably incurred to bring this case to a

2    successful conclusion, and they reflect market rates for various categories of expenses incurred.  *See*

3    10/25/16 Fisher Decl., ¶ 91.

4    **VIII.   THE REQUESTED INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE**
5    **AND INTERESTED PARTIES ARE FAIR AND REASONABLE**

6           In recognition of their efforts on behalf of the Settlement Class, and subject to the approval

7    of the Court, Defendants have agreed to pay the Class Representatives up to $25,000 total as

8    appropriate compensation for their time and effort serving as the class representatives in this

9    litigation.  That said, the Class Representatives are mindful of the Court's requirement that incentive

10   awards must be justified in light of each party's time and involvement.  Accordingly, in an

11   abundance of caution, the Class Representatives are seeking the more conservative amount of

12   $20,000 overall for incentive awards.  For the reasons discussed below, Class Representatives

13   Young, Le, Dropski, Santiago, Vorraso, Ellis, Torrales, and Jordan seek incentive awards in the

14   amount of $1,500 each, and the remaining 16 Class Representatives seek incentive awards in the

15   amount of $500 each.

16          Incentive awards "are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp*., 563

17   F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for

18   work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing

19   the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.*

20   at 958-59.  Incentive awards should be awarded based upon the court's consideration of, *inter alia*,

21   the amount of time and effort spent on the litigation, the duration of the litigation and the degree of

22   personal gain obtained as a result of the litigation.  *See Van Vranken v. Atl. Richfield Co.*, 901 F.

23   Supp. 294, 299 (N.D. Cal. 1995) (incentive award of $50,000); *Glass v. UBS Fin. Servs.*, 2007 U.S.

24   Dist. LEXIS 8476 at *51-52 (N.D. Cal. Jan. 26, 2007) (awarding $100,000 divided among four

25   plaintiffs in overtime wages class action); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS

26   13797 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 service award); *Bond v. Ferguson Enters.*, 2011

27   U.S. Dist. LEXIS 77692 (E.D. Cal. July 18, 2011) (approving service awards of $11,250); *Trujillo v.*

28

*City of Ontario*, 2009 U.S. Dist. LEXIS 79309 (C.D. Cal. Aug. 24, 2009) (approving service awards of $30,000).

The requested amount of $1,500 for the eight Class Representatives identified above is appropriate to compensate them for their additional efforts in bringing this action for the benefit of hundreds of thousands of Settlement Class Members.  In connection with this motion, these eight Class Representatives have submitted declarations describing their involvement in the litigation.  Indeed, they aver in their declarations that they:  (i) "assisted with [Class Counsel's] investigation by describing the events surrounding my purchase of the GTX 970," including "when I purchased it, why I purchased it, how I purchased it (*e.g.*, online versus retail, cash versus credit) and what representations I reviewed and relied upon when making my purchase," (ii) "provided [Class Counsel] with relevant documentation for their review," (iii) "described my personal experiences with my GTX 970 [with Class Counsel], such as how it performed at various games and computing tasks" and "described any issues that I had encountered with my GTX 970" with Class Counsel, (iv) "carefully reviewed the Complaint for accuracy and approved it before it was filed," (v) "conferred with [Class Counsel] regularly by phone and e-mail to discuss the status of the case," which included "case strategy, motions that were currently pending, and the prospects of settlement," (vi) "discussed the Settlement Agreement with [Class Counsel] and gave my approval prior to signing it," (vii) "was willing and prepared to take part in discovery" and "was available to produce documents and take part in a deposition," and/or (viii) "was also prepared to testify at trial."  Each of these Class Representatives provides an estimate of the number of hours they spent working with Class Counsel.  The dedication and efforts of these Class Representatives have conferred a significant benefit on thousands of purchasers of GTX 970 devices across the United States.

Because the remaining Class Representatives had a somewhat lesser involvement than those discussed above, we are requesting incentive awards of only $500 apiece for each of them.  Despite their lesser participation, their involvement was nonetheless substantial and added value for the Settlement Class.  *Id.* ¶¶ 96-99.  As described in the 10/25/16 Declaration of L. Timothy Fisher, each of the Class Representatives "assisted in Class Counsel's pre-suit investigation by discussing their experiences and providing information regarding their purchase and use of the GTX 970 devices."

*Id.* ¶ 104.  They also "assisted in drafting the Complaint, and they reviewed the Complaint for accuracy before it was filed."  *Id.*  They also "were intimately involved in the settlement process, and have continued to keep apprised of settlement progress to date."  *Id.*  All of these Class Representatives "took time away from personal activities to initiate and litigate this action" and "were prepared to litigate this case to a verdict if necessary."  *Id.*

Moreover, in the judgment of Class Counsel, the participation of all 24 of the Class Representatives greatly enhanced this case's settlement value because there was a substantial risk that choice-of-law issues might have precluded nationwide certification, and required a state-by-state approach.  *Id,.* ¶ 106.  Having the Class Representatives standing by to represent statewide classes strengthened Class Counsel's hand in settlement negotiations, and enabled Class Counsel to persuade Defendants to contribute more money as part of the settlement.  *Id.*  Accordingly, very modest incentive awards of $500 for all the Class Representatives, and an additional $1,000 for eight of the Class Representatives, for a total of $20,000, is fair and reasonable.

## IX.   CONCLUSION

Class Counsel and the Class Representatives produced a substantial benefit to Settlement Class Members, in the form of a $30.00 uncapped cash payment for each GTX 970 they purchased. They now seek to be fairly compensated for that work, consistent with the provisions of the Settlement Agreement, the negotiations with Defendants and the recommendation of Judge Infante. In the end, counsel will be paid slightly less than their standard hourly rates, making this request presumptively reasonable. As a cross-check, there is a constructive common fund worth at least $4.5 million, and the requested fee is within the range of fees awarded in this District.  For the foregoing reasons, the amounts requested are fair and reasonable and should be approved.  Class Counsel and the Class Representatives therefore respectfully request that the Court approve the provision in the Settlement Agreement for payment of fees, expenses and incentive awards, including:

- $1,300,000 in attorneys' fees and reimbursement of out-of-pocket expenses;

- Incentive awards to Class Representatives Young, Le, Dropski, Santiago, Vorraso, Ellis, Torrales, and Jordan in the amount of $1,500 each; and

- • Incentive awards to the remaining 16 Class Representatives in the amount of $500 each.

Dated: October 25, 2016                                Respectfully submitted,

**WHATLEY KALLAS LLP**

By: _____*/s/ Alan M. Mansfield*_____
Alan M. Mansfield (SBN 125998)
amansfield@whatleykallas.com
1 Sansome Street, 35th Fl., PMB # 131
San Francisco, CA  94104
Tel: (415) 860-2503
Fax: (888) 331-9633


**BURSOR & FISHER, P.A.**

By: _____
L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
Neal J. Deckant (admitted *pro hac vice*)
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Class Counsel*